IN THE U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MAE JIMMAR,

      Plaintiff,

v.

COCA-COLA BOTTLING
COMPANY UNITED, INC. and
TRAVON BENNETT

      Defendants.

CIVIL ACTION
FILE NO.:  1:25-cv-01045-SCJ

## MOTION TO COMPEL NON-PARTY ORTHO SPORT AND SPINE AND RESPONSE TO NON-PARTY'S MOTION FOR PROTECTIVE ORDER

COME NOW, Defendants, and pursuant to Rule 37 and the direction of the Court[1], file their Motion to Compel against non-party Ortho Sport and Spine Physicians ("Ortho Sport") and also respond to Ortho Sport's Motion for Protective Order, showing the Court as follows:

## I.      SUMMARY OF ARGUMENT

Defendants seek evidence related to the bias, intent and motive of one of Plaintiff's treating providers, Ortho Sport, who will be called to testify as to

---

[1] The Court's Courtroom Deputy Clerk directed Defendants to file their motion to compel and respond to Ortho Sport's motion for protective order directly, bypassing the Court's informal discovery dispute process.

1

causation of Plaintiff's injuries, and the reasonableness and necessity of the medical expenses Plaintiff claims.    More specifically, Defendants seek evidence demonstrating the scope of the business and referral relationship by and between Ortho Sport and Plaintiff's legal team.  Precedent from the 11th Circuit Court of Appeals and Georgia Supreme Court makes clear that the evidence sought is discoverable.

## II.    PROCEDURAL HISTORY

Defendants served their subpoena and amended subpoena (with a corrected date of birth) to Ortho Sport on May 8 and 13, 2025.  (Affidavits of process server, attached hereto as Exhibit A).  On June 5, 2025, Ortho Sport sent objections and produced records, bills, text reminders to the patient, and incomplete communications, refusing to produce the documents requested which would potentially show the bias of the provider and reasonable value of the medical bills. Defendants served conferral correspondence demanding production of the information identified in Defendants' subpoenas on August 28, 2025.  (Ex. A).  Ortho Sport's motion for protective order followed.

## III.    ARGUMENT AND CITATION OF AUTHORITY

Defendants seek evidence related to the bias, intent and motive of expert witnesses employed by Ortho Sport, who are Plaintiff's treating providers expected

2

to testify as to causation of Plaintiff's injuries, and the reasonableness and necessity of the medical expenses Plaintiff claims.   *Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019) (whether the plaintiff's medical expenses were reasonable and necessary is a critical inquiry under Georgia law) citing *MCG Health, Inc. v. Kight*, 325 Ga. App. 349, 353 (2013); *ML Healthcare Servs., LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293, 1302–03 (11th Cir. 2018) (bias may be shown through a referral and payment arrangement by and between medical providers and a party's lawyers). Federal courts have repeatedly held that the financial relationships and referral arrangements of an employer may be explored, because same go to the potential bias of an employee (who here is also an expert witness). *Id.; see also Collins v. Wayne Corp.*, 621 F.2d 777, 784 (5th Cir. 1980) ("A showing of a pattern of compensation in past cases raises an inference of the possibility that the witness has slanted his testimony in those cases so he would be hired to testify in future cases."

### A.   Scope of Discovery

Rule 45 of the Federal Rules of Civil Procedure governs the production of documents via subpoena to non-parties. *Williams v. City of Birmingham*, 323 F. Supp. 3d 1324, 1329 (N.D. Ala. 2018) ("Rule 45 ... authorizes a court to issue a subpoena at the request of a party to require a non-party to produce for inspection and copying designated [information and materials] in the possession, custody, or

control of the non-party."). The scope of discovery sought pursuant to a Rule 45 subpoena is governed by Rule 26. *See Castleberry v. Camden County*, 331 F.R.D. 559, 562 (S.D. Ga. 2019) ("Rule 45 must be read in conjunction with [Rule] 26 because the latter rule clearly defines the scope of discovery for all discovery devices.") (citations and internal quotation marks omitted); *American Federation of State, County and Municipal Employees (AFSCME) Council v. Scott*, 277 F.R.D. 474, 476 (S.D. Fla. 2011) (Although Rule 45 "does not identify irrelevance or overbreadth as reasons for quashing a subpoena[,] … courts … have treated the scope of discovery under a subpoena [as] the same as the scope of discovery under Rule 26."); *Reiser v. Wachovia Corp.*, 2007 WL 1696033, at *1 (M.D. Fla. June 12, 2007) ("The scope of discovery that may be sought by subpoena is the same as that applicable to Rule 26 and other discovery rules."). "Rule 26 allows parties to obtain discovery of 'any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]' … Information within Rule 26's scope of discovery 'need not be admissible in evidence to be discoverable.' " *Castleberry*, 331 F.R.D. at 562 (quoting Fed. R. Civ. P. 26(b)(1)).

### B.   The Evidence Sought is Discoverable

Here, Defendants seek the following categories of evidence:

•   The complete contents Ortho Sport's electronic medical records with respect to Plaintiff (Request No. 1);

- The spreadsheet/database (including but not limited to the eClinicalWorks Report 37.08) showing amounts billed and accepted in satisfaction for patients represented by Plaintiff's counsel, but NOT including any identifiable personal information of other patients (Request No. 2)—the wording of this request coming directly from Judge Grimberg's order in *Goins v Seagraves*, 1:23-cv-02951-SDG;

- All communications in any form sent or received by Ortho Sport and any of its agents, specifically including Premier Medical Consultants, LLC, Falcon Marketing LLC, "Fortress Data Solutions," Maranex, LLC, Medernix, LLC, Logix US, LLC, and Black Crystal Consulting, LLC (all known names for the attorney-communicating agent subject to the control of Ortho Sport) (hereinafter "Ortho Sport agents") with Plaintiff counsel regarding Plaintiff or this case (Request No. 6 );

- Records demonstrating how Plaintiff was referred to Ortho Sport (Request No. 8);

- Marketing material sent to Plaintiff's counsel (Request No. 11); and

- Business associate agreements with and corporate records for Ortho Sport Agents (Requests No. 15, 20).

(Amended subpoena, attached hereto as Exhibit B).  These requests are tailored to seek evidence related to the bias, intent and motive of Plaintiff's treating providers, and the reasonableness and necessity of the medical expenses Plaintiff claims as her special damages.

1.    ***The Evidence Sought is Relevant to the Bias and Credibility of Plaintiff's Experts.***

"A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *United States v. Abel*, 469 U.S. 45, 51 (1984).

> Bias is a term used in the 'common law of evidence' to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.

*Id*. at 52*; see also United States v. Ruan*, 966 F.3d at 1101, 1164 (2020) (judgment vacated on other grounds) (explaining that evidence about a medical expert's fees paid by the government "would have been probative of [the medical expert's] credibility in light of her relationship with the government").  Before Defendants can cross-examine Plaintiff's experts concerning their potential bias, Defendants must first have the opportunity to obtain evidence which may – or may not – shed light on the experts' relationship with Plaintiff's counsel, and thus the experts' potential bias.

As Judge Land noted in *Hudson*, supra, evidence about who [the expert] has worked for and how much they have paid him. . . is all probative of [the expert's] bias and thus his credibility." *Hudson* at *2.  The evidence sought may show that Ortho Sport "typically works for [Witherite] and typically provides similar opinions in similar cases." *Id.*  This evidence "may also show that being paid to do this work in the past has incentivized [Ortho Sport] to testify in a certain way in this action." *Id.*  The evidence sought is critical to evaluating the potential bias and credibility of Plaintiff's key causation witnesses in this action, and Defendants request an Order compelling Ortho Sport to produce all responsive documents and evidence within their possession, custody or control.

> **2.      _The Evidence Sought is Relevant to the Reasonable Value of the Services Rendered to Plaintiff_.**

The materials sought are also relevant evidence of the reasonable value of the services rendered to Plaintiff allegedly made necessary by the incident. Whether Plaintiff's medical expenses were reasonable and necessary is a critical inquiry under Georgia law.  *Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019) citing *MCG Health, Inc. v. Kight*, 325 Ga. App. 349, 353 (2013).  As the Georgia Supreme Court has stated:

> The fair and reasonable value of goods and services is often determined
> by considering what similar buyers and sellers have paid and received
> for the same product in the same market, with adjustments upward or

> downward made to account for pertinent differences, and we see no reason why the same cannot be true of health care. [] Suppose that, as Bowden argued at the motion to compel hearing, 99% of TMC's patients who received the same care as she did during the same time period had insurance and therefore paid the same much lower sum for their care—say, just $1,000. Under that scenario, a fairminded juror might conclude that the 'reasonable charge' for that care was much closer to $1,000 than to the $21,409.59 that TMC billed Bowden. Bowden is entitled to determine if evidence exists to support such an argument.

*Bowden v. The Med. Ctr., Inc.*, 297 Ga. 285, 292, 773 S.E.2d 692, 697 (2015).

Defendants seek the same evidence here.

Of note, the Georgia Court of Appeals has also just reiterated in the last two weeks that such evidence is relevant under substantive Georgia law to the inquiry into reasonableness and necessity of medical bills.  *Omni Healthcare, LLC v. Stacy Young Excavation, Inc.*, Ga. Ct. App. Case No. A25A1411 (decided Sept. 30, 2025) ("We did not hold, however, that the request for the company's balance sheet itself was overbroad. [] Moreover, because the requests seek the disclosure of documents relevant to issues at trial such as the reasonableness of damages and bias, they are not overbroad on the basis of not being reasonably restricted to the disclosure of relevant matters in issue at trial,") interpreting *Medernix v. Snowden*, 372 Ga. App. 48 (2024).

If Ortho Sport's records show that it charges patients $10,000.00 for a given treatment pursuant to CPT Code 123456, for example, but the clinic accepts, on

average, $1,000.00 for treatment rendered pursuant to that same CPT Code, a fair minded juror could conclude that the reasonable value of that service is much closer to $1,000.00 than $10,000.00. Therefore, the evidence demonstrating the amounts charged, amounts accepted, and amounts written-off is discoverable under Rule 26 (b)(1).

It is important to note that a 3-year time period is necessary to perform the analysis of the reasonable value of the services.  Because Ortho Sport rendered services to Plaintiff pursuant to a litigation lien, i.e., a loan,[2] Plaintiff maintains an outstanding balance with Ortho Sport.  In this business model, Ortho Sport essentially extends a line of credit to patients with no expectation of payment until the litigation is resolved.[3]  Thus, many patient accounts held by Ortho Sport are expected to have only an amount charged.  A 3-year lookback is a reasonable and appropriate time-frame within which a substantial portion of patient accounts should reflect the amount charged, amount accepted, and amount written-off sufficient to analyze what amounts Ortho Sport generally accepts in satisfaction of its services.

---

[2] Despite Plaintiff being a veteran of the United States Air Force and having access to non-lien medical treatment.

[3] This is similar to the process of "factoring" explained by the Georgia Court of Appeals in its new *Omni Healthcare* opinion, Ga. Ct. App. Case No. A25A141at P3 (*awaiting publication*), except that instead of selling its patients' debts on to a third party as accounts receivable, Ortho Sport elects to hold those debts itself in the hope of being paid out of its patients' lawsuit settlements or jury awards.

### 3.     *Defendants Request the Court Order Database Compilations*.

Finally, the majority of the discovery sought above is for production of documents and materials in native format.  However, Request No. 2 is for database information of any nature whatsoever, which would include "data compilations— stored in any medium from which information can be obtained either directly, or if necessary, after translation by the responding party into reasonably usable form." Fed R. Civ. P. 34 (a)(1)(A).  Defendants initially identified a particular report, the "37.08 report" that could be produced out of Ortho Sport's software, eClinicalWorks.  It has since learned (based on sworn testimony provided in court by Ortho Sport's revenue cycle manager Faith Beltzhoover, under direct questioning by Judge Eric Norris of the Western Judicial Circuit, 10th Superior Court District of Georgia) that three additional reports are required to produce the discoverable information, namely the "371.05, 361.05, and 21.04" reports.[4]  (See Order at Ex. OSSP-5, p.20).  Defendants agree to the payment of reasonable costs, if any are necessary, to offset any financial burden on Ortho Sport in producing these reports.

---

[4] A full transcript of that hearing, which took place in another case handled by undersigned counsel's law firm, is available upon request.

### C.      Ortho Sport's Arguments are Unavailing

Ortho Sport's motion for protective order attempts to avoid Defendants' legitimate discovery through a number of arguments; however, none of them compel the issuance of a protective order or work to avoid an order to compel.

### 1.      *Defendants do not Seek HIPAA-Protected Information*

Ortho Sport's first argument is easily dispensed with.  Ortho Sport argues that Defendants' request would require the disclosure of protected health information of patients other than Plaintiff.  However, Defendants' request specifically stated that other patients' protected health information should be redacted.  *See* 45 C.F.R. § 164.514 ("(a) Standard: De-identification of protected health information. Health information that does not identify an individual and with respect to which there is no reasonable basis to believe that the information can be used to identify an individual is not individually identifiable health information").   Defendants are interested in the data showing amounts accepted in satisfaction, not what patient received the treatment.  Therefore, all of Ortho Sport's arguments which hinge upon the disclosure of the identity of other patient are without effect on this case, where the identities are specifically not being sought. It is also notable that multiple state and federal courts, including the Northern District of Georgia, have already rejected

11

this exact argument from Ortho Sport.  (Combined orders, attached hereto as Exhibit C).

### 2.    *Ortho Sport's Data is Relevant and Creates no Hardship*

As discussed above, Ortho Sport's arguments that the information sought is not relevant is simply not a correct statement of the law. *See e.g., Omni Healthcare, Medernix, supra.* The requests made are further not overbroad, and are in keeping with discovery orders to other lien providers in the Northern District.  (*See* Judge Grimberg's order in *Goins v Seagraves*, 1:23-cv-02951-SDG, attached hereto as Exhibit D).[5] As to burden, Defendants have step-by-step instructions for producing the relevant reports, and have further offered to pay for  the reasonable costs of obtaining any other information which might be responsive.

---

[5] Although not binding in federal court, Defendants' counsel has, in state court discovery disputes concerning this same discovery with Ortho Sport, agreed to limit their request to comply with the Court of Appeals' ruling in *Medernix, LLC v. Snowden*, 372 Ga. App. 48, 903 S.E.2d 728 (2024), by limiting the scope of the database report geographically to the State of Georgia and to only the full billing charts for all patients who received any of the same CPT or diagnostic codes as Plaintiff. Importantly, this agreement does not mean that Defendants are seeking only information on those patients who received *the exact same* pattern of CPT codes as this Plaintiff. Such specificity would unduly limit the scope of discovery to a scant handful of individuals who happened to have the *exact same* care  Instead, a full search, untethered to a specific "pattern" of treatment, is necessary to evaluate the reasonable and necessary value of each charge – meaning the scope of search should encompass *any* patient who received *any of* the CPT or diagnoses codes this Plaintiff received (not only the *exact same* codes).

Ortho Sport's complaint about burdensomeness is undermined by the proceedings connected to the discovery dispute in *Medernix, LLC v. Snowden*. After the case was returned to the trial court for further consideration of the Court of Appeals' ruling, Judge Norris held a hearing on April 3, 2025 to determine whether the relevant report could be generated. Judge Norris required an Ortho Sport employee who is knowledgeable regarding Ortho Sport software and billing practices to attend the hearing. Ortho Sport Revenue Cycle Manager, Faith Beltzhoover, attended the hearing. Also in attendance was defense expert Lori Green. During the hearing, Judge Norris himself cross-examined Beltzhoover, sought explanations from Ortho Sport's counsel, and asked for input from Green, all on the record. The focus of the hearing was to determine whether Ortho Sport could produce the sought after data in a manner consistent with *Medernix, LLC v. Snowden*. Although Beltzhoover was unsure if such a report could be run, Green explained the exact steps to take in order to generate the necessary reports, limited to produce "what was wrote off, what's adjusted, or accepted as payment in full, for the same types of treatment, same medical facility, same general time period..." Ultimately, Judge Norris ordered Ortho Sport to produce the 37.08 report out of eClinicalWorks, but also the other reports identified by Green, the 371.05, 361.05, and 21.04 reports,

in order to "accomplish the goal of revealing the limited data approved by the Court of Appeals." (*See* Order Compelling Ortho Sport, Ex. C, OSSP-5, p.20.).

Ortho Sport's claim of undue burden is without merit because the requested information is readily available through its own electronic medical records system and financial software. By following the steps explained by Lori Green at the hearing, and which Defendants would be glad to supply again here, Ortho Sport can produce the requested information without undue burden.

### 3.    *The Requested Data is not a Trade Secret*

In its landmark holding regarding reasonableness of medical bills, the Georgia Supreme Court held:

> The fair and reasonable value of goods and services is often determined by considering what similar buyers and sellers have paid and received for the same product in the same market, with adjustments upward or downward made to account for pertinent differences, and we see no reason why the same cannot be true of health care.

*Bowden v. The Med. Ctr., Inc.*, 297 Ga. 285, 292 (2015). The mere cost of goods and services is not and should not be a secret in Georgia. Further, the other types of information Defendants seek, such as attorney referral history with Ortho Sport and Ortho Sport's communications with Plaintiff or his counsel, are not confidential, trade secrets, or privileged. *See Barger v. Garden Way, Inc.*, 231 Ga. App. 723, 725 (1998) ("The public policy of Georgia does not permit parties to contract privately

14

for the confidentiality of documents or testimony, and thereby foreclose others from obtaining, in the course of litigation, materials that are relevant to their efforts to vindicate a legal position. To hold otherwise would clearly not serve the truth-seeking function of discovery in civil litigation.").

Finally, even if Ortho Sport is correct, and the pricing information sought is confidential or a trade secret, that does not affect its obligation to produce the information subject to a confidentiality agreement or a protective order. The Georgia Court of Appeals just reached that exact conclusion in *Omni Healthcare*: "Because of our ruling in this division, we likewise reject Omni's trade secrets argument in case number A25A1452, Northlake's trade secrets argument in case numbers A25A1473 and A25A1474, and AHI's trade secrets argument in case number A25A1475." Ga. Ct. App. Case No. A25A1411 (Ordered: Sept. 30. 2025, *awaiting publication*) at P27, fn.10.  Defendants will gladly agree to an appropriate protective order regarding Ortho Sport's pricing information.

### 4.    *Ortho Sport Cannot Hide Behind its Agents*

Ortho Sport, in its document production to Defendants, did produce some communications between itself and Plaintiff's counsel.   However, all of the communications produced were from Ortho Sport proper, not from its communications and billing agent(s), which have had at least different names in the

15

last ten years, including Premier Medical Consultants, LLC, Falcon Marketing LLC, "Fortress Data Solutions," Maranex, LLC, Medernix, LLC, Logix US, LLC, and Black Crystal Consulting, LLC.  (*See* timetable of Ortho Sport Agent names, attached hereto as Exhibit E).

This arrangement, which was correctly identified as "a shell game" by Judge Brian Fortner of the Douglas County State Court in a recent written order, is designed to allow Ortho Sport to avoid discovery of exactly the kind of information that Defendants seek here. (Ex. C, OSSP-6 at p.35).  Ortho Sport, in briefing on this exact issue before Judge Geraghty in the Northern District, stated that the Ortho Sport Agent, whose name at the time was Medernix, has the following purpose:

> Medernix verifies insurance, contacts insurers and legal counsel, evaluates available policy limits, assesses a patient's financial capabilities, and engages in other due diligence to determine a patient's ability to compensate Ortho Sport for the recommended procedures.

(Ortho Sport brief, *House v. Fortner*, Civil Action No. 1:21-cv-01183-SEG, relevant portion attached hereto as Exhibit F).  "The fact of agency may be established by proof of circumstances, apparent relations, and the conduct of the parties. . . [a]n agent is authorized to act for another when, expressly or impliedly, there has been a delegation with more or less discretionary power to act, to manage an affair, and to render an account."  *Bully v. State*, 849 S.E.2d 271, 278 (Ga. App. 2020) (internal citations omitted).

16

Ortho Sport admits that it has delegated the work of managing plaintiff/patient liens to the Ortho Sport Agent, which includes the tasks of communicating with plaintiffs' attorneys, and being certain that the defendants' liability insurance limits will support the treatment that Ortho Sport will render.  Ortho Sport has "the legal right, authority, or ability to obtain documents upon demand" from these agents. *Camden Iron and Metal, Inc. v. Marubeni Am. Corp.*, 138 F.R.D. 438, 441 (D.N.J. 1991).   In addition, Ortho Sport and these companies are inextricable— communications from the Ortho Sport Agent directly coordinate treatment and payment by the very Plaintiffs that Ortho Sport needs in order to run its business. As in *Sergeeva v. Tripleton Int. Ltd.*, 834 F.3d 1194 (11th Cir. 2016) Ortho Sport "could not possibly perform their intended function. . . absent the ability to obtain information and documents" from its agents.  The requested documents in the control of Ortho Sport's Agent are available to Ortho Sport, and must be produced.

### 5.      *Numerous Courts Have Required Ortho Sport to Comply*

It is likely apparent to the Court that this discovery dispute is merely the latest iteration of Ortho Sport's attempt to avoid discovery of its coordination with Plaintiff counsel.  Ortho Sport's purpose in these lien cases is to generate biased opinions and to "charge" plaintiffs phantom amounts in order to maximize its own financial recovery.  Increasingly, state and federal courts are seeing through the sham and

requiring production of the discoverable information which will reveal to the jury how the game has been rigged. (*See* Ex. C). Defendants do not ask this Court to rule today that the information sought is admissible, but merely that it cannot be hidden from the process of law.

## IV.   CONCLUSION

For the reasons stated herein, Defendants respectfully request the Court grant Defendants' Motion to Compel and deny Ortho Sport's Motion for Protective Order.

Respectfully submitted, this 7th day of October, 2025.

MCMICKLE, KUREY & BRANCH, LLP

*/s/ Elenore C. Klingler*
KEVIN P. BRANCH
Georgia Bar No. 111839
ELENORE C. KLINGLER
Georgia Bar No. 425190
*Attorneys for Defendants*

217 Roswell Street, Suite 200
Alpharetta, GA 30009
Telephone:   (678) 824-7800
Facsimile:   (678) 824-7801
Email: kpb@mkblawfirm.com
         eklingler@mkblawfirm.com

## <u>CERTIFICATE OF COMPLIANCE</u>

Counsel for Defendants hereby certifies that **MOTION TO COMPEL NON-PARTY ORTHO SPORT AND SPINE AND RESPONSE TO NON-PARTY'S MOTION FOR PROTECTIVE ORDER** have been prepared with one of the font and point selections approved by the Court in LR 5.1(B):  Times New Roman (14 point).

This 7th day of October, 2025.

/s/ *Elenore C. Klingler*
ELENORE C. KLINGLER
For the Firm

19

## CERTIFICATE OF SERVICE

This is to certify that on this date I have electronically filed the foregoing

**MOTION TO COMPEL NON-PARTY ORTHO SPORT AND SPINE AND RESPONSE TO NON-PARTY'S MOTION FOR PROTECTIVE ORDER** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to the following attorney of record:

Natalie C. Foster, Esq.
Adewale Odetunde, Esq.
WLG Atlanta, LLC
Bank of America Plaza
600 Peachtree Street NE, Suite 4010
Atlanta, Georgia 30308
natalie.foster@witheritelaw.com
adewale.odetunde@witheritelaw.com
***Attorneys for Plaintiff***

## VIA EMAIL AND CERTIFIED MAIL/ RETURN RECEIPT
Evan David Szczepanski, Esq.
Delgado Heidari, LLC
2997 Cobb Parkway #724615
Atlanta, Georgia 31139
eds@dhlawteam.com

*(Signature and Date appear on following page)*

20

This submitted this 7th day of October, 2025.

MCMICKLE, KUREY & BRANCH, LLP

*/s/ Elenore C. Klingler*
ELENORE C. KLINGLER
Georgia Bar No. 425190
*Attorney for Defendants*