**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

MAE JIMMAR,

     Plaintiff,

v.

COCA-COLA BOTTLING
COMPANY UNITED, INC. and
TRAVON BENNETT,

     Defendants.

CIVIL ACTION FILE
NO. 1:25-cv-01045-SCJ

---

**NON-PARTY ORTHO SPORT & SPINE PHYSICIANS, LLC'S
AMENDED MOTION FOR PROTECTIVE ORDER**

---

**COMES NOW**, Non-Party Ortho Sport & Spine Physicians, LLC ("Non-Party"), by and through undersigned counsel, and, pursuant to Fed. R. Civ. P. 26(c), hereby moves for a protective order, by showing this Court as follows:

## INTRODUCTION

Non-Party Ortho Sport & Spine Physicians, LLC ("Ortho Sport") is a premier orthopedic medical practice, renowned for pioneering several minimally invasive interventional procedures and surgeries. Ortho Sport is currently before this Honorable Court because it treated Plaintiff Mae Jimmar ("Plaintiff" or "Patient") for injuries she sustained in the accident underlying this suit.

As a result of this treatment, Defendants are brazenly requesting a wide swath of private and irrelevant information under the flimsy reasoning that such

1

might demonstrate the physician's "bias' and the reasonableness of plaintiff's medical expenses. However, this farcical discovery comes at a crushing burden to Ortho Sport, while the information that Defendants seek is at best of *de minimis* value, if not entirely irrelevant to the underlying lawsuit. Defendants' extensive and intrusive request of a vast array of confidential and constitutionally protected financial, operational, and proprietary data regarding Ortho Sport's treatment of **prior, unrelated** patients, has made it clear that whatever the purpose of the discovery may be, it is not related to the underlying litigation. Defendants' oppressive requests are repugnant to the notions of fundamental privacy and certainly disproportionate to the needs of this case; they entirely disregard defense counsel's obligations to reduce costs in discovery.[1]

Ortho Sport now seeks Court intervention to protect against the invasive disclosures that burden Ortho Sport, and which are certainly disproportionate to the needs of this litigation.

<strong><u>RELEVANT FACTS</u></strong>

I.      **<u>Defendants' Document Requests</u>**.

---

[1] Fed. R. Civ. Proc. 26(g)(1)(B)(iii) provides that by signing a discovery request, the attorney certifies the discovery is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." *See Mancia v. Mayflower Textile Servs. Co.*, 253 F.R.D. 354, 358 (D. Md. 2008) (Noting that Rule 26(g) "aspires to eliminate one of the most prevalent of all discovery abuses: kneejerk discovery requests served without consideration of cost or burden to the responding party.")

The Defendants' Requests consist of **fifty-six (56)** document requests, including subparts, that seek seek irrelevant and private information, including screenshots of Ortho Sport's internal databases, Ortho Sport's Articles of Organization, the payment classification of thousands of unrelated patients, Ortho Sport's HIPAA Audit Logs and HIPAA Business Associate Agreements, general marketing efforts, notices of complaints by any state or federal agency, and more. [e.g., Ex. A, Requests Nos. 1, 2, 3, 4, 7, 8, 9, 12, 16, 19, 20, 21].

Defendants further seek the creation and subsequent production of a database report containing Ortho Sport's confidential treatment and financial information for tens of thousands of prior, unrelated patients (hereinafter "Database Report"). For example, Request No. 2 demands:

> A complete copy of any spreadsheet, itemization of charges, or other database information of any nature whatsoever evidencing the amounts you have billed as well as the amounts you have negotiated or accepted in satisfaction of your bills issued to patients, with the "responsible party" or referral source identified for each of those patients, for the time period beginning January 1, 2021, through and including December 31, 2023, limited to the states of Georgia, Texas, and Illinois.

[Ex. A, Request No. 2].[2]  Such a request was squarely rejected by the Georgia Court of Appeals in *Medernix* (involving the same medical provider and

---

[2] The requested Database Report is not generated in the ordinary course of Ortho Sport's business and would have to be specially created to comply with the Defendants' requests.

same defense counsel).[3] Despite the fact that the ink is barely dry on the opinion, defense counsel persists on making identical requests– this time, in this Federal Court.  Notably, the Court of Appeals found such requests were not relevant to the underlying lawsuit– but significantly, the Georgia Courts reached this decision under Georgia's discovery rules, even without the proportionality analysis that is present in the Federal Rules.

Irrespective, none of the foregoing information relates to the core dispute in the underlying case. Ortho Sport respectfully requests a protective order against Defendants' overbroad, disproportionate, and irrelevant requests.

## III.    **Procedural History and Conferral Efforts**

On or about May 13, 2025, Ortho Sport was served with the Requests. Around May 27, 2025, Ortho Sport timely served upon Defendants its Objections and Responses to the Requests ("Objections").[4] Along with its Objections, Ortho Sport produced all non-objectionable documents, including the Plaintiff's medical records, operative reports, medical imaging, prescription records, billing statements, intake documents, HIPAA authorizations, and all financial agreements with Plaintiff. Ortho Sport further produced all internal and external notes,

---

[3] While not binding on this Court, two recent Georgia Court of Appeals decisions examine the underlying financial data and limitations on the production of same. *See Ortho Sport & Spine Physicians, LLC v. Snowden*, 372 Ga. App. 48 (2024); *Ortho Sport & Spine Physicians, LLC v. Murray et al.*, A23A1310 (Ga. App. Sept. 13, 2024) (physical precedent, attached hereto as **Exhibit "B"**).

[4] An accurate copy of the Objections is attached hereto as **Exhibit "C"**.

telephone and web encounters, text messages, and correspondence regarding the Plaintiff, and all other documents even remotely connected to the Plaintiff's medical treatment.

However, on August 28, 2025, Defendants erroneously sent a letter referencing Georgia's **state court** Uniform Superior Court Rule 6.4 and the Georgia Civil Practice Act– rather than the Federal Rules– accusing Ortho Sport of failing to provide complete responses to their Requests.[5] Unfortunately, all attempts to resolve the discovery dispute between counsel failed.

<u>**ARGUMENT AND CITATION TO AUTHORITY**</u>

The discovery requests at issue are a quintessential example of overreach, seeking vast amounts of privileged, confidential, and irrelevant information that is protected from disclosure under federal law. As detailed below, Defendants' requests for comprehensive financial data of thousands of unrelated, non-party patients are identical to requests that have already been squarely rejected by both federal courts and the Georgia Court of Appeals. In their zeal, Defendants completely disregard the balancing test under federal law, which obligates this

---

[5] The letter itself was a boilerplate letter that has no doubt been copied and pasted from another state court matter. Despite Ortho's voluminous good faith production in this matter, the Defendants simply stated in conclusory fashion that they would file a motion to compel unless "all" requested documents were produced– without identifying what specifically they were seeking. The fact that they cited the Georgia state court rules and code, as opposed to the federal rules, underscores that it was likely a standardized form letter that was sent without so much as a review or glance by counsel, in abrogation for their duties under the Federal Rules.

Court to weigh their purported need for this sensitive information against the significant harm and undue burden its disclosure would cause to non-party Ortho Sport. Fed. R. Civ. P. 26(b)(1) (limiting discoverable information to the "proportional … needs of the case…").

## I. Legal Standard

### A. Subpoenas and Discovery

"[A] Rule 45 subpoena is a discovery vehicle to be used against non-parties to, among other things, obtain documents relevant to a pending lawsuit."[6] Rule 45(d)(1) requires parties "take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena."[7] Additionally, "Rule 45 must be read in conjunction with Federal Rule of Civil Procedure 26 because the latter rule 'clearly defines the scope of discovery for all discovery devices.'"[8] Rule 26 allows parties to obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case....".[9] **The Court must limit discovery when:** "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient,

---

[6] *Hatcher v. Precoat Metals*, 271 F.R.D. 674, 675 (N.D. Ala. 2010).
[7] Fed. R. Civ. P. 45(d)(1); *Felio v. Hyatt*, 2014 WL 12634467, at *3 (N.D. Ga. Aug. 7, 2014).
[8] *Hatcher*, 271 F.R.D. at 675; *Kona Spring Water Distrib., Ltd. v. World Triathlon Corp.*, 2006 WL 905517, at *2 (M.D. Fla. Apr. 7, 2006) ("[A] court must examine whether a request contained in a subpoena duces tecum is overly broad or seeks irrelevant information under the same standards set forth in Rule 26(b)....").
[9] Fed. R. Civ. P. 26(b)(1).

less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is **outside the scope permitted** by Rule 26(b)(1)."[10]

While discovery may be broad, "discovery, like all matters of procedure, has ultimate and necessary boundaries."[11] These limitations necessarily arise when "it can be shown that the [discovery] is being conducted in bad faith or in such a manner as to annoy, embarrass or oppress the person subject to the inquiry" or "when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege."[12]

### B.    The Court Should Consider Ortho Sport's Non-Party Status

Importantly, "[n]on-party status is a factor courts may consider when analyzing whether a subpoena is unduly burdensome."[13] "The burden on the non-party is particularly great when the party issuing the subpoena seeks **private information**."[14] Thus, "even if the discovery may be relevant for impeachment

---

[10] Fed. R. Civ. P. 26(b)(2)(C); *Pinehaven Plantation Properties, LLC v. Mountcastle Family LLC*, 2013 WL 6734117, at *1 (M.D. Ga. Dec. 19, 2013) ("In short, a district court may limit discovery when the burden of compliance outweighs its likely benefit or relevance.").

[11] *Hickman v. Taylor,* 329 U.S. at 507, 67 S.Ct. 385.

[12] *Id.* at 507–08, 67 S.Ct. 385.

[13] *Pinehaven*, 2013 WL 6734117, at *2 ("It is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery." (quoting *Zukoski v. Philadelphia Elec. Co.*, 1994 WL 637345, at *3 (E.D. Pa. Nov. 14, 1994)); *Jordan v. Commissioner, Mississippi Department of Corrections,* 947 F.3d 1322, 1337 (11th Cir. 2022) (holding that "[t]he status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry.").

[14] *Pinehaven*, 2013 WL 6734117, at *2.

purposes, the court may nonetheless limit non-party discovery when the information is available through less-intrusive avenues."[15]

As recognized by the 11th Circuit Court of Appeals[16]:

The undue burden analysis requires the court to "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." 9A Wright & Miller, Federal Practice and Procedure § 2463.1 (3d ed. 2019). *See also Virginia Dep't of Corr.*, 2017 WL 5075252, at *5, *10 (applying the undue burden analysis). Several factors have been identified as pertinent to the analysis, including the "relevance of the information requested" to the underlying litigation and the "burden [that would be] imposed" by producing it. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004).

The status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry. See id. ("[I]f the person to whom the document request is made is a non-party, the court may also consider the expense and inconvenience to the non-party.").

Accordingly, this Court should consider Ortho Sport's non-party status in this matter.

### C.    The Proportionality Analysis Required by Rule 26(b)(1).

The 2015 amendments to Rule 26(b)(1) explicitly incorporated proportionality into the scope of discovery, requiring courts and parties to consider factors such as "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties'

---

[15] *Id*. (quoting *Buckley Towers Condo., Inc. v. QBE Ins. Corp.*, 2008 WL 2645680, at *5 (S.D. Fla. June 26, 2008)).

[16] *Jordan v. Comm'r, Mississippi Dep't of Corr.*, 947 F.3d 1322, 1337 (11th Cir. 2020).

resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[17]

Accordingly, "a party cannot discover even relevant information if the information is not 'proportional to the needs of the case.'"[18] To determine the proportionality of a discovery request, the court assesses "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."[19]  As "the advisory committee notes explain: [the Rule 26(b)(1) amendment] 'restores the proportionality factors to their original place in defining the scope of discovery. This change reinforces the Rule 26(g) obligation of the parties to consider these factors in making discovery requests, responses, or objections.... The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.'"[20]

## II.     DEFENDANTS' OVERLY BROAD REQUESTS SEEK IRRELEVANT MATERIAL AND FAIL THE PROPORTIONALITY ANALYSIS.

---

[17] Fed. Rules Civ. Proc. 26(b)(1); *McArdle v. City of Ocala, FL*, 451 F.Supp.3d 1304 (2020).

[18] *Garber v. Nationwide Mutual Ins Co.,* 2022 WL 1420916 at *10 (N.D. Al. March 24, 2022).

[19] Fed. Rules Civ. Proc. 26(b)(1).

[20] *Clark v. Hercules, Inc.*, 2017 WL 3316311, at *1-2 (M.D. Fla. Aug. 3, 2017) (quoting Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment).

Defendants have sought large swathes of information/documents - including the Database Report - for two perfunctory reasons (i.e., "witness bias" and "reasonableness of fees"). Ortho Sport wishes to address both in turn.

1. **Defendants' Seek Information/Documentation Unrelated to Witness Bias.**

Defendants' attempt to obtain irrelevant information under the guise of "witness bias." Defendants allege - absent any evidence - that Plaintiff's treating physicians (i.e., Ortho Sport employees) are biased in favor of Plaintiff. Moreover, utilizing this argument, Defendants *further contend* that, because information regarding the Plaintiff's treating physicians' alleged bias is discoverable, *all information* sought *is likewise discoverable*. Put simply, Defendants attempt to include all discovery requests under the umbrella of "witness bias", when in fact, most of the information sought is wholly irrelevant to this issue.

For example, Defendants Request No. 2 seeks **detailed** health, treatment, and financial information for **every** Ortho Sport patient treated at **any** of the thirty (30) clinics and facilities located across Georgia, Texas, or Illinois over a span of **three years**. Now, how do the Defendants attempt to justify such a broad, all-encompassing request? Defendants claim the **Plaintiff's treating physician** has the potential for "bias." Of course, however, a logical dearth exists between the information requested and the Defendants' purported justification.

The medical treatment received by **prior, unrelated** Ortho Sport patients –

and the cost associated therewith – bears no relevance to this personal injury lawsuit or the treatment received by the **subject** Plaintiff. Companywide medical and financial data does not affect the treatment or opinions of the Plaintiff's treating physicians in this case. In fact, Ortho Sport's companywide financial data is intentionally shielded from all Ortho Sport physicians. Ex. F, Youd Affidavit, ¶4. Hence, the very information Defendants claim has the potential to bias the Plaintiff's treating physicians, is not known – or even accessible to – the physicians.[21]

In the matter of *Joann Stewart et al. v. Marcus Brown et al.,* Order No. 1:22-CV-59 (M.D. Ga. Sept. 6, 2023), the Middle District of Georgia previously rejected **identical** "bias" arguments made against the **same** non-party medical provider (i.e., Ortho Sport), by defendants – represented by the **same** defense counsel – seeking the **same** comprehensive health, treatment, financial, and operational data.[22] In *Stewart,* the defendants sought identical database reports and

---

[21] Information and data not known or accessible by a treating physician cannot be the cause of that physician's alleged bias. *See Farley v State*, 225 Ga. App. 687, 691 (1997) ("[B]ias and prejudice must be related to the facts of the case, and the facts must show a self-interest or self-preservation motive to lie in such case, itself; there must be a factual predicate laid …. Such evidence must demonstrate not merely a fishing expedition but must show a specific bias for the prosecution or prejudice against the accused arising from a self-interest…") (emphasis added); *Noellien v. State,* 298 Ga. App. 47, 50 (2009) ("[B]ias 'must be specific to the case, arising from a self-interest or self-preservation motive that could be reasonably inferred to cause testimony to be shaded or distorted.").
[22] Ex. D, *Stewart* Order.

data aggregations;[23] financial information; business associate agreements; corporate records; marketing materials; and more. Ortho Sport objected to the production and motion practice ensued.

After numerous briefings and a hearing on the matter, the Middle District of Georgia issued an extensive Order **denying** the Defendants' Motion to Compel *in toto*. The Court held that the "Defendants' discovery requests [were] **not directly relevant** to any party's 'claim or defense' in [the] case" and that "the Defendants ha[d] not demonstrated that any of the treating physicians employed by Ortho Sport ha[d] a … financial interest in [the] Plaintiff's case." Ex. D,, Order, pg. 4, 6 (emphasis added). The Court further elucidated that:

> [w]ithout evidence suggesting that Plaintiffs' treating physicians are incentivized to provide favorable testimony by a direct financial interest in the case or by their referral relationship with Plaintiffs' Counsel, Defendants have failed to establish that their discovery requests seek information relevant to the treating physicians' allege bias. **Although the scope of discovery is broad, 'the discovery rules do not permit the [parties] to go on a fishing expedition.' 'This is**

---

[23] Defendants' Motion to Compel in *Stewart* specifically requested the creation and subsequent production of financial database reports: "Attached hereto as Exhibit 'E' are the … instructions … necessary to create the eClinicalWorks Financial Analysis Report 37.08…. Defendants therefore request an Order compelling OSSP … to follow these steps to produce the Financial Analysis Report or an equivalent demonstrating the volume and value of the OSSP patients who are clients of the Morgan & Morgan law firm, including the account receivable balances, account receivable payments and account receivable write-offs for the time period of 3-years prior to Plaintiffs' first date of treatment." *Stewart*, No. 1:22-CV-59, (Doc. 20 at 13).

**especially true where, as here, that fishing expedition would come at the time and expense of a non-party to this litigation.'"[24]**

*Ex. D,* Order, pg. 8 (citation omitted) (emphasis added).[25]

Here, as in *Stewart,* **no** Ortho Sport physician – including the Plaintiff's treating physicians – maintain a financial interest in the underlying case. Affidavit of Steve Youd ("Youd Affidavit"), ¶3-7, 9, attached hereto as **Exhibit "F"**. All Ortho physicians are W-2 employees, paid a fixed salary. Ex. F, Youd Affidavit, ¶3. No Ortho Sport physician has a referral or business relationship with any attorney. Ex. F, Youd Affidavit, ¶6.

Defendants currently seek the same information under the same failed analysis previously asserted in *Stewart.* Identical to the foregoing cases, the Defendants here have not – and cannot – establish any financial interest or bias on the part of the treating physicians and have not otherwise established sufficient relevancy of the requested operational, financial, and (unrelated) treatment information sought through Defendants' Subpoena.

2. **Defendants Seek Information/Documentation Unrelated to the "Reasonableness of Plaintiff's Medical Expenses."**

Analogous to the Defendants' "bias" arguments, Defendants improperly attempt to utilize the "reasonableness of medical expenses" analysis as a pretextual

---

[24] The Court elected not to address the unduly burdensome nature of the Defendants' document requests as the Defendants "failed to establish the relevancy for the discovery they wish[ed] to obtain from Ortho Sport…" Ex. D, Order, pg. 9, fn. 2.
[25] *See also, Gordon v. Rowley,* 2021 WL 5150073 (M.D. Ga. November 21, 2021).

justification to discover information/documents wholly unrelated to the Plaintiff's medical expenses. Again, referencing Defendants' Request No. 2, Defendants seeks the compelled creation and subsequent production of a database report, which - if created - would purportedly contain comprehensive medical and financial data for medical expenses incurred by **different** patients, receiving **different** medical treatment, by **different** medical providers, at **different** locations, in **different** states, during **different** times, and paid through **different** forms of payments (in-network health insurance, out-of-network health insurance, worker's compensation insurance, disability insurance, medical lien, self-pay, etc.). Such information unquestionably lacks any relation to the **subject** Plaintiff's **specific** medical expenses or the reasonableness of the cost thereof.

Defendants' Subpoena further demands the production of HIPAA Privacy Audit Logs [Request No. 1]; the names of **all** sources of patient referrals for **any** Ortho Sport patient over a **three-year** period [Request No. 3]; the names of **all** legal representatives who represented **any** Ortho Sport patient over a **three-year** period (if any) [Request No. 3]; **all** marketing materials distributed over the past **three years** [Request No. 11]; Ortho Sport's HIPAA Business Associate Agreements with unrelated third-party vendors [Request No. 15]; Ortho Sport's Articles of Incorporation [Request No. 20]; and more. None of the foregoing

14

information is relevant to the "reasonableness" of Plaintiff Jimmar's medical expenses.

**3.    Defendants' Document Requests are Disproportional to the Needs of the Case.**

Pretermitting the fact that such requested information is irrelevant, it is nevertheless overly broad, unduly burdensome, and disproportional to the needs of the case. "With the express inclusion of proportionality in the scope of discovery calculus, it is now clear that the Court has a responsibility to consider the proportionality of all discovery requests no matter how relevant the information sought may be."[26] "Proportionality requires counsel and the court to consider whether relevant information is discoverable in view of the needs of the case. In making this determination, the court is guided by the non-exclusive list of factors in Rule 26(b)(1)."[27] "Any application of the proportionality factors must start with the actual claims and defenses in the case, and a consideration of how and to what degree the requested discovery bears on those claims and defenses." Id. The proportionality factors include "the importance of the issues at stake in the action, the amount in controversy, the parties' access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the

---

[26] *Dowdy v. Geico General Insurance Company*, 2017 WL 10765264 at *1 (M.D. Ga. June 30, 2017).
[27] *Cottone v. Cottone*, 2017 WL 9250366 at *2 (N.D. Ga. October 11, 2017).

burden or expense of the proposed discovery outweighs its likely benefit." FRCP 26(b)(1).

A. The Requested Information Lacks Any Importance To the Underlying Lawsuit.

Defendants' Subpoena seeks various and broad profusions of non-party information that bears little to no importance to the claims or defenses of the parties to the underlying lawsuit.[28] Additionally, as discussed in detail below, the alleged "importance" of any financial data is further diminished by the plethora of publicly available information capable of analyzing the "reasonableness" of a medical practice's charges.

Furthermore, it is difficult to envision any scenario relating Ortho Sport's marketing materials, HIPAA Privacy Agreements, unrelated governmental disputes, or Articles of Organization to the purported discovery inquiries of "physician bias" or "reasonableness of medical expenses." Stated plainly, the foregoing information simply lacks "importance" to the underlying personal injury lawsuit.

In contrast, Ortho Sport maintains a significant interest in maintaining the private and confidential nature of its financial and operational information, as well

---

[28] *See Herman v. Seaworld Parks & Entertainment, Inc.*, 2016 WL 3746421 at * 3 (M.D. Fla. July 13, 2016) (holding that, because non-party contracts were irrelevant to the issues of the case, the non-party contracts had no "importance" or "likely benefit" in resolving the issues).

as the health and treatment information of its prior patients. Accordingly, the first proportionality factor weighs against disclosure.

B. Compliance With Defendants' Subpoena Would Force Non-Party Ortho Sport to Significant Costs.

      i.    Defendants Subpoena Requires the Creation of Comprehensive Database Reports.

Defendants' Subpoena seeks copious "database reports" and "data aggregations", detailing the health, treatment, and financial information of *any* patient treated at *any* of the thirty (30) Ortho Sport clinics and facilities located across Georgia, Texas, or Illinois over a span of *three years*. Notably, Ortho Sport does not generate the requested "database reports" in its ordinary course of business and would be required to gather, create, and audit a new document/comprehensive "database report" to comply with the Defendants' Subpoena.

      ii.    In Order to Properly Evaluate the Database Report, if Generated and Produced, Ortho Sport Would Require to Produce Scores of Additional Information/Documents, Further Increasing Its Discovery Costs.

Assuming the requested "database report" was generated, additional irrelevant information - including HIPAA protected information - would further be required to properly evaluate the report. For example, in order for a finder of fact to be able to properly evaluate any prior adjustment/write-off provided to a former Ortho Sport patient, the finder of fact would need to be able to consider (1) the

identity of the former patient; (2) the type of medical treatment received by the former patient; (3) the amount billed to the former patient for the specific medical treatment received; (4) the amount paid by the former patient; (5) the insured status of the former patient; (6) the financial resources of the former patient; and (7) **all** information previously considered by Ortho Sport in taking an adjustment/write-off.

The likelihood of an adjustment/write-off being provided to a patient who underwent spine surgery and subsequently filed for Chapter 7 Bankruptcy will be much different than that of a patient who underwent a few office visits or maintains significant assets. Hence, in order to properly analyze Ortho Sport's prior "acceptance amounts," a finder of fact would need to consider the specific facts of each prior case wherein an adjustment/write-off was accepted – effectively requiring the trying of cases within cases.[29]

In *Dowdy v. Geico Insurance Company*, *supra*, the Middle District of Georgia considered a similar discovery burden placed upon a **party** insurance company in a bad faith claim dispute. In *Dowdy*, the insured sought the following discovery against the insurer:

---

[29] It is well established and has been consistently held that in controversies between two persons regarding a given subject-matter, evidence as to what occurred between one party and a third person with reference to a similar, though entirely distinct transaction, is irrelevant. *Merchants' National Bank of Rome v. Greenwood*, 113 Ga. 306 (1901); *Quinton v. Peck*, 195 Ga. 299 (1943); *Ga. Power Company v. Brooks*, 207 Ga. 406 (1950); *Nodvin v. Plantation Pipe Line Co.*, 204 Ga. App. 606, 615 (1992).

> A summary of all claims in which (1) there was a time-limited demand for the policy limits; (2) [Insurer] rejected that demand by offering less than the policy limits or zero; (3) [Insurer] carried an amount at least equal to the policy limits in reserve; (4) [Insurer] had internally determined that its insured was liable for the claim; and (5) the claim resulted in an excess judgment or settlement or is still pending.

*Dowdy v. Geico General Insurance Company, 2017 WL 10765264 at 1 (M.D. Ga. June 2017).* The insurance company objected to the requests and subsequently moved for a protective order on the grounds that the request was overly broad and would impose an undue burden upon the insurance company.[30]

Although the Court acknowledged the possible relevance of the prior or "other similar incident" evidence, the Court conducted a proportionality analysis and ultimately granted the insurance company's motion for protective order. The Court held that:

> [T]he evidence [the insured] seeks is not proportional to the needs of this case.
> …
> **The collection and disclosure of the information will be only the first battle in this war. Next, the parties will engage in another round of litigation arguing over how similar the prior cases are to the present case such that evidence of the prior cases should or should not be admitted at trial.** *See Borden, Inc. v. Fla. E. Coast Ry. Co.,* 772 F.2d 750, 755 (11th Cir. 1985) (discussing admissibility of prior similar incident evidence). For example, the Court will have to determine whether a herniation to a cervical vertebrae in one case is similar to the lumbar disc injury in this case; whether the extent of the property damage (which may indicate force of impact) in another case

---

[30] *Dowdy v. Geico General Insurance Company*, 2017 WL 10765264 at 3 (M.D. Ga. June 2017).

is similar to the property damage in this case; whether the difference between the preexisting conditions in another case makes the case too dissimilar to be admitted; whether it matters that other lawyers were involved; whether the same time limit was placed on the previous demands; whether the venue where the case would be tried makes a difference; and, whether a different adjuster was involved. All of these and similar questions will have to be evaluated through a plethora of motions in *limine* and possible evidentiary hearings.

When it is determined which prior cases are to be admitted, yet more litigation will erupt (likely in the form of countless motions in *limine*), asking the Court to limit the type of evidence that may be admitted to prove the similar incidents. Then, if the evidence makes it through the admissibility gate, a jury will have to consider it and determine the weight to which it is entitled. This will expand a garden variety bad-faith claim into a series of mini-trials involving other claims by other insureds with other injuries and other policy limits.

*Dowdy*, 2017 WL 10765264 at *3.

Analogous to *Dowdy*, after Ortho Sport generated and produced the requested Database Report – which, in and of itself, imposes an undue burden – Ortho Sport would then have to scour all of its files wherein an adjustment was taken and evaluate each HIPAA protected factor considered in taking that adjustment, to the extent such factors could be identified. Ortho Sport would then be required to compare and contrast those factors to the subject Plaintiff; determine (or speculate) whether those factors would apply here; and subsequently disclose those factors (which would undoubtedly contain additional HIPAA protected information of Ortho Sport's prior, unrelated patients) to the parties. The parties would then inevitably dispute the similarity between the prior patients and subject

20

Plaintiff, resulting in a series of mini-trials, all of which would inexorably require Ortho Sport's involvement despite its non-party status.

As such, without more, the requested Report will be of *de minimis* value, and will be negligible in "resolving the issues" that pertaining to the underlying dispute.[31] This is putting aside the fact that creating the Report itself creates an undue burden and invades Ortho Sport's privacy interests.

   C. Comparable Information is Available Elsewhere, Through Less
       Intrusive Means.

Much like the reasonableness of an attorneys' fees are determined by what the attorney charges– and not what he collects– so too is a medical provider's fees' reasonableness determined by the amounts they charge.  To the extent defendants' claim that the Ortho Sport's medical charges are not reasonable, there are vast arrays of publicly available data readily accessible.

Defendants can challenge the reasonableness of the Plaintiff's medical expenses through far less intrusive means. Federal law requires all U.S. hospitals to publicly post their standard charges and discounted cash prices. 45 CFR § 180.10; 180.50; 180.60. In Georgia, this pricing information is centrally compiled by the Department of Community Health for all hospitals in Georgia.[32] Additionally, defendants have access to numerous commercial databases that calculate the

---

[31] Fed. R. Civ. Proc. 26(b)(1).
[32] *See* https://dch.georgia.gov/hospital-transparency-information. This information is both free and easily accessible online.

"usual, customary, and reasonable" rates for medical services by geographic area. Licensing this readily available data is significantly less costly than litigating this discovery dispute.

The Federal Rule's proportionality analysis requires this Court to consider the parties "access to relevant information" and the "importance of the discovery in resolving the issues."[33] Assuming *arguendo* that the information Defendants seek is relevant for the purposes of whether Ortho's fees are reasonable, the plethora of information publicly available to Defendants wholly eliminates any alleged need or importance for the requested payment information.

D. <u>Defendants' Subpoena is Overly Broad and Imposes an Undue Burden Upon Non-Party Ortho Sport.</u>

The Eleventh Circuit routinely limits or quash discovery requests that are overbroad and impose an undue burden, especially on non-parties. In *Bitpay, Inc. v. Massachusetts Bay Insurance Company*[34], this Court found an insured's request for documents related to all prior hacking claims was overly broad and disproportional because it would require the insurer to produce evidence without regard to the manner or method of the hack. That request demanded all documents "relating to coverage under... commercial crime policies for losses or claims resulting from... the hacking of a computer system." This Court denied this request because it would

---

[33] Fed. R. Civ. Proc. 26(b)(1).
[34] *Bitpay, Inc. v. Massachusetts Bay Ins. Co.*, 315 F.R.D. 698 (N.D. Ga. 2016).

have forced the defendant to produce evidence of "any and every claim" involving a hacked computer system, "**without regard to the manner or method in which the system was hacked**."[35] This Court concluded that the potential probative value of such information was "almost certainly be outweighed by the undue burden of producing such voluminous discovery."[36]

Here, the Defendants' requests for three years of financial and referral data from Ortho Sport are directly analogous to the overbroad request this Court rejected in *Bitpay*. Just as the insurer in *Bitpay* was not required to produce voluminous records of every hacking claim regardless of the specific method used, Ortho Sport—a **non-party**—should not be required to produce three years of highly sensitive billing and referral data for thousands of **unrelated** patients. The central flaw is the same: the request is untethered from the specific facts of the case and seeks a vast trove of information "**without regard to**" the single most important factor— the actual patient, Ms. Jimmar, and the specific treatment at issue in this litigation. The "undue burden of producing such voluminous discovery" on a non-party like Ortho Sport far outweighs any conceivable benefit to the Defendants.

Other Eleventh Circuit holdings support Ortho Sport's contention that Defendants' Requests are disproportionate to the needs of the case. In

---

[35] *Id.* at 701-702.
[36] *Id.*

*Collins-Williams v. Contour Eastwyck LLC*[37], a court in this District granted a protective order to limit a subpoena seeking "unfettered access" to a decedent's cell phone, finding the request disproportionate to the needs of the case, "overbroad and unacceptably annoying," and refusing to permit a party to "'rifle through private, irrelevant' communications." Similarly, In *VIP Auto Glass, Inc. v. GEICO*[38], the court quashed a subpoena seeking the prices a non-party charged to other insurers, finding the request sought material that was not proportional to the needs of the case. Other courts have reached the same conclusion, denying discovery into a corporate parent where it had no role in the alleged breach of contract, finding it irrelevant and disproportional (*Steel Erectors, Inc. v. AIM Steel International, Inc.*[39]) ; finding a request for the identities of "all persons" involved in advertising a trademark to be overly broad and not narrowly tailored (*Rubenstein Law, P.A. v. Friedman Law Associates, P.L.*[40]) ; and finding a request for all projects a company had worked on for the past 10 years to be unduly burdensome and not proportional and instead limiting discovery to the specific areas in which the defendant performed work (*Crom, LLC v. Preload, LLC*[41]).

---

[37] *Collins-Williams v. Contour Eastwyck LLC*, No. 1:20-CV-03129-CAP, 2021 WL 2476470 (N.D.G.A.. May 14, 2021).

[38] *VIP Auto Glass, Inc. v. GEICO Gen. Ins. Co.*, 8:16-CV-2012-MSS-JSS, 2018 WL 3649638, at *2 (M.D. Fla. Jan. 3, 2018).

[39] *Steel Erectors, Inc. v. AIM Steel Int'l, Inc.*, 312 F.R.D. 673 (S.D. Ga. 2016).

[40] *Rubenstein Law, P.A. v. Friedman Law Associates, P.L.*, 8:16-CV-1511-T-36JSS, 2017 WL 1093625, at *4 (M.D. Fla. Mar. 23, 2017).

[41] *Crom, LLC v. Preload, LLC*, 1:16-CV-238-WTH-GRJ, 2017 WL 2408126, at *4 (N.D. Fla. June 2, 2017).

This reasoning is not unique to the Eleventh Circuit. For example, in *Moses H. Cone Memorial Hospital Operating Corporation v. Conifer Physician Services*[42], the court narrowed a discovery request seeking information on the billing of all Medicaid recipients to only those recipients who were patients of the defendant, finding the original request overbroad and unduly burdensome. Likewise, in *Connecticut General Life Insurance Company v. Advanced Surgery Center of Bethesda, LLC*[43], a court found that discovery into a non-party's entire business model had such minimal value to the disputed fraud issue that it could not meet the proportionality requirements of Rule 26(b)(1). Defendants' requests here—seeking three years of financial and referral data for thousands of non-party patients, corporate governing documents, documents "relating to" federal and state agency complaints, marketing materials, malpractice policies, and the like—are precisely the kind of overbroad, burdensome, and disproportionate "fishing expeditions" that these cases prohibit.

## **CONCLUSION**

WHEREFORE, for the reasons set forth above, Non-Party Ortho Sport respectfully requests this Court **GRANT** Ortho Sport's request for a Protective Order and enter the Proposed Order filed concurrently herewith.

---

[42] *Moses H. Cone Mem'l Hosp. Operating Corp. v. Conifer Physician Servs.*, 1:13CV651, 2016 WL 4007605, at *4 (M.D.N.C. July 26, 2016).
[43] *Connecticut Gen. Life Ins. Co. v. Advanced Surgery Ctr. of Bethesda, LLC*, CV DKC 14-2376, 2016 WL 7115952, at *1 (D. Md. Dec. 7, 2016).

This 14th day of October, 2025.

/s/ Evan David Szczepanski

**YASHA HEIDARI**
Georgia Bar No.: 110325
**EVAN SMITH**
Georgia Bar No.: 514676
**EVAN DAVID SZCZEPANSKI**
Georgia Bar No.: 519263

**DELGADO HEIDARI LLC**
2997 Cobb Parkway #724615
Atlanta, Georgia 31139          *Counsel for Non-Party*
Tel.: 404-939-2742              *Ortho Sport & Spine Physicians, LLC*
Fax: 404-601-7852
yasha@dhlawteam.com
ees@dhlawteam.com
eds@dhlawteam.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1C. This document has been prepared in Times New Roman font, 14 point.

This 14th day of October, 2025.

/s/ *Evan David Szczepanski*
**EVAN DAVID SZCZEPANSKI**
Georgia Bar No.: 519263

27

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of the within and foregoing *Non-Party Ortho Sport & Spine Physicians, LLC's Amended Motion for Protective Order* was served electronically by operation of the Court's electronic filing system upon all counsels of record, to wit:

| | |
|---|---|
| Kevin P. Branch | Rob Loar |
| Elenore C. Klingler | Janelle Zabresky |
| MCMICKLE, KUREY & BRANCH, LLP | WLG ATLANTA, LLC |
| 217 Roswell Street, Suite 200 | 600 Peachtree Street N.E., Suite 4010 |
| Alpharetta, Georgia 30009 | Atlanta, GA 30308 |
| | |
| | *Attorneys for Plaintiff* |
| *Attorneys for Defendants* | |

This 14th day of October, 2025.

/s/ *Evan David Szczepanski*
**EVAN DAVID SZCZEPANSKI**
Georgia Bar No.: 519263

**Counsel for Non-Party**
**Ortho Sport & Spine Physicians,**
**LLC**

**DELGADO HEIDARI LLC**
2997 Cobb Parkway #724615
Atlanta, Georgia 31139
Tel.: 404-939-2742
Fax: 404-601-7852
eds@dhlawteam.com

28

**EXHIBIT A**

Law Offices
# McMICKLE, KUREY & BRANCH, LLP

217 ROSWELL STREET, SUITE 200
ALPHARETTA, GEORGIA 30009

www.mkblawfirm.com

TELEPHONE 678 824-7800                                        ELENORE C. KLINGLER
FACSIMILE 678 824-7801                                        eklingler@mkblawfirm.com

May 13, 2025

**Ortho Sport and Spine Physicians, LLC**
c/o Yasha Heidari as Registered Agent
via O.C.G.A. §§ 9-11-5 and 9-11-34(c) "STATUTORY ELECTRONIC SERVICE" to:
Yasha@HPlawgroup.com; and Yasha@DHlawteam.com
and via Federal Express and private process server to:
5788 Roswell Road
Atlanta, GA 30328

and to[1]

**Ortho Sport and Spine Physicians, LLC d/b/a or a/k/a Premier Medical Consultants, LLC**
via Federal Express to
c/o CT Corporation System
289 South Culver Street
Lawrenceville, GA 30046

and to

**Ortho Sport and Spine Physicians, LLC d/b/a or a/k/a "Falcon Marketing, LLC"**
via Federal Express to:
c/o Registered Agents Inc.
8735 Dunwoody Place, Suite R
Atlanta, GA 30350

and to

**Ortho Sport and Spine Physicians, LLC d/b/a or a/k/a "Fortress Data Solutions"**
via Federal Express to:

---

[1] Ortho Sport & Spine Physicians, LLC has consistently adopted the practice of creating shell company entities, including but not limited to Black Crystal Consulting, LLC, Logix US, LLC, Medernix, LLC, Maranex, LLC, Fortress Data Solutions, and Falcon Marketing, LLC, for the sole purpose of "firewalling" or shielding discoverable materials from requests such as those served here by Defendants. Multiple Georgia courts have already found in Orders of record that Ortho Sport is equivalent to these shell companies, and has access to all of their file materials pertinent to Defendants' non-party requests supplied herein. In an effort to avoid unnecessary expense, Defendants here are jointly serving these non-party requests upon Ortho Sport & Spine Physicians, LLC as well as upon each and every one of its known shell companies – many of which have been intentionally dissolved by Ortho Sport, but which remain subject to service pursuant to Georgia's corporate winding up statutes.

M1280519.1 17426

c/o Matthew A. Stubblefield
991 Somerset Drive NE
Atlanta, GA 30327

**Amended Subpoena to reflect every instance of Date of Birth to be changed to: January 15, 1960.**

Re:    Patient         :        Mae Jimmar
        Date of Birth     :        01/15/1960
        Our File No.     :        3288-17734 (KPB/ECK)

Dear Subpoena Compliance Officer:

The enclosed *amended* subpoena has been served on you in accordance with Rules 34(c) and 45, Federal Rules of Civil Procedure.  **The purpose of the *amended* subpoena is for the production of documents only.  Your response to this subpoena is required by simply returning the requested records to me at the above address along with your statement for the reproduction of these records.**  Also enclosed is a Certificate of Authentication of Records.  Please return the original certificate to me along with the requested records.  Please advise me if the cost of reproducing these records exceeds $50.00 prior to reproducing such records.  You may send an invoice, along with your company's W-9, via email to msessions@mkblawfirm.com  or via fax to my attention at (678) 824-7801.

HIPAA is applicable to the medical records of parties in suit.  In light of Federal law, 45 C.F.R. § 164.512, providers are required to send claimant's medical records, billing records and radiographic films.

The regulations governing HIPAA, 45 C.F.R. § 164.512, state as follows:

(e)    Standard: disclosures for judicial and administrative proceedings.

    (1)    Permitted disclosures. A covered entity may disclose protected health information in the course of any judicial or administrative proceeding:

        (ii)    In response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal, if:

            (A)    The covered entity receives satisfactory assurance, as described in paragraph (e)(1)(iii) of this section, from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request;

        (iii)    For the purposes of paragraph (e)(1)(ii)(A) of this section, a covered entity receives satisfactory assurances from a party seeking protected health information if the covered entity receives from such party a written statement and accompanying documentation demonstrating that:

M1280519.1 17426

(A)     The party requesting such information has made a good faith attempt to provide written notice to the individual (or, if the individual's location is unknown, to mail a notice to the individual's last known address);

(B)     The notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court or administrative tribunal; and

(C)     The time for the individual to raise objections to the court or administrative tribunal has elapsed, and:

(*1*)     No objections were filed; or

(*2*)     All objections filed by the individual have been resolved by the court or the administrative tribunal and the disclosures being sought are consistent with such resolution.

In this case, Plaintiff's records are being requested via amended subpoena in the course of a civil action in which Plaintiff put his/her medical history at issue. This amended subpoena is being served upon Plaintiff's counsel concurrent with this letter and clearly satisfies the written notice requirements of (e)(1)(iii).

If you have any questions or if I can be of assistance, please do not hesitate to contact me. It is most important that we receive these records as quickly as possible. Thank you for your cooperation in this matter.

With kind regards,
*/s/ Elenore C. Klingler*
ELENORE C. KLINGLER
For the Firm

ECK/mas
Enclosure
Cc:     All counsel of Record (w/encl.)

# PROTECTED HEALTH INFORMATION POTENTIALLY RELATED TO REPRODUCTIVE HEALTH CARE

| |
|---|
| Name of person(s) or specific identification of the class of persons to receive the requested PHI. *e.g., name of investigator and/or agency making the request* |
| **McMickle, Kurey & Branch, LLP** |
| Name or other specific identification of the person or class of persons from whom you are requesting the use or disclosure. *e.g., name of covered entity or business associate that maintains the PHI and/or name of their workforce member who handles requests for PHI* |
| **Ortho Sport and Spine Physicians, LLC** |
| Description of specific PHI requested, including name(s) of individual(s), if practicable, or a description of the class of individuals, whose protected health information you are requesting. |
| **Any and all records associated with Mae Jimmar (DOB: January 15, 1960)** |

I attest that the use or disclosure of PHI that I am requesting is not for a purpose prohibited by the HIPAA Privacy Rule at 45 CFR 164.502(a)(5)(iii) because of one of the following (check one box):

✓ **The purpose of the use or disclosure of protected health information is <u>not</u> to investigate or impose liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care or to identify any person for such purposes.**

☐ The purpose of the use or disclosure of protected health information **<u>is</u>** to investigate or impose liability on any person for the mere act of seeking, obtaining, providing, or facilitating reproductive health care, or to identify any person for such purposes, but the reproductive health care at issue was **<u>not lawful</u>** under the circumstances in which it was provided.

I understand that I may be subject to criminal penalties pursuant to 42 U.S.C. 1320d-6 if I knowingly and in violation of HIPAA obtain individually identifiable health information relating to an individual or disclose individually identifiable health information to another person.

*Signature of the person requesting the PHI*

*Elenore C. Klingler*                                    Date: <u>May 13, 2025</u>

M1280519.1 17426

**Ortho Sport and Spine Physicians, LLC**
c/o Yasha Heidari as Registered Agent
5788 Roswell Road
Atlanta, GA 30328

d/b/a
**Premier Medical Consultants, LLC**
c/o CT Corporation System
289 South Culver Street
Lawrenceville, GA 30046

d/b/a
**Falcon Marketing, LLC**
c/o Registered Agents Inc.
8735 Dunwoody Place,
Suite R
Atlanta, GA 30350

d/b/a
**Fortress Data Solutions**
c/o Matthew A. Stubblefield
991 Somerset Drive NE
Atlanta, GA 30327

## CERTIFICATE OF AUTHENTICATION OF RECORDS

THE UNDERSIGNED, Custodian of Records for **Ortho Sport and Spine Physicians, LLC a/k/a Premier Medical Solutions, LLC a/k/a Falcon Marketing LLC a/k/a Fortress Data Solutions**, certifies that the enclosed records are a complete and accurate reproductions of the records of this facility concerning **Mae Jimmar**. The records attached were: (1) made at or near the time of the acts, occurrence, events, conditions, opinions, or diagnoses of the matters set forth by, or from information transmitted by, a person with knowledge of such matters; (2) made by, or from information transmitted by, a person with personal knowledge and a business duty to report; (3) kept in the course of a regularly conducted business activity; and (4) it was the regular practice of our business activity to make the attached memorandum, report, record, or data compilation and the records were made as part of a regularly conducted activity as our regular practice.

_____
CUSTODIAN OF RECORDS

Sworn to and subscribed before me this
_____ day of _____, 20_

_____
Notary Public
My Commission Expires:

M1280519.1 17426

AO 88B (Rev. 2/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 1)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### Atlanta Division

MAE JIMMAR,

     Plaintiffs,

v.

COCA-COLA BOTTLING COMPANY
UNITED, INC. and TRAVON BENNETT

     Defendants.

CIVIL ACTION
1:25-cv-01045-SCJ

## AMENDED SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

**TO:** **Ortho Sport and Spine Physicians, LLC**
c/o Yasha Heidari as Registered Agent
5788 Roswell Road
Atlanta, GA 30328

d/b/a
**Premier Medical Consultants, LLC**
c/o CT Corp. System
289 South Culver Street
Lawrenceville, GA 30046

d/b/a
**Falcon Marketing, LLC**
c/o Registered Agents Inc.
8735 Dunwoody Place, Suite R
Atlanta, GA 30350

d/b/a
**Fortress Data Solutions**
c/o Matthew A. Stubblefield
991 Somerset Drive NE
Atlanta, GA 30327

■ *Production:*   **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: **SEE ATTACHMENT "A"**

| Place: | Date and Time: |
|---|---|
| McMickle, Kurey & Branch, LLP, 217 Roswell Street, Suite 200, Alpharetta, GA  30009 (678)824-7800 | June 3, 2025, at 10:00 a.m. EST |

□ *Inspection of Premises:*   **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
|  |  |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

**Date:** May 13, 2025

**CLERK OF COURT**

OR

_____
***Signature of Clerk or Deputy Clerk***

*/s/ Elenore C. Klingler*
_____
***Attorney's Signature Elenore C. Klingler***

The name, address, e-mail address, and telephone number of the attorney representing **Coca-Cola Bottling Company United, Inc.-Defendant** who issues or requests this subpoena, are: **Elenore C. Klinger, Esq., GA Bar No 425190, McMickle, Kurey & Branch, LLP, 217 Roswell St., Suite 200,**

M1280519.1 17426

**Alpharetta, GA 30009, (678) 824-7800; eklingler@mkblawfirm.com. Notice to the person who issues or requests this subpoena -** If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and copy of the subpoena must be served on each party to this case before it is served on the person to whom it is directed, Fed. R. Civ. P. 45(a)(4).

M1280519.1 17426

AO 88B (Rev. 2/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action  (Page 2)

**PROOF OF SERVICE**
*(This section should not be filed with the court unless required by Fed.R. Civ. P. 45)*

      **I received this subpoena for (***name of individual and title, if any***) _____**
**on (***date***) _____**

      ■ I served the amended subpoena by delivering a copy to the named person as follows:  **Via Federal Express to:**

| | | |
|---|---|---|
| **Ortho Sport and Spine Physicians, LLC**<br>c/o Yasha Heidari as Registered Agent<br>5788 Roswell Road<br>Atlanta, GA 30328 | d/b/a<br>**Premier Medical Consultants, LLC**<br>c/o CT Corp. System<br>289 South Culver Street<br>Lawrenceville, GA 30046 | d/b/a<br>**Falcon Marketing, LLC**<br>c/o Registered Agents Inc.<br>8735 Dunwoody Place,<br>Suite R<br>Atlanta, GA 30350 |

d/b/a
**Fortress Data Solutions**
c/o Matthew A. Stubblefield
991 Somerset Drive NE
Atlanta, GA 30327

      on *(date)* May 13, 2025, or

      □ I returned the subpoena unexecuted because: _____

_____

      Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of $_____

My fees are $_____ for travel and $_____ for services, for a total of $_____

I declare under penalty of perjury that this information is true.


Date: May 13, 2024,                */s/ Elenore C. Klingler_____*
                                       *Server's signature*

                                     **Elenore C. Klingler, Attorney_____**
                                       *Printed name and title*

                                       **McMickle, Kurey & Branch, LLP,**
                                       **217 Roswell Street, Suite 200**
                                       **Alpharetta, GA 30009**
                                       **Tel. No. (678) 824-7800_____**
                                       *Server's address*

Additional information regarding attempted service, etc.:

M1280519.1 17426

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

**Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)**

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
**(i)** is a party or a party's officer; or
**(ii)** is commanded to attend a trial and would not incur substantial expense.
  **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction— which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested.
The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
  **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
  **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
  **(i)** fails to allow a reasonable time to comply;
  **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
  **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
  **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
  **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

  **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
  **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
  **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
  **(i)** expressly make the claim; and
  **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

---

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

---

M1280519.1 17426

**ATTACHMENT "A"**

Re:    Patient            :    Mae Jimmar
       Date of Birth      :    01/15/1960
       Our File No.       :    3288-17734 (KPB/ ECK)

**Amended Subpoena to reflect every instance of Date of Birth to be changed to: January 15, 1960.**

PURSUANT TO AMENDED SUBPOENA, please produce:

**CERTIFIED COPIES** of all documents in your possession, custody or control, or **accessible to you,** regarding the above-referenced patient, including all records responsive to the requests below which may reside in **any computer system or database (e.g. "eClinicalWorks", "Salesforce," "CareCloud", "Centricity", "AthenaHealth," "Microsoft Outlook," "Microsoft Excel," "MySQL" etc.) used by, accessible to, controlled by, or shared between your office** or offices and any other office or offices (specifically including any database shared with or accessible to any employee, owner or affiliate of Black Crystal Consulting, LLC, Logix US, LLC, Medernix, LLC, Maranex, LLC, Fortress Data Solutions, LLC, Falcon Marketing Group, LLC, Premier Medical Consultants, LLC, or any of their subsidiaries, affiliates, or successors-in-interest), including but not limited to:

1. Screenshots of each and every page of any electronic database accessible to you, or in your possession, custody or control touching upon this case, Plaintiff, or any aspect of his/her treatment or lawsuit, specifically including the eClinicalWorks and Salesforce databases;

   a. Complete copies of the audit log or "changelog" mandated by HIPAA for any electronic medical records database you maintain with respect to the above-named Plaintiff;

M1280519.1 17426

2. A complete copy of any spreadsheet, itemization of charges, or other database information of any nature whatsoever evidencing the amounts you have billed as well as the amounts you have negotiated or accepted in satisfaction of your bills issued to patients, with the "responsible party" or referral source identified for each of those patients, for the time period beginning January 1, 2021, through and including December 31, 2023[2], limited to the states of Georgia, Texas, and Illinois.[3]

    a. This request specifically includes but is not limited to **eClinicalWorks Report 37.08**, subject to the search parameters set forth above, which may be produced from your dataset by following the instructions set forth in the attached Exhibit "A";

    b. **This request does NOT seek any HIPAA-protected personal identifying information** and it is stipulated that you may redact any patient names, addresses, email addresses, phone numbers, or patient identifying numbers, etc. that may be included within the report, excepting only the above-referenced Plaintiff/patient. This request seeks anonymized data only.

3. A complete copy of any other documents, reports or evidence demonstrating the identities of referral sources for your patients or identities of legal representation for your patients first receiving treatment beginning January 1, 2021, through and including December 31, 2023, that are not otherwise contained in the database report requested above, subject to the same stipulations as set forth above as to geographic

---

[2] The language for this request has been taken from Judge Grimberg's order in Goins v. Seagraves, 1:23-cv-02951-SDG, attached.

[3] This geographic area is limited to the states in which Plaintiff's counsel currently operates.

limitation and anonymization of individuals other than the instant Plaintiff/patient;

4. A copy of all medical records in your possession, custody or control with respect to the above-named patient; including:

    a. Reports of all diagnostic studies;

    b. Copies of any and all films, including but not limited to x-rays, CT scans, MRI scans, EEG, EKG, NCS and Doppler flow studies;

    c. Reports of physical therapy and any other ancillary therapies (occupational, recreational, etc.);

    d. Reports submitted by consultants;

    e. Progress notes and reports of physicians, nurses and any other allied health professionals;

    f. Handwritten and typed office notes;

    g. All tests, test results and raw data;

5. A copy of each and every form or document bearing the **hand-writing** or signature of either the above-referenced Plaintiff or the above-referenced Plaintiff's past or present counsel of record; including:

    a. All Letters of Protection;

    b. All Irrevocable Letters of Direction;

    c. All Letters of Agreement;

    d. All documents pertaining to any liens;

    e. All waivers of health insurance or any other right or privilege;

    f. All assignments;

g.  All intake forms;

h.  All incident reports or summaries;

i.  All statements, sworn or otherwise;

6.  All communications between your office or offices **or any of your agents, specifically including Premier Medical Consultants, LLC, Falcon Marketing LLC, "Fortress Data Solutions," Maranex, LLC, Medernix, LLC, Logix US, LLC, and Black Crystal Consulting, LLC,** with Plaintiff's past or present counsel of record, including:

a.  All emails between any member of your staff and any member of Plaintiff's legal team *accessible to you* whether or not same are in your possession;

b.  The complete contents of the Microsoft Outlook recordkeeping database (or any similar database) for you and any of your agents with respect to the above-referenced patient;

c.  All emails between or carbon copying your legal counsel and any staffer or legal counsel for **Premier Medical Consultants, LLC, Falcon Marketing LLC, "Fortress Data Solutions," Maranex, LLC, Medernix, LLC, Logix US, LLC, and Black Crystal Consulting, LLC**, or any other third party entity, and/or any member of Plaintiff's legal team, pertaining to any aspect of this litigation or the above-referenced Plaintiff's treatment, including scheduling;

d.  All emails, communications or other documents created by or accessible to Armin Oskouei, Yasha Heidari, Matthew Stubblefield or Vivian Assis, or any case manager who has communicated with Plaintiff's legal team with respect to this Plaintiff's treatment and/or legal claim;

M1280519.1 17426

7. All communications between your office or offices and any medical funding or litigation funding provider regarding the above-referenced Plaintiff; including:

    a. All records of any referral from any member of your staff to any medical or litigation funding company;

    b. All records, spreadsheets or other data transferred by you to any medical funding company or provider which demonstrate the average amount you accept in satisfaction of your bills (medical or otherwise) issued to similarly-situated plaintiffs;

    c. Any and all forms whereby you or any other entity requires plaintiffs to waive their medical insurance in order to secure treatment on a lien basis, whether filled out by the patient or not;

8. All documents dealing with how the patient was referred to your office or practice group, including any referral emails or web forms;

    a. All intake sheets secured from the above-reference plaintiff or any member of plaintiff's legal team;

    b. All forms requesting status updates, incident reports, information regarding the presence or absence of cameras at the time of plaintiff's injury, and other background data issued to the above-referenced plaintiff OR any member of the above-referenced plaintiff's legal team, whether complete or not;

9. Any and all contracts, liens, assignments of rights, agreements to pay, or other legal instruments potentially giving you or anyone with your practice group a financial interest in the outcome of this litigation; including:

M1280519.1 17426

  a. Any and all contracts with any third-party medical funding or factoring company whereby you or any member of your practice group have transferred part or all of your interest in the lien under which you provided treatment in this case;

10. All text messages exchanged *or accessible to you* pertaining to this Plaintiff or this case, including any text messages between any employee, **agent** or representative of your organization and Plaintiff, *as well as* all text messages exchanged between any employee or representative of your organization and any member of Plaintiff's legal team;

11. All marketing materials distributed to any member of Plaintiff's present or past legal team within the last three years; including:

  a. Any invitations to parties or information sessions;

  b. Any and all invitations to sporting events, vacations, including free tickets to Braves or Falcons or Hawks games;

  c. Documentation of any and all gifts, tickets, or in-kind payments of any nature distributed to any member of Plaintiff's legal team;

12. All internal emails, chat room logs, text messages or other communications in any way related to the above-referenced patient, his/her lawsuit, or his/her bills;

13. Any and all reports provided by any employee or representative of your organization to any funding provider regarding the subject litigation or Plaintiff's medical treatment;

14. Any and all notes, records or other documents generated by any "Case Managers" relating in any way to the above-named patient, specifically including any emails or

records of phone calls generated during or after their regular work schedules by such employees in the course of their communications with personal injury attorneys (or their staff), as outlined in *Currie, Washington & Anderson v. Ortho Sport & Spine*, U.S. Northern District of Georgia, CAFN 1:17-cv-03532;

15. Complete copies of all Business Associate Agreements created pursuant to HIPAA for any and all third-party medical providers or partners who have been involved in the above-referenced plaintiff's care through your clinic; specifically including:

   a. The Business Associate Agreement between Ortho Sport & Spine Physicians or any of its subsidiaries and Premier Medical Consultants, LLC, Falcon Marketing LLC, "Fortress Data Solutions," Maranex, LLC, Medernix, LLC, Logix US, LLC, and Black Crystal Consulting, LLC, or any of their subsidiaries or successors-in-interest;

16. All policies or notices addressing whether you accept private medical insurance, versus treating patients only subject to other forms of payment (i.e. self-pay, pursuant to lien, etc.);

17. Declarations pages from all errors and omissions or medical malpractice insurance agreements covering your operations, specifically including identification of all insurance policies providing coverage for the types and forms of medical treatment you rendered to the above-referenced Plaintiff;

18. Any and all documents evidencing a disciplinary history with the Composite Medical Board of this State or any other State for the specific medical professionals who provided treatment to the above-referenced Plaintiff via your clinic;

M1280519.1 17426

19. Any and all notices of investigation provided to you by any state or federal agency, including the Georgia Composite Medical Board, the Georgia Bureau of Investigation and the Federal Bureau of Investigation, or any other state or federal regulatory or investigatory body;

20. Your articles of incorporation, and any documents evidencing shared ownership interest between Ortho Sport & Spine Physicians, LLC, Premier Medical Consultants, LLC, Falcon Marketing LLC, "Fortress Data Solutions," Maranex, LLC, Medernix, LLC, Logix US, LLC, and Black Crystal Consulting, LLC, or any of their subsidiaries or successors-in-interest;

21. Any and all other documentation in your possession with regard to the above-named patient.

22. IF ANY PHYSICIAN AFFILIATED WITH YOUR PRACTICE REASONABLY ANTICIPATES THAT HE OR SHE WILL TESTIFY AS AN EXPERT IN THIS CASE, please produce a complete copy of all documents, notes, and summaries of information gathered upon which the expert will rely in rendering his or her expert opinion. This request specifically includes all material in the expert's file which will be relied upon to perform a differential analysis so as to render a valid and admissible causation opinion, as well as all correspondence or communications with any lawyer or party who asks for narrative opinions or physician testimony.

**CERTIFIED COPIES** of all radiological studies and reports generated as a result of those studies, including x-rays, CT scans, MRI scans, EEG, EKG, NCS and Doppler flow studies pertaining to above-named patient.

**CERTIFIED COPIES** of all versions of your complete record of statements of charges, adjustments, and payments received regarding all examinations and treatment at any time rendered to the above-referenced patient.

**NOTE: This request is continuing in nature. You have a responsibility to supplement the materials requested herein through the trial of this case. All production should be accompanied by a Certification of the Authenticity of the records produced therein in compliance with the rules of court. Additionally, any supplemental production should be separately Certified by your records custodian.**

**You may send photocopies of such documents to the address stated below, and the reasonable cost of reproduction will be paid by the named defendant(s).**

MCMICKLE, KUREY & BRANCH, L.L.P.
217 Roswell St., Suite 200
Alpharetta, Georgia 30009
Telephone: (678) 824-7800
Facsimile: (678) 824-7801

This 13th day of May 2025.

**MCMICKLE, KUREY & BRANCH, LLP**

*/s/ Elenore C. Klingler*
KEVIN P. BRANCH
Georgia Bar No. 111839
ELENORE C.KLINGLER
Georgia Bar No. 425190
***Attorneys for Defendants***

217 Roswell Street, Suite 200
Alpharetta, GA 30009
Telephone:     (678) 824-7800
Facsimile:     (678) 824-7801

M1280519.1 17426

# CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the foregoing **AMENDED SUBPOENA FOR THE PRODUCTION OF DOCUMENTS** via certified mail, return receipt requested, in a properly addressed envelope with adequate postage thereon to:

**VIA FEDERAL EXPRESS**
Janelle Zabresky, Esq.
Rob Loar, Esq.
WLG Atlanta, LLC
Bank of America Plaza
600 Peachtree Street, NE, Suite 4010
Atlanta, GA 30308
*Attorneys for Plaintiff*

**VIA FEDERAL EXPRESS**
"Premier Medical Consultants, LLC"
c/o CT Corporation System
289 South Culver Street
Lawrenceville, GA 30046

**VIA PRIVATE PROCESS SERVER**
**VIA FEDERAL EXPRESS**
Ortho Sport and Spine Physicians, LLC
c/o Yasha Heidari as Registered Agent
5788 Roswell Road
Atlanta, GA 30328

**VIA FEDERAL EXPRESS**
Ortho Sport and Spine Physicians, LLC d/b/a
or a/k/a "Falcon Marketing, LLC"
c/o Registered Agents Inc.
8735 Dunwoody Place, Suite R
Atlanta, GA 30350

**VIA FEDERAL EXPRESS**
Ortho Sport and Spine Physicians, LLC d/b/a
or a/k/a "Fortress Data Solutions"
c/o Matthew A. Stubblefield
991 Somerset Drive NE
Atlanta, GA 30327

and via O.C.G.A. §§ 9-11-5 and 9-11-34(c) "STATUTORY ELECTRONIC SERVICE" thereon to as follows:

Ortho Sport and Spine Physicians, LLC
c/o Yasha Heidari as Registered Agent
5788 Roswell Road
Atlanta, GA 30328
Yasha@HPlawgroup.com
Yasha@DHlawteam.com

Respectfully submitted this 13th day of May 2025.

M1280519.1 17426

**MCMICKLE, KUREY & BRANCH, LLP**

*/s/ Elenore C. Klingler*
KEVIN P. BRANCH
Georgia Bar No. 111839
ELENORE C. KLINGLER
Georgia Bar No. 425190
***Attorneys for Defendants***

M1280519.1 17426

# EXHIBIT "A"

The 37.08 – Financial Analysis at CPT Level (With Everything) contains an enhanced financial analysis at the CPT level, with filter and grouping options.  Under standard circumstances, the time effort of generating the 37.08 – Financial Analysis at CPT Level (With Everything), including run time is less than ten (10) minutes.  To generate the report, complete the following steps.

*Unless elsewhere indicated, items are selected with a single click.*

1. Log into eClinicalWorks
2. Select the Left Navigation Panel selection icon



3. Select the Menu icon



4. Select the Reports tab



5. Select eBO Reports



6. The eBO window will display
   a. Depending on the configuration, the window will display in either *Portal view* or *Classic view*.
   b. If Portal view displays, select Classic view



7. The eBO Public Folders will display
8. Select the eCWEBO link



    a. If the eCWEBO folder is not displayed, use the page navigation arrows to navigate to additional pages until you locate the eCWEBO folder.



9. The eCWEBO folder will display
10. Select the 3-Financial Reports folder



11. The 3-Financial Reports folder will display
12. Select 37-Financial Analysis - CPT Level folder



13. The 37-Financial Analysis – CPT Level folder will display
14. To configure the report output, select the corresponding Run with options icon for the 37.08 - Financial Analysis at CPT Level (With Everything)



15. The Run with Options window will display
16. Set the fields as follows:
    a.  Format: Excel 2007 Data
    b.  Delivery: View the report now
    c.  Prompt Values: checkbox Prompt for values
    d.  Select the Run button



17. The report prompt page will display.  This page requires prompts or filters to be selected to determine the data to be contained in the report.  Start at the upper left corner and work downward.

18. Set the report prompt selection fields as follows:
    *a.*   Date Type: Custom Date
    *b - e.* Calendar range fields: Enter required begin and end dates using the calendar function



   *f.*  Filter charges by: Claim Date
   *g.*  Transaction Type: Unassociated



   *h.*  Transaction Types: Select Charge, Payment, Refund, and Write Off



*i.* Group the Report by:

Group 1: Referring Provider

Group 2: Payer Name

*Note: if you identify the entity or person that is responsible for the payment of the services in an alternative field, select that field in this grouping.*

Group 3: Patient Acct No

Group 4: CPT Code / Description

All subtotals should be set to No.



*j.* Transactions to be displayed: Checkbox all except for Payment %



19. Select the ok button to run the report



*Dependent upon the amount of data, the report can take approximately between less than one (1) minute to five (5) minutes to complete*

20. When completed, the report icon will display at the bottom left side of the screen
21. Select the report icon to launch the report



22. The report will display
23. Depending on your settings, you may need to select the Enable Editing button in order to edit the report



24. To redact the patient account number field, select column A by clicking the A
    a.  When selected, the column will highlight



b. With the column still highlighted, from the Home tab, select the highlight tool

c. From the Theme colors, select the darkest black option



d. The column will now appear in black, obscuring or blocking out patient identifiers.



25. The report should be saved in a format which does not allow the obscured patient identifiers to have the block-out removed.  In this case, PDF is the desired output

    *a.* Select the File menu



    *b.* Select Print



The Print page will display

*c.* Printer: Select Microsoft Print to PDF or other alternative printing function to save in PDF

*d.* Orientation: Landscape Orientation

*e.* Margins: Narrow Margins

*f.* Fit All Columns on One Page



*g.* Select Print to save



Case 1:25-cv-01045-SCJ   Document 40   Filed 10/14/25   Page 59 of 127

26. The Save Print Output As window will appear
27. Select you saving location
28. Enter your File name
29. Select Save



The report will be saved in the selected location.  Print or electronically sent the report from that location.

# Report Output Example

**Unassociated** from **Mar 1, 2023** until **Mar 3, 2023**   (Custom Date)

## 37.08 - Financial Analysis at CPT Level (With Everything)

| Patient Acct No / Payer Name | Referring Provider | CPT Code / Description | Billed Charge | Payer Charge | Self Charge | Payment | Payer Payment | Patient Payment | Contractual Adjustment | Payer Withheld | Writeoff Adjustment | Refund | Patient Count | Claim Count | Units | Change in A/R |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| AARP UNITED HEALTHCARE SUPPLEMENT | Test, Michael C | 9921 : Office Visit, Est Pt., Level | $0.00 | $0.00 | $0.00 | $127.05 | $127.05 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($127.05) |
| | | J1100 : INJ DEXETHASONE SOD M PHOSPHATE 1 MG | $0.00 | $0.00 | $0.00 | $0.25 | $0.25 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($0.25) |
| MED CARE PART B | Test, Michael C | 6 93 : INJ PARAVERT F JNT LS 1 LEV | $1,392.00 | $1,392.00 | $0.00 | $129.83 | $129.83 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $1,392.00 |
| | | 6 9 : INJ PARAVERT F JNT LS 2 LEV | $718.00 | $718.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $718.00 |
| MED CARE PART B | Test, Megan A | G0 83 : DR TST DEF IN DR ID M P D 22/M DR CL | $988.00 | $988.00 | $0.00 | $0.00 | $0.00 | $0.00 | $270.85 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $988.00 |
| HUMAN GOLD PLUS HMO | Test, Roy H | 99213 : Office Visit, Est Pt., Level 3 | $0.00 | $0.00 | $0.00 | $78.15 | $78.15 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($3 9.00) |
| Aetna Me icare Premier Plus PPO | Unknown, Provider | G0 83 : DR TST DEF IN DR ID M P D 22/M DR CL | $988.00 | $988.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $988.00 |
| Pa ient | Unknown, Provider | 989 1 : CHIROPRACTIC MANIPULA ION | $0.00 | $0.00 | $0.00 | $51. 6 | $0.00 | $51. 6 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 0 | 0.00 | ($51. 6) |
| BCBS BLUE OPTIONS | Unknown, Provider | 963 2 : THER/PROPH/DIAG NJ, SC/IM | $56.00 | $56.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $56.00 |
| | | 9921 : Office Visit, Est Pt., Level | $508.00 | $508.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $508.00 |
| PALMET O GBA | Test, Amanda | INJ KE OROLAC ROMTE HAMINE 15 MG | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $8.00 |
| | | 80307 : DRUG TEST PRSMV CHEM A N1/ZR | $2 9.00 | $2 9.00 | $0.00 | $0.00 | $0.00 | $0.00 | $286.15 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $2 9.00 |
| UHC GROUP MEDICARE ADVANTAGE PPO | Unknown, Provider | 99213 : Office Visit, Est Pt., Level 3 | $ 58.00 | $ 58.00 | $0.00 | $0.00 | $0.00 | $0.00 | $273.29 | $0.00 | $0.00 | $0.00 | 1 | 0 | 0.00 | $ 58.00 |
| FEDERATED SERVICES INSURANCE CO | Unknown, Provider | 9921 : Office Visit, Est Pt., Level | $0.00 | $0.00 | $0.00 | $168.33 | $168.33 | $0.00 | $339.67 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $508.00 |
| Pa ient | Unknown, Provider | 99212 : Office Visit, Est Pt., Level 2 | $0.00 | $0.00 | $0.00 | $30.00 | $0.00 | $30.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 0 | 0.00 | ($30.00) |
| | | J3301 : INJ TRIAMCINOLONE ACETONIDE 0 MG | $0.00 | $0.00 | $0.00 | $25.00 | $0.00 | $25.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 0 | 0.00 | ($25.00) |
| Self Pay | Unknown, Provider | RSOV : Reschedule OV w 2  hours | $25.00 | $25.00 | $25.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($5.00) |
| UHC DUAL COMPLETE PPO DSNAP | Unknown, Provider | 99213 : Office Visit, Est Pt., Level 3 | $359.00 | $359.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $359.00 |
| PALMET O GBA | Test, Amanda | 80307 : DRUG TEST PRSMV CHEM A N1/ZR | $2 9.00 | $2 9.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $2 9.00 |
| UHC CHOICE PLUS | Unknown, Provider | G0 81 : DR TST DEF IN DR ID M P D 8-1 DR CL | $626.00 | $626.00 | $0.00 | $77.28 | $77.28 | $0.00 | $2,461.96 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $626.00 |
| | | 20551 : INJE T TENDON OR GN INSERT | $286.00 | $286.00 | $0.00 | $27.69 | $27.69 | $0.00 | $1,663.88 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $286.00 |
| Pa ient | Unknown, Provider | 769 2 : ECHO GUIDE FOR BIOPSY | $231.00 | $231.00 | $0.00 | $6.33 | $6.33 | $0.00 | $15.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $231.00 |
| | | J3301 : INJ TRIAMCINOLONE ACETONIDE 0 MG | $1.00 | $1.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 0 | 0.00 | $ .00 |
| AARP MEDICARE ADVANTAGE CHOICE PPO | Unknown, Provider | 9921 : Office Visit, Est Pt., Level | $508.00 | $508.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $508.00 |
| MED CAID OF GA SECONDARY | Unknown, Provider | 6 90 : INJ PARAVERT F JNT C/T 1 LEV | $0.00 | $0.00 | $0.00 | $137.29 | $137.29 | $0.00 | $81.61 | $0.00 | $0.00 | $0.00 | 1 | 1 | 0.00 | ($218.90) |
| PALMET O GBA | Test, Amanda | 6 91 : INJ PARAVERT F JNT C/T 1 LEV | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | $0.00 |
| UHC GROUP MEDICARE ADVANTAGE PPO | Unknown, Provider | 6 633 : DESTROY CERV/THOR FACET JNT | $0.00 | $0.00 | $0.00 | $77.28 | $77.28 | $0.00 | $2,461.96 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($3,313.2 ) |
| | | 6 63 : DESTROY CTH FACET JNT ADDL | $0.00 | $0.00 | $0.00 | $27.69 | $27.69 | $0.00 | $1,663.88 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($3,931.19) |
| | | J1030 : INJ METHYLPRDNISOLONE ACETAT 0 MG | $0.00 | $0.00 | $0.00 | $6.33 | $6.33 | $0.00 | $15.00 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($21.39) |
| BCBS BLUE OPTIONS | Unknown, Provider | 27096 : INJE T SACROILIAC JOINT | $1.28 .00 | $1.28 .00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 2.00 | $1.28 .00 |
| | | J3301 : INJ TRIAMCINOLONE ACETONIDE 0 MG | $8.00 | $8.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 2.00 | $8.00 |
| Pa ient | Unknown, Provider | 27096 : INJE T SACROILIAC JOINT | $0.00 | $0.00 | $0.00 | $230.7 | $0.00 | $230.7 | $0.00 | $0.00 | $0.00 | $0.00 | 0 | 0 | 0.00 | ($230.7 ) |
| BCBS ANTHEM OF GA | Unknown, Provider | 9921 : Office Visit, Est Pt., Level | $508.00 | $508.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 | 1 | 1 | 1.00 | $508.00 |
| **Total** | | | **$9,403.00** | **$9,376.00** | **$25.00** | **$1,742.51** | **$1,402.11** | **$340.40** | **$5,755.17** | **$0.00** | **$0.00** | **$0.00** | **20** | **20** | **25.00** | **$1,905.32** |


**EXHIBIT**

**B**

**FIRST DIVISION
BARNES, P. J.,
GOBEIL and PIPKIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**September 13, 2024**

**NOT TO BE OFFICIALLY REPORTED**

# In the Court of Appeals of Georgia

A24A1310. ORTHO SPORT & SPINE PHYSICIANS, LLC v. MURRAY et al.

A24A1311. MEDERNIX, LLC v. MURRAY et al.

BARNES, Presiding Judge.

These companion appeals arise from a discovery dispute between the defendants and third parties in a personal injury case. The third parties, Ortho Sport & Spine Physicians, LLC, and Medernix, LLC, appeal the trial court's order compelling them to produce a database report and other documents to the defendants ("Production Order") and a related protective order ("Protective Order").[1] Based on our recent controlling decision in *Medernix, LLC v. Snowden*, 372 Ga. App. 48 (903

---

[1] The discovery orders are directly appealable under the collateral order doctrine. See *Benchmark Rehabilitation Partners v. SDJ Logistics*, 367 Ga. App. 203, 204 (2) (885 SE2d 224) (2023).

SE2d 728) (2024), we vacate the Production Order and Protective Order to the extent that they required Ortho Sport and Medernix to create and produce the database report and remand for further proceedings consistent with this opinion.

The record reflects that Sebrina Michael sued Stephen Murray, New Leaf Landscape Services, Inc., and Jane and John Doe defendants in the State Court of Hall County for damages arising from an automobile accident.[2] As part of her damages, Michael sought to recover her past and future medical expenses, including expenses incurred from treatment at Ortho Sport.

During the course of the litigation, the defendants served Ortho Sport and its claims manager, Medernix, with requests for production of records and database materials. When Ortho Sport and Medernix did not produce all of the requested materials, the defendants filed a motion to compel their production. Among other materials, the defendants sought to compel production of a database report revealing Ortho Sport/Medernix's billed charges or rates, as well as any adjustments made to those charges or rates, "categorized by associated law firm referral partner"

---

[2] In addressing the factual and procedural history of these companion appeals, we have taken into account both appellate records. See *Sentinel Offender Svcs. v. Glover*, 296 Ga. 315, 321, n. 13 (766 SE2d 456) (2014) (explaining that reviewing courts may take judicial notice of the records in companion appeals).

("Database Report"). More specifically, the defendants requested that Ortho Sport/Medernix generate eClinicalWorks Report 37.08, "Financial Analysis at CPT Level (With Everything)," a spreadsheet that would list, for every Ortho Sport patient, the amount billed for each visit or procedure at every Ortho Sport location, categorized by CPT code;[3] the amount written-off, adjusted, or accepted in satisfaction for each such bill; the payer of each bill; and information about who referred each patient to Ortho Sport. The defendants requested database information for the past three years, and further advised that all "HIPAA-protected personal identifying information,"[4] such as patient names and addresses, could be redacted.

Ortho Sport and Medernix opposed the defendants' motion to compel, and Ortho Sport also filed a motion for a protective order. Following a hearing, the trial

---

[3] "CPT" code
stands for Current Procedural Terminology codes. CPT codes are a national uniform coding structure created for use in billing and overseen by the American Medical Association. They are used by all health insurance companies and by Medicare and Medicaid. A code represents at least two things: the procedure or service performed and the level of complexity involved in it.

*United States v. Moss*, 34 F4th 1176, 1181-1182 (I) (A) (11th Cir. 2022).

[4] "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996, 42 USC §§ 1320d et seq.

court entered its Production Order granting the defendants' motion to compel production of the Database Report and other requested materials. In conjunction with its Production Order, the trial court entered its Protective Order requiring Ortho Sport and Medernix to redact personal health information of patients from the Database Report and other requested materials in accordance with HIPAA requirements. The Protective Order did not otherwise place any restrictions on the use, dissemination, or confidentiality of the produced materials requested by the defendants.

Ortho Sport and Medernix now appeal these discovery rulings by the trial court. In Case No. A24A1310, Ortho Sport contends that the trial court abused its discretion by entering a protective order that failed to shield it from producing the Database Report. According to Ortho Sport, the Database Report violated its constitutional right of privacy, was overly broad and unduly burdensome, and failed to prevent disclosure of its trade secrets and confidential financial data. In a related argument, Ortho Sport maintains that the trial court abused its discretion in granting the defendants' motion to compel production of the Database Report. In Case No.

A24A1311, Medernix argues that the trial court abused its discretion by compelling it to produce the Database Report and other materials.

The outcome of these companion appeals is squarely controlled by our recent decision in *Medernix*, 372 Ga. App. 48, where we addressed almost identical discovery requests involving the same third parties. Based on the discussion and legal analysis in *Medernix*, we conclude in Case No. A24A1310 that the trial court abused its discretion in denying Ortho Sport's request for a protective order prohibiting production of the Database Report to the defendants and in compelling it to produce the Database Report. See *Medernix*, 372 Ga. App. at 52-56 (1), (2). We therefore vacate the Production Order and Protective Order to the extent that those orders required Ortho Sport to produce the Database Report to the defendants, and we remand for the trial court to determine whether a more limited report can be generated consistent with our opinion in *Medernix*, subject to reasonable restrictions on the use and dissemination of any such report.[5] See id.

---

[5] Ortho Sport also argues on appeal that it cannot be compelled to produce a database report that it did not create in the ordinary course of its business, and that the production of any information about the amounts that it writes off the bills of its third-party patients is barred by the collateral source rule. We analyzed and rejected these same arguments raised by Ortho Sport in *Medernix*, 372 Ga. App. at 56-58 (3), (4).

Likewise, based on the discussion and legal analysis in *Medernix*, we conclude in Case No. A24A1311 that the trial court abused its discretion in requiring Medernix to produce the Database Report and therefore vacate the Production Order and Protective Order to the extent that they required Medernix to produce the Database Report to the defendants. See *Medernix*, 372 Ga. App. at 52-56 (1), (2), 59 (5). We remand for the trial court to determine whether a more limited report can be generated consistent with our opinion in *Medernix*, subject to reasonable restrictions on the use and dissemination of any such report.[6] See id.

---

[6] Medernix also argues on appeal that the trial court erred in compelling it to produce any Ortho Sport documents because it did not have possession, custody, or control over those materials. Additionally, Medernix contends that information regarding the write offs and adjustments to the bills of third-party patients is not discoverable because those amounts represent the settlement of medical debts. We analyzed and rejected these same arguments raised by Medernix in *Medernix*, 372 Ga. App. at 59-62 (6), (7).

Medernix further maintains that the defendants could not compel it to produce a database report or any other materials because they did not engage in a good-faith conferral to resolve the discovery dispute as required by Uniform Superior Court Rule ("USCR") 6.4 (B). However, the record shows that counsel for the defendants sent a 14-page conferral letter to Medernix's counsel on November 2, 2022, explaining the defendants' position and seeking to resolve the discovery dispute, and "[t]here is no requirement in USCR 6.4 that counsel for the movant make more than one attempt to resolve the discovery matter." (Citation and punctuation omitted.) *Gropper v. STO Corp.*, 276 Ga. App. 272, 277 (3) (623 SE2d 175) (2005). See *Mansell 400 Assoc. v. Entex Information Svcs.*, 239 Ga. App. 477, 481 (5) (519 SE2d 46) (1999).

6

We do not authorize the reporting of this opinion because it does not announce a new rule or policy, or involve an interpretation of law that is not already precedent. See Court of Appeals Rules 33.2 (b), 34.

*Judgments vacated in part and cases remanded with direction in Case Nos. A24A1310 and A24A1311. Gobeil and Pipkin, JJ., concur.*

EXHIBIT

C

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| MAE JIMMAR,<br><br>      Plaintiff,<br><br>v.<br><br>COCA-COLA BOTTLING<br>COMPANY UNITED, INC. and<br>TRAVON BENNETT<br><br>      Defendants. | CIVIL ACTION FILE<br>NO. 1:25-cv-01045-SCJ |

**NON-PARTY ORTHO SPORT & SPINE PHYSICIANS, LLC'S OBJECTIONS AND RESPONSES TO DEFENDANTS' SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION**

**COMES NOW**, Non-Party Ortho Sport & Spine Physicians, LLC ("Non-Party"), by and through undersigned counsel, and hereby responds and objects to Defendants' Request for Production of Documents ("Requests") as follows:

**RESPONSES AND OBJECTIONS TO REQUEST FOR PRODUCTION**

Defendants' unnumbered paragraph on page ten (10) of the Requests is overly broad, vague, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Moreover, Defendants' request seeks information unrelated to Mae

Jimmar's ("Patient") medical treatment or the subject matter. Non-Party further objects to Defendants' request to the extent same is directed towards an improper party and/or seeks information in the possession, custody, or control of an individual or entity other than Non-Party.

Non-Party responds and objects to the specifically numbered Requests as follows:

1. Non-Party objects to Request No. 1 on the grounds that same is overly broad, vague, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Non-Party further objects to Request No. 1 to the extent same requests the creation of new documents or the production of duplicative information through alternative means. Subject to and without waiving the foregoing objections, see the documents produced concurrently herewith.

2. Non-Party objects to Request No. 2 on the grounds that same is overly broad, unduly burdensome, manifestly unjust, oppressive, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Non-Party further objects to Request No. 2 on the grounds that same is not narrowly tailored to a reasonable scope or time, nor does it specify with reasonable particularity the type of information sough, as required by FRCP 34. Non-Party further objects to

Request No. 2 on the grounds that same seeks private, confidential, and privileged information protected from dissemination under FRCP 26 and invades Ortho Sport's – and its patients' – constitutionally protected privacy interests. Moreover, Request No. 2 seeks information previously determined to fall outside the scope of discovery by the Georgia Court of Appeals in the matters of *Ortho Sport & Spine Physicians, LLC v. Snowden, et al.*, 372 Ga. App. 48 (June 21, 2024) and *Ortho Sport & Spine Physicians, LLC v. Murray et al.*, Ga. App. Case No.: A24A1310 (September 13, 2024) (certiorari denied).

3. Non-Party objects to Request No. 3 on the grounds that same is overly broad, unduly burdensome, manifestly unjust, oppressive, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Information regarding the potential referral of other patients, not involved in this matter, receiving different treatment, at different locations, during different time periods, by different physicians is irrelevant to the claims or defenses of the underlying parties and thus, falls outside the scope of discovery. Non-Party further objects to Request No. 3 on the grounds that same is not narrowly tailored to a reasonable scope or time, nor does it specify with reasonable particularity the type of information sought, as required by FRCP 34(b). Non-Party further objects to

Page **3** of **13**

Request No. 3 on the grounds that same seeks private, confidential, and privileged information protected from dissemination under FRCP 26 and invades Ortho Sport's constitutionally protected privacy interests. Moreover, Request No. 3 seeks information previously determined to fall outside the scope of discovery by the Georgia Court of Appeals in the matters of *Ortho Sport & Spine Physicians, LLC v. Snowden, et al.*, 372 Ga. App. 48 (June 21, 2024) and *Ortho Sport & Spine Physicians, LLC v. Murray et al.*, Ga. App. Case No.: A24A1310 (September 13, 2024) (certiorari denied).

4. See the documents produced concurrently herewith.

5. See the documents produced concurrently herewith.

6. Non-Party objects to Request No. 6 on the grounds that same is overly broad, vague, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Non-Party further objects to Request No. 6 to the extent same is directed towards an improper party and/or seeks information in the possession, custody, or control of an individual or entity other than Non-Party. Subject to and without waiving the foregoing objections, see the documents produced concurrently herewith.

7. Non-Party has no responsive documents.

8. Non-Party objects to Request No. 8 on the grounds that same is overly broad, vague, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Subject to and without waving the foregoing objections, see the documents produced concurrently herewith.

9. See the documents produced concurrently herewith. Responding further, no third-party medical funding or factoring company involvement exists in this matter.

10. Non-Party objects to Request No. 10 on the grounds that same is overly broad, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Subject to and without waiving the foregoing objections, see the documents produced concurrently herewith.

11. Non-Party objects to Request No. 11 on the grounds that same is overly broad, vague, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Any effort to market Non-Party is wholly irrelevant to any claim or defense of the underlying parties. Moreover, all marketing efforts are confidential and proprietary, and thus protected from disclosure. Non-Party further objects to Request No. 11 on the grounds that same request is not

narrowly tailored in scope or time. Rather, Request No. 11 seeks "[a]ll marketing materials … [for] the last three years…."

12. Non-Party objects to Request No. 12 on the grounds that same is overly broad and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Subject to and without waiving the foregoing objections, see the documents produced concurrently herewith.

13. Non-Party has no responsive documents.

14. Non-Party has no responsive documents.

15. Non-Party objects to Request No. 15 on the grounds that same is overly broad, unduly burdensome, manifestly unjust, oppressive, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Information regarding the HIPAA Business Associate Agreements entered into by Non-Party and other third parties are entirely unrelated to the instant matter. Rather, the purpose of a Business Associate Agreement is to ensure the adequate protection of a patient's protected health information – an issue not in question here. Non-Party further objects to Request No. 15 on the grounds that same seeks private, confidential, and privileged information protected from dissemination under

FRCP 26 and invades Ortho Sport's constitutionally protected privacy interests.

16. Non-Party objects to Request No. 16 on the grounds that same seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Subject to and without waiving the foregoing objections, Non-Party acknowledges that it accepts private medical insurance.

17. Non-Party objects to Request No. 17 on the grounds that same seeks confidential information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Subject to and without waiving the foregoing objections, Non-Party will agree to produce the declaration pages for the medical malpractice insurance policies covering Patient's treating physicians following the execution of a confidentiality agreement limiting the use and disclosure of the subject declaration pages to the underlying litigation and attorneys of record therein.

18. Non-Party objects to Request No. 18 on the grounds that same is directed towards an improper party and/or seeks information in the possession of an individual or entity other than Non-Party. Any inquiries regarding the proceedings or holdings of the Composite Medical Board of Georgia or any other state should be directed to the applicable state board.

19. Non-Party objects to Request No. 19 on the grounds that same is overly broad, unduly burdensome, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. Moreover, it is self-evident that defense counsel's only reason for posing Request No. 19 is to further harass and defame Non-Party. The requested information is unrelated to any claim or defense of the underlying parties. Non-Party objects to Request No. 19 on the grounds that same is directed towards an improper party and/or seeks information in the possession of an individual or entity other than Non-Party. Any inquiries regarding the actions of any state or federal agency should be directed to the applicable agency.

20. Non-Party objects to Request No. 20 on the grounds that same is overly broad, vague, and seeks information not reasonably calculated to lead to the discovery of admissible evidence and disproportional to the needs of the case. The requested information is unrelated to the claims or defenses of the underlying parties. Non-Party further objects to Request No. 20 to the extent same is directed towards an improper entity and/or seeks information in the possession of an individual or entity other than Non-Party.

21. Non-Party objects to Request No. 21 on the grounds that same is overly broad, vague, unduly burdensome, and seeks information not reasonably calculated

to lead to the discovery of admissible evidence and disproportional to the needs of the case. Subject to and without waiving the foregoing objections, see the documents produced concurrently herewith.

22. Non-Party objects to Request No. 22 on the grounds that same is directed towards an improper party and/or seeks information in the possession of an individual or entity other than Non-Party. Non-Party is unaware whether any underlying party has or intends to designate any Non-Party physician as an expert witness in this matter. Additionally, if designated, all information "upon which the expert will rely …" should come from the designated expert.

Regarding Defendants' first unnumbered paragraph on page seventeen (17) of the Requests, subject to and without waiving the foregoing objections, see the documents produced concurrently herewith.

Defendants' second unnumbered paragraph on page eighteen (18) of the Requests is overly broad and vague to the extent that same requests "all versions" of the Patient's statement of charges, adjustments, and payments received. Subject to and without waiving the foregoing objections, see the documents produced concurrently herewith.

*[Signature on Following Page]*

Page **9** of **13**

This 27th day of May, 2025.

By:   /s/ Stephen G. Carlson
**YASHA HEIDARI**
Georgia Bar No.: 110325
**EVAN SMITH**
Georgia Bar No.: 514676
**STEPHEN G. CARLSON**
Georgia Bar No.: 670714

***ATTORNEYS FOR NON-PARTY ORTHO SPORT AND SPINE PHYSICIANS, LLC***

**HEIDARI POWER LAW GROUP, LLC**
2997 Cobb Parkway #724615
Atlanta, Georgia 31139
Tel.: 404-939-2742
Fax: 404-601-7852

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1C. This document has been prepared in Times New Roman font, 14 point.

This 27th day of May, 2025.

By:   */s/ Stephen G. Carlson*
      **STEPHEN G. CARLSON**
      Georgia Bar No.: 670714

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of the within and foregoing *NON-PARTY ORTHO SPORT & SPINE PHYSICIANS, LLC'S OBJECTIONS AND RESPONSES TO DEFENDANTS' SUBPEONA TO PRODUCE DOCUMENTS, INFORMATION OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION* was served electronically by operation of the Court's electronic filing system [PACER] and/or Federal Express upon all counsels of record, to wit:

Kevin P. Branch
Elenore C. Klingler
MCMICKLE, KUREY & BRANCH, LLP
217 Roswell Street, Suite 200
Alpharetta, Georgia 30009

*Attorneys for Defendants*

Janelle Zabresky
Rob Loar
WLG ATLANTA, LLC
Bank of America Plaza
600 Peachtree Street, NE, Suite 4010
Atlanta, Georgia 30308

*Attorneys for Plaintiff*

*[Signature on Following Page]*

Page **12** of **13**

This 27th day of May, 2025.

By:    /s/ Stephen G. Carlson
       **STEPHEN G. CARLSON**
       Georgia Bar No.: 670714

       ***ATTORNEY FOR NON-PARTY***
       ***ORTHO SPORT & SPINE***
       ***PHYSICIANS, LLC***

**HEIDARI POWER LAW GROUP, LLC**
2997 Cobb Parkway #724615
Atlanta, Georgia 31139
Tel.: 404-939-2742
Fax: 404-601-7852
stephen@dhlawteam.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
### ALBANY DIVISION

EXHIBIT

D

| | | |
|---|---|---|
| JOANN STEWART and JOYCE OWENS, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.: 1:22-CV-59 (LAG) |
| | : | |
| MARCUS LEONARD BROWN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER

Before the Court is Defendants Marcus Leonard Brown and K&S Transportation, LLC's Motion to Compel Ortho Sport and Spine Physicians, LLC and Medernix, LLC. (Doc. 20). For the reasons explained below, Defendants' Motion is **DENIED**.

## BACKGROUND

This case arises from a motor vehicle collision on December 4, 2020, in Lee County, Georgia. (Doc. 1 ¶¶ 8–9, 11). Plaintiff Joyce Owens alleges that she was driving north on Highway 82 when her vehicle was hit by a tractor-trailer truck operated by Defendant Marcus Leonard Brown on behalf of K&S Transportation, LLC. *Owens v. Brown*, No. 1:22-CV-58 (LAG), (Doc. 1 ¶¶ 8–12) (M.D. Ga. filed May 4, 2022). Owens alleges that "Brown improperly changed lanes into the lane occupied by [] Owens and . . . collided with [her] vehicle, causing a serious crash." *Id.* (Doc. 1 ¶ 11). Both Owens and her passenger, Joann Stewart, allege that they have "suffered severe and permanent injuries" as a result of the crash. *Id.* (Doc. 1 ¶ 13); (Doc. 1 ¶ 13). On May 4, 2022, Plaintiffs filed separate actions against the same Defendants: Brown, K&S Transportation, LLC, and Sentry Select Insurance Company. (Doc. 1); *Owens*, No. 1:22-CV-58 (LAG), (Doc. 1). Plaintiffs assert claims for negligence, imputed liability, negligent training, direct action, and punitive damages. (Doc. 1 ¶¶ 14–37). On October 11, 2022, the cases were consolidated. (Doc. 13).

The present Motion involves subpoenas sent to nonparties Ortho Sport & Spine Physicians, LLC and Medernix, LLC. (*See* Doc. 20 at 1). Ortho Sport is an orthopedic medical practice that provided the majority of Plaintiffs' medical treatment following the December 4, 2020 accident and that employs several treating physicians that Plaintiffs anticipate calling as witnesses. (*Id.*; Doc. 25 at 5). Medernix is a vendor that Ortho Sport contracts with to handle patient billing. (Doc. 20 at 2; Doc. 28 at 2). On August 26, 2022, Defendants served a Subpoena to Produce Documents, Information, or Objects on Ortho Sport. (Doc. 20-1). The Ortho Sport Subpoena contained eleven document requests. (*Id.* at 9–12). On September 27, 2022, Defendants served Subpoenas to Produce Documents, Information, or Objects on Medernix. (Docs. 20-2, 20-3). The Medernix Subpoenas contained twenty-five document requests, with many requests including multiple subparts. (Doc. 20-2 at 4–11; Doc. 20-3 at 4–11). Both Ortho Sport and Medernix timely served objections to the subpoenas. (*See* Doc. 20 at 3).

A discovery conference was held on January 17, 2023. (Doc. 17). Defendants filed the present Motion to Compel on February 7, 2023. (Doc. 20). Ortho Sport filed a Motion for Protective Order and Response to Defendants' Motion to Compel on February 21, 2023, and Defendants replied on February 28, 2023. (Docs. 25, 27). On March 14, 2023, Medernix responded to Defendants' Motion to Compel. (Doc. 28). Defendants filed a Reply to Medernix's Response on March 17, 2023. (Doc. 32). Thus, Defendants' Motion to Compel is ripe for review. *See* M.D. Ga. L.R. 7.3.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "[T]he relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (first citing Fed. R. Civ. P. 26(b)(1); and then citing Fed. R. Evid. 401); *see also* Fed. R. Evid. 401(a) (providing that relevant information must

2

have a "tendency to make a [consequential] fact more or less probable"). Whether discovery is proportional to the needs of the case involves consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"For purposes of discovery, a party may subpoena information from a nonparty to litigation," subject to the protections set forth in Rule 45. *Jordan*, 947 F.3d at 1329 (citing Fed. R. Civ. P. 45(d)(1), (3)); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). Rule 45 "protects [a nonparty] subpoena recipient by requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena'" and by permitting a court to "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Jordan*, 947 F.3d at 1329 (citation omitted); Fed. R. Civ. P. 45(d)(1). Thus, the Court must weigh the requesting party's need for the discovery against the burden imposed on the subpoenaed party. *See Jordan*, 947 F.3d at 1337 (citations omitted). Rule 45 also sets forth the procedures for a party seeking to obtain an order of compliance from a nonparty: "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Eckhardt v. United States*, No. 5:19-cv-00266-TES, 2021 WL 2516555, at *3 (M.D. Ga. June 18, 2021) (alteration in original) (quoting *Cottone v. Cottone*, No. 1:15-CV-3584-MHC, 2017 WL 9250366, at *2 (N.D. Ga. Oct. 11, 2017)).

## DISCUSSION

Defendants' Motion to Compel seeks a Court order requiring Ortho Sport and Medernix to produce the following categories of information: (1) "evidence demonstrating the volume and value of patient accounts for plaintiff-patients" of Ortho Sport "who are

3

also clients of the Morgan & Morgan law firm"; (2) "the number of actions in which [Ortho Sport] employee-physicians have testified or have issued causation opinions"; (3) all "notes regarding [Medernix employee's] interactions with Plaintiffs' legal representatives and communications with Plaintiffs' legal representatives, including, but not limited to approvals or denials of treatment, requests regarding case updates, case valuations[,] and the like"; and (4) "any contract touching upon [Ortho Sport or Medernix's] relationship with the Morgan & Morgan [l]aw [f]irm or with any third party with any form of interest in this case (including but not limited to any Letters of Protection or lien contracts regarding Plaintiffs' care at [Ortho Sport])." (Doc. 20 at 2–3, 5, 10, 14). Ortho Sport and Medernix argue that Defendants' Motion to Compel must be denied pursuant to Rule 45(d) because the discovery sought is not relevant and the Subpoenas are unduly burdensome. (Doc. 25 at 9–21; Doc. 28 at 9–16).

As the party seeking to compel discovery, Defendants have "the initial burden of proving that the information sought is relevant." *See Eckhardt*, 2021 WL 2516555, at \*3 (citation omitted). Defendants' discovery requests are not directly relevant to any party's "claim or defense" in this case. *See* Fed. R. Civ. P. 26(b)(1). As the Eleventh Circuit has explained, "the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan*, 947 F.3d at 1329 (first citing Fed. R. Civ. P. 26(b)(1); and then citing Fed. R. Evid. 401). Here, Plaintiffs assert claims for negligence, imputed liability, negligent training, direct action, and punitive damages. (Doc. 1 ¶¶ 14–37). Importantly, Defendants state their Subpoenas "do not . . . seek evidence related to the reasonableness of [Ortho Sport]'s medical bills," as Plaintiffs are not requesting special damages in this action. (Doc. 20 at 1 n.1). Thus, Defendants' discovery requests are relevant solely for impeaching the credibility of Plaintiffs' treating physicians who are employed by Ortho Sport.

Defendants argue that they "have the legal right to a thorough and sifting cross-examination of the witnesses against them, particularly where those witnesses have a financial interest in the case." (Doc. 27 at 3). Defendants also argue that they "are entitled to conduct discovery as to the nature and extent of the business dealings between [Ortho

4

Sport] and Morgan & Morgan" because "the relationship between the two entities would weigh on a treating physician's decision to testify as to the cause of an injury" and "[e]vidence of shared patient-clients . . . certainly makes bias more probable than it would be without the evidence." (*Id.* at 2–4). Defendants rely on the Eleventh Circuit's decision in *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293 (11th Cir. 2018), in support of their argument. (Doc. 20 at 4–5; Doc. 27 at 2). In *ML Healthcare*, a third-party funding company had a business model of matching injured, uninsured patients who had viable tort claims with treating physicians. 881 F.3d at 1301. The third-party funding company would then purchase the medical bills generated by those physicians at a discounted rate. *Id.* The Eleventh Circuit noted that the risk that a plaintiff would not pay their debt would increase substantially if a plaintiff did not recover damages. *Id.* at 1301–02. And "if a doctor did not provide a favorable causation analysis . . ., [the third-party funding company] likely would find other doctors who would." *Id.* at 1302. Thus, both the treating physicians and the third-party funding company had a financial interest in a plaintiff winning their lawsuit. *Id.* While Georgia's "collateral source rule" typically prevents the introduction of evidence regarding "the receipt of benefits or mitigation of loss from sources other than the defendant," *id.* at 1298 (citation omitted), the Eleventh Circuit held in *ML Healthcare* that when a treating physician testified on behalf of the plaintiff at trial, "[t]he district court did not abuse its discretion" by allowing evidence of this business arrangement "to be admitted for the limited purpose of showing bias on the part of the doctors who testified" on the plaintiff's behalf, *id.* at 1302.

"Here, unlike in *ML Healthcare*, there is no evidence of a scheme that makes" Ortho Sport and Morgan & Morgan's relationship, or Medernix's "involvement probative on any issue[.]" *See Gordon v. Rowley*, No. 4:20-CV-84 (CDL), 2021 WL 5150073, at *2 (M.D. Ga. Nov. 4, 2021). Defendants do not assert that Ortho Sport or Medernix is a third-party litigation funding company like ML Healthcare. In fact, Defendants concede that "there is not believed to be any outside funding relationship involved" in this matter. (Doc. 20 at 5). Further, as support for their response to Defendants' Motion to Compel, Ortho Sport submitted the affidavit of the Ortho Sport CEO, Steve Loud. (Doc. 25-1). Therein, Loud

states that "[t]he accounts receivable and amounts owed to Ortho Sport" for Plaintiffs' treatment "ha[ve] not been sold, and there is no involvement by a third-party litigation funding company." (*Id.* ¶ 8). Thus, the business model the Eleventh Circuit found could create a potential bias in *ML Healthcare* is distinguishable from the facts of this case.

Moreover, Defendants have not demonstrated that any of the treating physicians employed by Ortho Sport have a similar financial interest in Plaintiffs' case. In its Response to Defendants' Motion to Compel, Ortho Sport explains that both Plaintiffs have "executed Letters of Protection." (Doc. 25 at 5). Under these Letters of Protection, which Ortho Sport describes as "contractual promise[s] to pay," Plaintiffs were "permitted to undergo necessary medical treatment and defer payment until a later date." (*Id.*). Ortho Sport explains that, under this arrangement, Plaintiffs' "outstanding medical debt is collateralized by any potential claim arising from the alleged injuries; however, [Plaintiffs] remain[] personally liable for the entire balance." (*Id.*). Ortho Sport states that, unlike other orthopedic clinics, its "physicians do not maintain a financial interest in any of the medical treatment provided," as the "physicians are salaried employees and have no ownership in the company." (*Id.* at 6 (emphasis omitted); *see* Doc. 25-1 ¶¶ 3–4). While Defendants are entitled to discovery regarding these Letters of Protection, Ortho Sport already produced these documents to Defendants. (*See* Doc. 25 at 5). Furthermore, the fact that Plaintiffs have executed Letters of Protection with Ortho Sport does not establish the relevance of the more extensive financial information Defendants seek. *See* Fed. R. Civ. P. 26(b)(1). "Indeed, the practice of a medical provider asserting a lien (or requiring a patient to assign all insurance benefits to a medical provider) is commonplace and in no way points to the fact that [Ortho Sport], solely on that basis, has an interest in the outcome of this case." *See* *Barber v. Barnaby*, No. 1:18-cv-4925-AT, (Doc. 31 at 5–6) (N.D. Ga. Mar. 15, 2019).

Defendants argue that they are nonetheless "entitled to discovery as to [Ortho Sport]'s financial interests and relationship with Morgan & Morgan" because "[i]f Morgan & Morgan is shown to have a business relationship with [Ortho Sport] spanning hundreds of patients . . ., then those figures would be highly probative of an ongoing pattern and practice of always offering the same favorable causation opinion to [Ortho Sport]'s

plaintiff-patients." (Doc. 27 at 6; Doc. 20 at 7). Georgia courts, however, have found that the fact that an attorney has referred a client to a medical provider for treatment, standing alone, is not relevant to show bias or improper conduct. *See, e.g.*, *Joiner-Carosi v. Adekoya*, 850 S.E.2d 823, 830 (Ga. Ct. App. 2020) (finding that the trial court did not err "in excluding evidence regarding any attorney referral of [the plaintiff] to his medical providers" where the defendant failed to "explain how evidence of attorney referrals to [the plaintiff's] medical providers [was] relevant to the issues in th[e] case"); *Stephens v. Castro-Castano*, 814 S.E.2d 434, 441 (Ga. Ct. App. 2018) (finding that "the trial court did not abuse its discretion by excluding evidence of [the plaintiff]'s referral to [her treating physician] by her attorney as irrelevant"). Moreover, Defendants have made no showing that either Plaintiff in this case was referred to Ortho Sport for treatment by their attorney, who no longer works for Morgan & Morgan,[1] or by any other person employed by the law firm. Ortho Sport's CEO also avers that "Ortho Sport's treating physicians have no referral relationship or financial arrangement with any legal counsel or funding company" and that "Ortho Sport's treating physicians do not communicate—directly or indirectly—with any patient's legal counsel." (Doc. 25-1 ¶¶ 5–6). Absent testimony or other evidence demonstrating that any referral relationship between Ortho Sport's treating physicians and Morgan & Morgan is relevant to this case—to the extent any such relationship exists— Defendants have failed to show that their request for information regarding shared patients and clients of these entities or their internal communications is "relevant to any party's claim or defense and proportional to the needs of th[is] case." *See* Fed. R. Civ. P. 26(b)(1).

As for Defendants' request for "the number of actions in which [Ortho Sport] employee-physicians have testified or have issued causation opinions," Defendants also have not demonstrated the relevance of this request. (Doc. 20 at 5). Plaintiffs have stipulated that Dr. Jeffery Lee is the sole Ortho Sport treating physician they intend to call

---

[1] When Plaintiffs filed suit, they were represented by two attorneys from the law firm Morgan & Morgan, Jon Hawk and Jason Downey. (*See* Doc. 1 at 11–12). On October 26, 2022, Mr. Hawk notified the Court that he no longer worked for Morgan & Morgan but would continue to serve as lead counsel on the case. (Doc. 15 at 1). Mr. Downey withdrew as counsel for Plaintiffs on February 7, 2023. (Doc. 18 at 1).

as an expert witness. (*See* Doc. 34 at 1). Federal Rule of Civil Procedure 26 provides that all expert witnesses must include in their report "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition," and "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(v), (vi). "Thus, as other federal courts have observed, 'the governing rule of federal procedure already requires an expert witness to disclose bias-relevant information.'" *Quiterio v. QBE Specialty Ins. Co.*, No. 8:16-cv-1895-T-35JSS, 2019 WL 13064730, at *3 (M.D. Fla. Nov. 8, 2019) (quoting *Marquez v. Fed. Express Corp.*, No. 17-14142-CIV, 2017 WL 7798645, at *3 (S.D. Fla. Oct. 26, 2017)). Defendants do not contend that Dr. Lee's expert report does not include information regarding past testimony or compensation required by Rule 26 and provide no explanation for why they are entitled to additional information about Dr. Lee's or any other Ortho Sport physician's prior litigation appearances. (*See generally* Doc. 20). "The Court will not, without more, order the production of documents evidencing an even greater time period of information with respect to law firm retentions, deposition appearances, and trial appearances than what is required by the Federal Rules." *See Hardy v. N.J. Mfrs. Ins. Co.*, No. CV 22-153-SDD-RLB, 2023 WL 3767056, at *7 (M.D. La. June 1, 2023).

Without evidence suggesting that Plaintiffs' treating physicians are incentivized to provide favorable testimony by a direct financial interest in the case or by their referral relationship with Plaintiffs' Counsel, Defendants have failed to establish that their discovery requests seek information relevant to the treating physicians' alleged bias. Although the scope of discovery is broad, "the discovery rules do not permit the [parties] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). "This is especially true where, as here, that fishing expedition would come at the time and expense of a non-party to this litigation." *See Barber*, No. 1:18-cv-04925-AT, (Doc. 31 at 6) (N.D. Ga. Mar. 15, 2019) (citing *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397-Marra/Matthewman, 2016 WL 1658765, at *4 (S.D. Fla. Apr. 26, 2016)); *see also Lowe v. DIFEI Transp., LLC*, No. 1:20-CV-5224-CAP, 2021 WL 8571703, at *4 (N.D. Ga. Sept. 15, 2021) (granting a nonparty's motion to quash a

subpoena "seeking production of communications between [the nonparty] and [plaintiff's] counsel" because "there [wa]s no factual basis or evidentiary showing to suggest" any "evidence of collusion between [the plaintiff's medical providers] and [plaintiff]'s counsel"). If Defendants identify facts or evidence suggesting Plaintiffs' treating physicians have a financial interest in this case or that they have a relationship with Plaintiffs' Counsel that influences their testimony, Defendants may renew their Motion to Compel at that time. At this time, however, Defendants have failed to demonstrate that they are entitled to the requested discovery.[2]

## CONCLUSION

For the reasons explained above, Defendants' Motion to Compel (Doc. 20) is **DENIED**. Ortho Sport's Motion for Protective Order (Doc. 25) is **DENIED as moot**.

**SO ORDERED**, this 6th day of September, 2023.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2]    Because the Court finds that Defendants have failed to establish the relevancy for the discovery they wish to obtain from Ortho Sport and Medernix, the Court does not address whether Defendants' subpoenas are unduly burdensome. *See Jordan*, 947 F.3d at 1329 ("[A] subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information."); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-00847-DOC (JDEx), 2021 WL 10425630, at *4 (C.D. Cal. Mar. 26, 2021) ("As Defendant has not met its initial burden to show the relevance of the information sought here, the Court denies the Motion [to Compel] on that basis and does not reach the parties' other arguments . . . .").

E-FILED IN OFFICE - NN
CLERK OF STATE COURT
GWINNETT COUNTY, GEORGIA

**19-C-02540-S7**
**5/26/2023 10:21 AM**
**TIANA P. GARNER, CLERK**

## IN THE STATE COURT OF GWINNETT COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| **JOHN LEWIS,**<br><br>    **Plaintiff,**<br><br>v.<br><br>**STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, MATADOR DISTRIBUTING, LLC, and JAMES WILLIAM ALLISON**<br><br>    **Defendants.** | **CIVIL ACTION FILE NO.: 19-C-02540-S7** |

**EXHIBIT**
**E**

### OMNIBUS ORDER ON DISCOVERY MOTIONS

Defendants State Automobile Mutual Insurance Company, Matador Distributing, LLC and James William Allison move to amend the pre-trial order to add additional witnesses and documents not known when the order was filed. Defendants also moved to continue the deposition of Shahram Rezaiamiri, M.D.  The court conducted a hearing on the motion at which each party's counsel appeared and presented argument. The Court addresses each motion below.

I.      Procedural History

The parties in this case have conducted discovery under a scheduling order. The first scheduling order was entered in July 2019. That order required all parties to complete fact and expert discovery no later than December 20, 2019. Lewis filed his complaint in April 2019 and Defendants answered in May. The first scheduling order gave the parties 7 months to complete expert and fact discovery. A revised scheduling order was entered in December 2021, which gave the parties until February 18, 2022, to conduct all remaining depositions. The revised scheduling order also allowed the parties to amend their previously filed consolidated pre-trial order. The parties previously filed a consolidated pre-trial order, but that order had not been signed or

entered by the Court. The parties did amend their pre-trial order and filed it in August 2022. The Amended Pre-Trial Order was signed and entered on August 16, 2022.

Less than one week later, Plaintiff John Lewis emailed the defendants a copy of a medical lien agreement between Lewis and South Atlanta Neurosurgery and Minimally Invasive Neurospine ("South Atlanta"). (Def.'s Mot. to Amend Pre-Trial Ord. Ex. A & B). Defendants then moved to amend the pre-trial order to include the medical lien agreement. Defendants also sought to continue the deposition of Dr. Rezaiamiri, one of Lewis's treating physicians. Defendants sought, in part, to cross examine the doctor about the medical lien agreement. Defendants also sent notices for 30(b)(6) depositions to non-parties after the pre-trial order had been signed. For the first time, Defendants sought to depose corporate representatives from Ortho Sport & Spine Physicians, LLC, and Allspine Surgery Center-2, LLC, and South Atlanta Neurosurgery, P.C. Those entities are not parties.

As it relates to the medical lien agreement with Lewis and South Atlanta, Defendants sent Requests for Production to Lewis in November 2019. Defendants requested that Lewis produce medical records and copies of any letters of protection or similar documents regarding the charges by healthcare providers for care given to Lewis. During discovery, Defendants also sent a request for production of documents to Ortho Sport & Spine in January 2022. Defendants denominated their request as a "rush request" in a letter dated January 4, 2022. Ortho Sport & Spine responded to the request and sent documents that same month. Lewis continued to treat with Ortho Sport & Spine and updated billing documents were sent to Defendants in August 2022.

With this background, the Court turns to the motions at hand.

2

II.    Motion to Amend the Amended Pre-Trial Order

Defendants concede that the Court entered an Amended Consolidated Pre-Trial Order on

August 16, 2022.  Such an order, when entered, "controls the subsequent course of the action

unless modified at the trial to prevent manifest injustice." OCGA § 9-11-16(b). In civil cases,

trial courts have broad discretion to control the sequence and timing of discovery and to establish

pretrial procedures. *Lee v. Smith*, 307 Ga. 815, 820–21, 838 S.E.2d 870, 875 (2020) (citing

OCGA §§ 9-11-16 (a) (5) & 9-11-26 (d)). "This broad discretion extends to the setting of pretrial

scheduling deadlines and other matters of case management." *Id*. Once a trial court sets a

scheduling deadline, compliance with those deadlines is "of paramount importance[.]" *Id*.

Nevertheless, a trial court's authority over pretrial matters is not unlimited. "[W]hen a

trial court exercises its discretion in a civil case to determine whether to exclude a late-identified

witness, it should consider: (1) the explanation for the failure to disclose the witness, (2) the

importance of the testimony, (3) the prejudice to the opposing party if the witness is allowed to

testify, and (4) whether a less harsh remedy than the exclusion of the witness would be sufficient

to ameliorate the prejudice and vindicate the trial court's authority." *Id*. at 815, 838 S.E.2d at 872.

      a.    The Court grants the motion to amend Section 14 of the Amended Pre-Trial
            Order to include a medical lien agreement that was not produced until after
            the order was entered.

Defendants argue that the medical lien agreement is admissible, and that Defendants

would have included it in the Pre-Trial Order had it been received earlier. Defendants also argue

that they began requesting medical lien documents as early as November 2019, but did not

receive this one until three years later. While Lewis's response to Defendants' motion opposes

the requested amendment, Lewis agreed during the hearing that section 14 of the Amended

3

Consolidated Pre-Trial Order should be amended to add this medical lien agreement as potential documentary evidence.

Even without an agreement from Lewis, Defendants are not at fault for the failure to include the medical lien agreement in the Amended Pre-Trial Order when it had not been produced to them beforehand; the medical lien agreement is of some importance as it may show some interest or bias on the part of one of Lewis's treating providers; the prejudice to Lewis is minimal because no delay is occasioned by adding the document at this time and because Lewis has an equal, if not superior, knowledge of the document's existence and circumstances of execution and because Lewis has had notice that Defendants may introduce the document at trial. *See Lee*, 307 at 815, 838 S.E.2d at 872. Section 14 of the Amended Consolidated Pre-Trial Order is amended to add the Medical Lien Agreement between South Atlanta Neurosurgery and Minimally Invasive Neurospine and John Lewis as part of the documentary or physical evidence that may be tendered at trial.

        b.   The Court denies the motion to amend the Amended Pre-Trial Order to name Lewis's former attorney as a witness.

Defendants also seek to add Michael Gumprecht, Lewis's former attorney, as a witness because he may have referred Lewis for treatment and may have knowledge about Lewis entering the lien agreement. Defendants have not cited any authority for the proposition that Lewis's former counsel could testify to conversations with his client concerning treatment that may have occurred during the protected attorney-client relationship. Defendants knew Gumprecht represented Lewis when the case was filed, and Defendants do not explain why Gumprecht could not have been included in the Amended Pre-Trial Order. And Defendants' motion does not point this Court to anything, beyond their speculation, to suggest that Gumprecht referred Lewis or had conversations with Lewis's medical providers concerning his

treatment that would be admissible. Defendants' motion states that "[u]pon information and belief, Michael Gumprecht, Esq., was Plaintiff's referring attorney and the attorney that had knowledge about Plaintiff entering the 'Medical Lien Agreement' with South Atlanta Neurosurgery and Minimally Invasive Neurospine." (Def.'s Mot. to Amend Pre-Trial Ord. at 2). The motion contains no explanation of the nature of the information that would lead to this belief.

Lewis's response to the motion includes notations on some of Lewis's billing records. (Plt.'s Resp. to Def.'s Mot. to Amend Pre-Trial Ord. at 3). Those notations list Gumprecht as Lewis's attorney and list "case lien" next to the term referring. These types of notations are insufficient, without more, for the Court to find that Gumprecht was the referring attorney or that he would have non-privileged information concerning his former client's lien agreement. *See Joiner-Carosi v. Adekoya*, 357 Ga. App. 388, 395 (2020) (affirming trial court's exclusion of evidence of attorney's referral to medical provider where proffering party did not explain how evidence of attorney referrals to medical providers would be relevant).[1]

Under the *Lee* factors, the explanation for the failure to disclose the witness is slight, the importance of the witness's testimony is minimal because the relevance is low, and the witness's testimony may be inadmissible under the attorney-client privilege even if relevant. The prejudice to Lewis if his former attorney is listed as a witness outweighs the importance of the witness's testimony. The attorney-client privilege encourages full and frank communication between attorneys and their clients and promotes "broader public interests in the observance of law and administration of justice." *St. Simons Waterfront, LLC v. Hunter, Maclean, Exley & Dunn, P.C.*,

---

[1] The Court is mindful that what Defendants seek here is to call Lewis's former attorney as a witness at trial, as opposed to seeking potentially relevant, not privileged, information via discovery.

5

293 Ga. 419, 422, 746 S.E.2d 98, 103 (2013). Those interests, both of the client and the public, are not served by allowing opposing counsel to call attorneys or former attorneys as witnesses without some indication that the testimony will be relevant.

The Court denies the motion to amend the pre-trial order to name Lewis's former attorney as a witness for trial.

> c.  The Court grants, in part, the motion to amend the Amended Pre-Trial Order to name a representative from South Atlanta Neurosurgery and Minimally Invasive Neurospine to testify at trial to authenticate and discuss the contents of the medical lien agreement.

Defendants also request the opportunity to name a representative from South Atlanta Neurosurgery and Minimally Invasive Neurospine to testify at trial to authenticate and discuss the contents of the medical lien agreement with Lewis. In their motion, Defendants argue that the medical lien agreement is admissible because it goes to the credibility and potential bias of Shahram Rezaiamiri, M.D. (Def.'s Mot. to Amend Pre-Trial Ord. at 2). Defendants also argued, and Lewis agreed that Dr. Rezaiamiri treated Lewis at South Atlanta Neurosurgery. Defendants contend that the doctor is the owner of that entity. (See Def.'s Mot. to Compel Depos. of S. Atlanta Neurosurgery, Allspine Surgery). In addition, Defendants argued during the hearing that Dr. Rezaiamiri has previously testified about treating patients involved in personal injury litigation if insurance does not cover a procedure. *See Salkic v. Heartland Express*, Inc., 813 Fed. Appx. 444, 446 (2020) (unpublished). Lewis, in turn, argued that he had agreed to stipulate the authenticity of the medical lien agreement only to be declined by Defendants.

Defendants have already listed Dr. Rezaiamiri as a witness in the Amended Pre-Trial Order, along with John Lewis. Nonetheless, the Court grants, in limited part, Defendants' motion to amend the pre-trial order to name a representative from South Atlanta Neurosurgery and Minimally Invasive Neurospine as a witness for the purpose of testifying about the medical lien

agreement. Defendants did not name such a witness in the Amended Pre-Trial Order because the medical lien agreement had not been produced at that time. The medical lien agreement may be important as evidence of potential bias or interest in the outcome of the case by the treating physician, Dr. Rezaiamiri. Lewis is not prejudiced by having a witness testify to the authenticity of the medical lien agreement which he entered into with one of his providers and which he has had knowledge of since his treatment began.

The parties are encouraged to seek resolution, if possible, concerning the authenticity of the medical lien agreement without the need for a witness's testimony. But, if such an agreement cannot be reached, then the pre-trial order will be amended to allow for a witness to authenticate the medical lien agreement if necessary.

> d.  The Court grants, in part, the motion to amend the pre-trial order to name a witness from Ortho Sport and Spine.

Defendants move to amend the amended pre-trial order to name a representative of Ortho Sport & Spine Physicians to authenticate and testify about the contents of a letter of protection or lien between that business and Lewis. Unlike the South Atlanta medical lien agreement, Defendants do not allege that letters of protection or liens with Ortho Sport & Spine were disclosed after the Amended Pre-Trial Order was entered. Ortho Sport appeared at the hearing and argued that, as a non-party, it had responded to Defendants' "rush request" for production of documents in January 2022. After that, Ortho Sport & Spine argues that it did not hear from Defendants until after discovery closed. Ortho Sport also argued that its physicians receive a salary and therefore have no financial interest bias to explore. Defendants identified "all records of Ortho Sport & Spine" as documents they may introduce at trial. (Am. Pre-Trial Ord. ¶ 14).

Defendants received documents from Ortho Sport approximately 8 months before the Amended Pre-Trial Order and did not designate a witness from that entity. Defendants have

offered little in the way of explanation for that omission. The importance of the testimony on this issue is also less than the importance of the testimony concerning the medical lien agreement. Ortho Sport and Spine's physicians do not get paid based on the lien in the same manner that Defendants allege Dr. Rezaiamiri, as the treating physician and owner of the underlying business, is paid. Nonetheless, the prejudice to Lewis if an Ortho Sport & Spine witness is allowed to testify for the purposes of authenticating documents (which were listed as potential evidence by Defendants), is minimal.

Here, much like the medical lien agreement, the parties are encouraged to reach an agreement on the authenticity of the letter of protection or liens produced by Ortho Sport & Spine. If the parties cannot reach an agreement, then the pre-trial order will be amended to allow Defendants to name a witness for the purpose of authenticating those records at trial if necessary.

III.     Motion to Continue the Deposition of Dr. Rezaiamiri

Defendants move to continue the deposition of Dr. Rezaiamiri because they allege that they were deprived of the opportunity to cross examine him concerning the medical lien agreement between South Atlanta and Lewis. Dr. Rezaiamiri is one of Lewis's treating physicians. Lewis opposes this motion and argues that Defendants could have asked Dr. Rezaiamiri about liens during his first deposition and simply failed to do so. Lewis also argues that he told the Defendant that his medical treatment was on liens during his deposition. The exchange is as follows:

Q: Who pays for your medical bills?
A: They're on lien.
Q: I'm sorry?
A.  They're on lien.
Q: They're on lien? Who is the lienholder for those medical bills?
A.  Not sure.

(Plt.'s Resp. to Def.'s Mot. to Amend Pre-Trial Ord. Ex. A, Lewis Depo. 23:15-20).

8

Lewis also points out the length of time that this case has been pending and that discovery has been closed. The Court is not unsympathetic to the length of time that Lewis has been waiting for trial. But the Court disagrees that Lewis's deposition put Defendants on notice that Lewis's medical provider was treating him on lien. While Lewis testified that his medical bills were "on lien" he disclaimed any knowledge of who held that lien. That testimony is insufficient for Defendants to be charged with knowledge that Dr. Rezaiamiri or other medical providers held the lien.

The failure to depose Dr. Rezaiamiri on the medical lien agreement is the result of the agreement not being produced before the deposition or before the Amended Pre-Trial Order was signed.  Dr. Rezaiamiri's testimony concerning the medical lien agreement may be important, as the agreement may be a potential source of bias or interest in the case for Lewis's treating physician. Some prejudice may exist in reopening Dr. Rezaiamiri's deposition, but that prejudice is minimized by narrowing the scope that Defendants may explore.

The Court grants Defendants' motion to continue the deposition of Dr. Rezaiamiri. But the Court limits Defendants to the issue of the medical lien agreement with Lewis. Defendants have 60 days, from the date this order is entered, to complete the continued deposition of Dr. Rezaiamiri.

IV.     Defendants' Motions to Compel the Nonparty Depositions of Ortho Sport and Spine and Allspine entities.

Defendants move to compel depositions under OCGA § 9-11-30(b)(6) for nonparties Ortho Sport and the Allspine entities. Both Ortho Sport and the Allspine entities have provided treatment to Lewis.  On August 30, 2022, Defendants noticed depositions for all three entities. Ortho Sport moved to quash its deposition less than 2 weeks later. The Allspine entities also moved to quash. The Court did not rule on the motions to quash before the scheduled date for each deposition. Defendants, therefore, took down a non-appearance for each non-party and

moved to compel. Ortho Sport and the Allspine entities appeared at the motion hearing and were represented by counsel.

The Court denies the motion to compel the deposition of a corporate representative for Ortho Sport & Spine. Uniform Superior Court Rule 5.2 allows a motion to compel discovery if the party has commenced discovery promptly, pursued it diligently, and completed it without unnecessary delay. As discussed, Defendants received documents from Ortho Sport & Spine but did not seek to depose anyone from either entity until some 8 months later. The letter of protection, upon which Defendants base much of their claim that the deposition is necessary, was produced in January 2022. And Ortho Sport & Spine sent updated treatment records in August 2022. Further, Defendants' notices of deposition were sent outside the time for conducting discovery under the Court's scheduling orders, which closed discovery in February 2022 at the latest. The case had been pending, with answers filed, for just short of 3 years at the time discovery closed. The Court declines to re-open discovery for new witnesses more than 4 years after the complaint was filed and when the identity of the corporate witness and documents was disclosed during a multi-year discovery.

The Court likewise denies Defendants' motion to compel the 30(b)(6) depositions for Allspine Surgery Center-2, LLC, and South Atlanta Neurosurgery, P.C. Defendants hinge this deposition request on the medical lien agreement produced in August 2022. That lien agreement, however, states that it is between South Atlanta and Lewis. While it mentions Allspine Laser and Surgery Center or Allspine Surgery Center, it is not clear that those entities are the same as the non-parties Defendants now seek to depose. The filed lien Defendants also produced during the hearing, which is a public record filed in November 2019, was also filed by South Atlanta and not by the non-parties. Again, given the length of discovery in this case and the lack of relevance for

10

the non-parties as they relate to the medical lien agreement, the Court denies Defendants' motion to depose a corporate representative for non-parties Allspine Surgery Center-2, LLC, and South Atlanta Neurosurgery, P.C.

V.    Conclusion

- Defendants' motion to amend Section 14 of the Amended Pre-Trial Order to include a medical lien agreement with Lewis that was not produced until after the order was entered is granted.
- Defendants' motion to amend the Amended Pre-Trial Order to name Lewis's former attorney as a witness is denied.
- Defendants' motion to amend the Amended Pre-Trial Order to name a representative from South Atlanta Neurosurgery and Minimally Invasive Neurospine to testify at trial is granted in part if the parties are unable to reach an agreement as to the authentication of the medical lien agreement.
- Defendants' motion to amend the pre-trial order to name a witness from Ortho Sport and Spine to testify at trial is granted in part if the parties are unable to reach an agreement as to the authentication of the medical lien agreement.
- Defendants' motion to continue the deposition of Dr. Rezaiamiri is granted but that re-opening is limited to the medical lien agreement with Lewis.
- Defendants' motion to compel 30(b)(6) depositions from nonparties Ortho Sport and Spine and Allspine Surgery Center-2, LLC, and South Atlanta Neurosurgery, P.C. are denied.

The parties are ordered to submit a second amended pre-trial order no later than 30 days from the date this order is entered.

SO ORDERED this 25th day of May, 2023.

_____
Jaletta Long Smith, Judge
State Court of Gwinnett County

11

EXHIBIT
F

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

MAE JIMMAR,

     Plaintiff,

v.

COCA-COLA BOTTLING
COMPANY UNITED, INC. and
TRAVON BENNETT

     Defendants.

CIVIL ACTION FILE
NO. 1:25-cv-01045-SCJ

---

## AFFIDAVIT OF STEVE YOUD

---

Personally appeared before me, an officer duly authorized by law to administer oaths, STEVE YOUD, who after first being duly sworn, states the foregoing:

1.

My name is Steve Youd, and I am of required age and competent in all respects to testify regarding the matters set forth herein. I have personal knowledge of the facts stated herein and know them to be true to the best of my knowledge.

1

2.

I am the Chief Executive Officer at Ortho Sport and Spine Physicians, LLC ("Ortho Sport") and am familiar with Ortho Sport's operations.

3.

All of Ortho Sport's treating physicians are employees of Ortho Sport compensated on a salary basis.

4.

Ortho Sport's treating physicians have no financial interest in the treatment provided to their patients. In fact, the treating physicians are completely removed from the payment and billing processes. Ortho Sport's treating physicians have no knowledge regarding the amounts paid (or not paid), collected (or not collected), or acquired (or not acquired) by a patient, and the physicians are not privy to such information. The treating physicians are further removed from the patient's source of payment, and the treating physicians are not privy to how a patient pays for services (e.g., out of pocket, through insurance, charged services to a credit card, through collections, etc).

5.

To the best of my knowledge, Ortho Sport's treating physicians do not communicate – directly or indirectly – with any patient's legal counsel, to the extent one exists. Indeed, Ortho Sport's treating physicians would have no

2

knowledge as to whether or not a patient does or does not have legal counsel (unless such information was explicitly disclosed during a patient's examination, which appears extremely unlikely). Moreover, Ortho Sport's treating physicians are not privy to communications with a patient's legal counsel, do not have access to any such communications, and possess no knowledge of such communications.

6.

To the best of my knowledge, Ortho Sport's treating physicians have no referral relationship or financial arrangement with any legal counsel or funding company.

7.

No aspect of any Ortho Sport physicians' compensation is contingent upon the results of any patients' claim or lawsuit, to the extent one exists.

8.

The accounts receivable and amounts owed to Ortho Sport for the subject patient in this matter, Mae Jimmar ("Patient"), has not been sold, and there is no involvement by a third-party litigation funding company.

9.

Moreover, for the avoidance of doubt, Ortho Sport's treating physicians have absolutely **NO** financial interest in the Patient's case. The Patient's treating physicians will not be paid from the proceeds of any potential recovery by the

3

Patient, no financial arrangement between the Patient and the Patient's treating physicians exist, and the Patient's treating physicians have no ownership interest in Ortho Sport.

10.

Ortho Sport has no means to delineate if and how its patients are referred to the practice. Rather, Ortho Sport would be required to individually scour through each of its patients' medical records to determine whether any mention of a referral exists. This process would unquestionably require countless man-hours and result in a significant expense to Ortho Sport. Moreover, any such information discovered would further be questionable as not every patient, medical provider, law firm, etc. discloses the referral.

*[Signature on Following Page]*

4

FURTHER AFFIANT SAYETH NOT.

STEVE YOUD

Subscribed and sworn before me
this __18__ day of __Sept.__ , 2025.

Notary Public
[SEAL]

5

EXHIBIT
G

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

DAVID TULLIS,                          )
                                       )
    Plaintiff,                       )
                                       )
                                       )    CIVIL ACTION
v.                                     )
                                       )    FILE NO. 21-A-742
VK JACKSON TRUCKING, LLC and VICTOR    )
JACKSON,                               )
                                       )
    Defendants.                      )

## ORDER

The above styled action has come before the Court for a hearing on Defendants' Motion to Compel filed against non-party South Atlanta Neurosurgery A/K/A Allspine Laser & Surgery Center ("Allspine"). Upon consideration of Defendants' Motion, Allspine's Response, the records provided and argument of counsel, the Court finds as follows:

Allspine is a medical provider who provided medical treatment to Plaintiff in this case. In December of 2021, Defendants sent Allspine a non-party document production request. Allspine responded to the request by providing medical records and medical bills of Plaintiff. However, Defendants requests went further than requesting medical records and bills. For instance, Defendants requested correspondence between Allspine staff and Plaintiff's counsel; Communications between Allspine and any funding company; and internal emails, chat room logs, text messages or other communications in any way related to Plaintiff. Defendants requested complete and legible copies of all information contained in Allspine's electronical records software suite, including screenshots of any notes, scheduling or billing pages and tabs. Defendants also requested all audit logs or audit trails demonstrating any changes made to Allspine's EMR records for Plaintiff. Defendants also made the following request:

"5.    All documents evidencing the average percentage you accept in satisfaction of your bills issued to patients pursuant to treatment on a medical lien. See *Clouthier v. Medical Center of Central Georgia, Inc.*, 351 Ga. App. 883 (2019); *Aguila v. Kennestone Hospital, Inc.*, 836 S.E.2d 179 (2019);

a.  This request specifically contemplates all documents detailing your "payor mix", demonstrating the percentage of claims handled by your clinic pursuant to a lien versus the percentage payable by standard medical insurance and/or Medicare/Medicaid;

b.  This request includes any documents demonstrating that your clinic accepts payments from Medicare/Medicaid, but charges different rates to other types of payers;

c.  This request also contemplates any spreadsheets or budgeting documents which could demonstrate the average percentage you accept in satisfaction of your bills issued to patients pursuant to a medical lien, whether or not you have performed the calculation to reduce those figures to an average percentage."

On or about February 23, 2022, Defendants sent Allspine a 6.4 conference letter asking for the above referenced documents that were not included in Allspine's initial response. Allspine then engaged counsel in an attempt to comply with the follow up requests set forth in the 6.4 letter. Allspine, through counsel followed up on March 4, 2022, and explained that there was no funding agreement and asked "[i]s there something else that you believe that they have which has not been produced?" The attorney for Defendants and the attorney for Allspine then held a phone conference on March 9, 2022, to go over the materials sought by Defendants. Following that phone conference, counsel for Allspine followed up with an email explaining the steps being taken to procure emails from an employee that is no longer employed by Allspine and to obtain the Audit Log. The email also explained that Allspine does not have a document that would reflect a "payor mix" as requested. On March 14, 2022, Allspine produced screen shots from their software regarding Plaintiff's file. Allspine employed an IT contractor to search for and retrieve additional emails which were provided. The Audit Log was accessed and produced on March 15, 2022.

Regarding request number 5. ("payor mix" request). Allspine contends that it does not have any documents responsive to that request. Specifically, the request asks for "all documents" evidencing the average percentage accepted in satisfaction of bills issued to patients pursuant to treatment on a medical lien, "documents" detailing Allspine's "payor mix", "documents" demonstrating how Allspine charges different rates to payors other than Medicare and "spreadsheets" or "budgeting documents" demonstrating

the average percentage accepted in satisfaction of bills.

Allspine contends that it does not charge different rates depending on the economic circumstances of its patients and does not track any type of reimbursement rate or possess documents that are responsive to this request. Although Defendants contend that Allspine could generate such documents through their software, Allspine does not generate such a report in the regular course of business. Allspine further contends that generating such a report would not provide accurate information without requiring Allspine employees to do additional work that would take away from their ability to maintain their practice and care for their patients. The Court takes notice that Medicare reimbursement rates can be obtained without requiring Allspine to run a report showing reimbursement rates and that expert witnesses routinely testify regarding the reasonableness of medical treatment providers fees from existing data without compelling the provider to generate a report that is not generated or kept in the ordinary course of business.

As a general rule, non-parties are not required to create documents or records that do not exist in the ordinary course of their business. Here Allspine cannot be required to produce a document that does not exist and the Court declines to compel them to create such a document that is not created or kept in the ordinary course of business.

The Court also finds that Defendants' motion requests information that is not relevant nor reasonably calculated to lead to discoverable evidence. The motion lacks substantial justification and caused Allspine unnecessary trouble and expense. Defendants are HEREBY ORDERED to pay Allspine's attorney's fees in the amount of $6,000.00.

ORDER ENTERED, this _____ day of June, 2022.

_____
Judge, State Court of Cobb County
State of Georgia



- Clerk of Court

**IN THE STATE COURT OF CHATHAM COUNTY
STATE OF GEORGIA**

ANISSA WHITE,

      Plaintiff,

vs.

TANKSTAR USA, INC., ROGER
CARTAGE COMPANY, OTIS JOHNS, and
XYZ CORPORATION 1 through 20,

      Defendants.

CIVIL ACTION FILE
NO.: STCV20-01668

---

**ORDER GRANTING NON-PARTY ORTHO SPORT & SPINE PHYSICIANS, LLC'S
MOTION FOR PROTECTIVE ORDER**

---

This matter comes before the Court by way of a September 24, 2024 hearing on Non-Party Ortho Sport & Spine Physicians, LLC's ("Ortho Sport") *Motion for Protective Order* regarding the production requests and deposition notice propounded onto Ortho Sport by the Defendants in the above-captioned lawsuit. Having read and considered Ortho Sport's *Motion*, all reply briefing, and the oral arguments of the Parties at the September 24, 2024 hearing, the Court finds as follows:

This action arises from a September 25, 2019 motor-vehicle collision between Plaintiff Anissa White and the Defendants. Following this collision, Plaintiff treated with, *inter alia*, Ortho Sport for injuries she alleges to have sustained therein; as part of her damages, Plaintiff seeks to recover the medical expenses incurred for said treatment at Ortho Sport. Defendants now seek certain documents and information from Ortho Sport and have thus served Ortho Sport with a *Notice to Take Rule 30(b)(6) Deposition* and *Notice to Produce* (the "Subpoena").

Following receipt of Defendants' requested discovery, Ortho Sport filed a *Motion for*

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 10/16/2025 10:51 AM

⁓⁓⁓ - Clerk of Court

*Protective Orde*r against the Subpoena, arguing that Defendants attempt to unreasonably invade Ortho Sport's privacy rights by seeking the production of vast amounts of confidential financial and operational data from Ortho Sport, as a mere non-party medical provider. Defendants conversely argue that all information sought is relevant and reasonably tailored to lead to the discovery of admissible evidence in this case, including as to Plaintiff's claimed special damages.

This Court finds that the information sought by Defendants is controlled squarely by the precedent set forth in Ortho Sport & Spine Physicians, LLC v. Snowden et al, 372 Ga.App. 48 (2024), which notably involved the same medical provider and same arguments presented by the Parties in this Court. In Snowden, the Court of Appeals held that given, the breadth of sensitive financial information sought by the defendants in that case, the requested information "was not reasonably calculated to lead to discovery of admissible evidence, and the [information sought] was so overly broad that the trial court abused its discretion in denying Ortho Sport's request for a protective order prohibiting its production to the defendants." Id. at 55.

Pretermitting the fact that the recent Court of Appeals decision in Snowden is controlling in this matter, the Court finds that when weighed against Non-Party Ortho Sport's right to privacy and the unduly burdensome nature of Defendants' subject Subpoena, a protective order should be issued. Although Defendants claim to seek Ortho Sport's financial information because such information evinces "physician bias," the only evidence put forth in the record establishes that the physicians are not privy to and have no access to any such information. Thus, claiming that a physician can be biased based on information that is unknown to the physician strains credibility.

Likewise, Defendants claim to be seeking vast amounts of financial information to establish the "reasonableness" of Ortho Sport's medical charges. However, in so doing, Defendants

*- Clerk of Court*

are already aware of the amounts charged by Ortho Sport for Plaintiff's medical procedures, which are uniform across all patients and payor types (e.g., private insurance, self-pay, etc.). There is extensive information, including public information, and methods available, including the utilization of an expert as discussed with the Parties during the hearing, that would allow Defendants to argue against the "reasonableness" of such fees by Ortho Sport.

In light of the foregoing, this Court finds the information sought by Defendants to be of *de minimis* value. When parties seek discovery of unprivileged but sensitive materials, this Court must balance the requesting party's specific need for the material against the harm that would result by its disclosure. <u>Atlanta Journal-Constitution v. Jewell</u>, 251 Ga.App. 808, 812 (2001).

Accordingly, in performing the balancing test, this Court exercises its discretion and **GRANTS** Ortho Sport's *Motion for Protective Order*, as well as its related *Motion to Quash*, in the above-captioned civil lawsuit.

**SO ORDERED**, this ___13th___ day of _____May_____, 2025.

_____
The Honorable Elizabeth E. Coolidge
Judge, Chatham County State Court

Order Submitted By (*w/ edits by the Court*):
Yasha Heidari, Esq.
Georgia Bar No. 110325
Heidari Power Law Group, LLC
T: (404) 939-2742
F: (404) 601-7852
yasha@hplawgroup.com
*Attorneys for Non-Party Ortho Sport*

Page **3** of **3**



**EXHIBIT**

**I**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

|  |  |  |
|---|---|---|
| ANGEL BARBER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| GARY BARNABY, *et al.*, | : | CIVIL ACTION NO. |
| | : | 1:18-cv-4925-AT |
| | : | |
| Defendants. | : | |

## ORDER

On March 8, 2019, Defendants and non-party Dr. Erik T. Bendiks/Georgia Spine & Orthopedics (collectively, "GSO") filed a Joint Discovery Statement in accordance with Rule III(e) of the Court's Standing Order. [Doc. 27]. The gist of the parties' dispute relates to certain categories of information sought by Defendant through the issuance of a duly served non-party subpoena on GSO pursuant to Fed. R. Civ. P. 45. Specifically, the following categories of information are at issue: (1) Disclosure of the contents of the CareCloud Electronic Medical Records software pertaining to Plaintiff; (2) Email or other communications with Plaintiff's counsel or any member of Plaintiff's legal team; (3) All marketing materials distributed to Plaintiff or any member of his legal team within three years; (4) All text messages exchanged between Plaintiff or his

legal team with his treating physicians or their staff and (5) All contracts or other documents relating to Dr. Bendiks/GSO's financial interest. *See* [Doc. 27]. Following the Court's initial review of the Joint Discovery Statement, it directed Defendants to submit allegedly supporting documents referenced therein (at footnote 2 of page 2) to aide in the Court's review. Having reviewed the Joint Discovery Statement in conjunction with Plaintiff's proffer, as well as the governing case law, Defendant's request for the third-party discovery being sought here is **DENIED, without prejudice**, and with leave to resubmit in the event further relevant and material information comes to light supporting the request.

Defendants assert that they are entitled to obtain a broad swath of third-party discovery (as set forth above) from GSO primarily on the basis that GSO "may [ ] be a *de facto* investor in the instant litigation depending upon what funding, assignment, or reimbursement arrangements, if any, the clinic has with Plaintiff or her counsel." [Doc. 27 at 2].[1] According to Defendants, "they are entitled to inquire into these issues because same goes to bias, intent, and motive." *Id.* In response, GSO maintains that it has already "produced documents including medical records, billing information, GSO's lien form executed by Plaintiff, and notes indicating that she has received funding from 'Omni' funding company." (*Id.* at 5).

---

[1] Defendants apparently also seek this information on the basis that, in their view, GSO "appears to employ legal liaison staffers or paralegals whose duties appear to include communicating with patients' counsel about their cases, then logging those communications for the non-parties' business purposes." Joint Discovery Statement at 2.

2

Rule 45 of the Federal Rules of Civil Procedure governs the procedure when an individual or entity seeks to quash or modify a subpoena.[2] *See* Fed. R. Civ. P. 45(d)(3)(A), (B). "A determination to grant or deny . . . a motion to quash a subpoena is discretionary." *John Wiley & Sons, Inc. v. Doe Nos. 1-30*, 284 F.R.D. 185, 189 (S.D.N.Y. 2012); *see Fuhr v. Credit Suisse AG*, 687 F. App'x 810, 813 (11th Cir. 2017) ("We review for abuse of discretion a district court's decisions to quash a subpoena. . . ."); *see also Klay v. All Defendants*, 425 F.3d 977, 982 (11th Cir. 2005) ("A district court is entitled to broad discretion in managing pretrial discovery matters.") (internal citation omitted).

"The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, 03 Civ. 1382, 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); *Smith v. Pefanis*, No. 1:08-CV-1042, 2008 WL 11333335, at *4 (N.D. Ga. Oct. 30, 2008) (same); *see also Salvatorie Studios, Int'l v. Mako's Inc.*, 01 Civ. 4430, 2001 WL 913945, at *1 (S.D.N.Y. Aug. 14, 2001). Relevance in this context is subject to the over-arching relevance requirement outlined in Rule 26(b)(1). *See Ross v. Livingston*, No. 5:11-CV-474 CAR, 2012 WL 4862827, at *1 (M.D. Ga. Oct. 12, 2012) ("[C]ourts have held that the scope of discovery under a subpoena is the same as the scope of discovery

---

[2]   The Court treats the parties' Joint Discovery Statement as implicating issues going to the enforcement of the third-party subpoena served upon GSO. Because the Court does not find any difference in the relevant case law as between a motion to enforce a subpoena versus a motion to quash or modify a subpoena, the Court will apply the standards set forth in Rule 45(d) as well as the applicable law to adjudicate this dispute.

under Rule 26."); *Hernandez v. Hendrix Produce, Inc.*, No. CV613-053, 2014 WL 953503, at *1 (S.D. Ga. Mar. 10, 2014) (same, citing cases); *In re Refco Sec. Litig.*, 759 F. Supp. 2d 342, 345 (S.D.N.Y. 2011) ("Subpoenas issued under Rule 45 are subject to the relevance requirement of Rule 26(b)(1)"). In that regard, Rule 26(b)(1), recognizes that "[i]nformation is discoverable . . . if it is relevant to any party's claim or defense and is proportional to the needs of the case." Rule 26 Advisory Committee Notes to 2015 Amendments.

"Once the party issuing the subpoena has demonstrated the relevance of the requested documents, the party seeking to quash the subpoena bears the burden of demonstrating that the subpoena is over-broad, duplicative, or unduly burdensome." *Kingsway Fin. Servs., Inc. v. Pricewaterhouse-Coopers LLP*, No. 03 Civ. 5560, 2008 WL 4452134, at *4 (S.D.N.Y. Oct. 2, 2008); *Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 8:10-CV-665, 2011 WL 13176632, at *2 (M.D. Fla. Sept. 7, 2011) ("The party moving to quash or modify the subpoena bears the burden of proving that compliance with the subpoena involves an undue burden or the disclosure of protected information."). In addition, where the party moving to quash is a non-party to the pending litigation, that fact "entitles the witness to consideration regarding expense and inconvenience." *Night Hawk Ltd.*, 2003 WL 23018833, at *8 (internal quotations and citation omitted); *see Sun Capital Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397, 2016 WL 1658765, at *4 (S.D. Fla. Apr. 26, 2016) ("Under Rule 45, when a non-party is going to incur significant expense from

4

compliance with the subpoena and that non-party has timely objected on those grounds, the Court's order must protect the non-party from significant expense resulting from compliance."); *see also Cohen v. City of New York*, No. 05 Civ. 6780, 2010 WL 1837782, at *3 (S.D.N.Y. May 6, 2010) (recognizing that "special weight [should be given] to the burden on non-parties of producing documents to parties involved in litigation").

The Court has thoroughly reviewed both parties' positions as relates to the present dispute and finds that Defendants have not met their initial burden to establish the overall relevancy of the information they seek. While the Court takes no issue with Defendants' assertion that a financial interest on the part of GSO is relevant with respect to areas of bias, intent or motive, the issue is that Defendants have failed to sufficiently show that such a financial interest or stake presently exists as between Plaintiff and GSO. To the contrary, GSO maintains that Plaintiff has received funding from "Omni" funding company. Further, there is no indication that Omni has any relationship with GSO nor have Defendants asserted otherwise. Thus, without a concrete financial nexus as between GSO and Plaintiff or some other arrangement (other than simply that of doctor/patient) that would make it likely that GSO has some stake in this litigation, the Court does not find that Rule 26(b)(1)'s relevancy requirement has been met here. Likewise, the mere fact that Plaintiff has executed a lien form for the benefit of GSO does not change this result. Indeed, the practice of a medical provider asserting a lien (or requiring a patient to assign all insurance benefits to

a medical provider) is commonplace and in no way points to the fact that GSO, solely on that basis, has an interest in the outcome of this case. Finally, while the CareCloud exemplars submitted by Defendants do illustrate inquiries made to plaintiffs' counsel on behalf of staff at GSO, such inquiries, which on their face are quite innocuous, fail to establish the necessary relevancy for the discovery being demanded here.

[T]he discovery rules do not permit the [Defendants] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). This is especially true where, as here, that fishing expedition would come at the time and expense of a non-party to this litigation. *See Sun Capital Partners, Inc.*, 2016 WL 1658765, at *4. As stated above, if, later in this litigation, Defendants are able to come forward with actual facts and/or evidence illustrating some financial connection as between GSO and Plaintiff, they are free to renew this request at that time.

Based upon the foregoing analysis, Defendants' request is **DENIED**.

**SO ORDERED** this 15th day of March, 2019.

Amy Totenberg
**United States District Judge**

6

ID# J-UDB3KWBF-XTL
≡ EFILED IN OFFICE
CLERK OF STATE COURT
COBB COUNTY, GEORGIA

**21-A-2920**

**JUN 10, 2022 03:55 PM**

*Robin C. Bishop*
Robin C. Bishop, Clerk of State Court
Cobb County, Georgia

IN THE STATE COURT OF COBB COUNTY
STATE OF GEORGIA

ELLEIN WILLIAMS,

    Plaintiff,

v.

LOUIS MELENDEZ; LA TORTIILLERIA, LLC; AND PENNSYLVANIA NATIONAL MUTUAL INSURANCE COMPANY,

    Defendant(s).

CIVIL ACTION
FILE NO.: 21-A-2920

**EXHIBIT J**

## ORDER

Defendants Louis Melendez, La Tortilleria, LLC, and Pennsylvania National Mutual Insurance Company's Motion to Compel Non-Party Responses to Discovery having been filed, Plaintiff Ellein Williams' responses thereto, and upon hearing oral argument of counsel on Monday, June 6, 2022, the Court instructed the parties to discuss possible resolutions, and submit a proposed Order to the Court setting forth same.

IT IS HEREBY ORDERED, that Defendants shall be allowed to request and receive up to fifteen (15) years of Plaintiff Williams' medical records from all non-party medical providers previously served with requests for production of documents to a non-party with the exception of Cobb Community Health. Defendants shall be allowed to request additional records as necessary and upon consultation with Plaintiff. Said requests, however, shall not seek to obtain any information regarding each such providers relationship, with any, with a medical funding company at this time to the extent the documents violate Georgia's collateral source rule.

SO ORDERED THIS ___10th___ DAY OF JUNE, 2022.

*Jane P Manning*

HON. JANE P. MANNING, Judge
State Court of Cobb County
Cobb Judicial Circuit



RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM

 -Clerk of Court



**IN THE STATE COURT OF CHATHAM COUNTY**
**STATE OF GEORGIA**

ANISSA WHITE,

      Plaintiff,

v.

TANKSTAR USA, INC., ROGER
CARTAGE COMPANY, OTIS JOHNS, and
XYZ CORPORATION 1 through 20,

      Defendants.

**CIVIL ACTION NUMBER:**

**STCV20-01668**

## SUBPOENA TO TAKE RULE 30(b)(6) DEPOSITION AND NOTICE TO PRODUCE TO NON-PARTY ORTHO SPORT & SPINE PHYSICIANS, LLC

TO:    Ortho Sport & Spine Physicians, LLC
       c/o Yasha Heidari, its Registered Agent
       5788 Roswell Road NE
       Atlanta, Georgia 30328

YOU ARE COMMANDED, pursuant to the provisions of O.C.G.A. §§ 9-11-30, 9-11-30(b)(6), 9-11-34(c) and 9-11-45, to designate a representative who shall appear for deposition at the offices of Hall Booth Smith, P.C. located at 191 Peachtree Street NE, Suite 2900, Atlanta, Georgia 30303 on the 18th day of July 2024, beginning at 10:00 a.m., before a court reporter or other officer duly authorized by law to take depositions and recorded stenographically and/or by audio-video recording. The oral examination shall include all matters relevant to the subject matter of the litigation and may continue from day-to-day until its completion.

Counsel for the Defendants will proceed to take the deposition of a representative or representatives of Ortho Sport & Spine Physicians, LLC to testify regarding the matters listed in Exhibit A. YOU ARE COMMANDED to bring to the deposition and produce a copy of all the records described in this Subpoena and listed in Exhibit B.

1

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM          -Clerk of Court

HEREIN FAIL NOT, under penalty of the law by authority of the Honorable Elizabeth Coolidge, Judge of Chatham County State Court.

/s/ Keagan Gracy

Deputy Clerk, Chatham County State Court

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM    -Clerk of Court

## EXHIBIT A

## THE SUBJECT AREAS TO BE COVERED IN THE DEPOSITION

1. The specific means by which Plaintiff Anissa White was referred to Ortho Sport & Spine Physicians, LLC, including:

   a. Any lawyer referrals;

   b. Any involvement of medical/legal referral networks (i.e. The Injury Specialists, 1-800-WE-TREAT, etc.);

   c. Any involvement of medical or lawsuit funding companies (e.g. Omni Funding / Omni Healthcare, etc.);

   d. All intake processes for new patient referrals including all records generated reflecting the amount of any third-party defendant's insurance limits;

   e. Training on all intake processes and identification of the specific individuals who created Anissa White's electronic account or file with Ortho Sport & Spine Physicians, LLC.

2. Any and all communications, whether electronic (i.e. email, text message, messenger app, etc.), telephonic, or otherwise, between any employee or medical provider affiliated with Ortho Sport & Spine Physicians, LLC and any member of Plaintiff Anissa White's legal team, specifically including Matthew Hilt, Mr. Hilt's paralegal(s), staff, or affiliates of Morgan & Morgan, or any prior (i.e. referring) counsel representing Plaintiff Anissa White.

   a. The communications to be discussed specifically include all "scheduling" or "pre-authorization" communications related to the treatment of Plaintiff Anissa White;

   b. All documentation of any such communications;

3. Ortho Sport & Spine Physicians, LLC's use of case managers, care coordinators or "procedures coordinator assistants", etc.;

4. Ortho Sport & Spine Physicians, LLC's training and procedures regarding the use of billing techniques banned by the Medicare Correct Coding Initiative, including upcoding, unbundling, billing for treatment not rendered, and double-billing;

5. Any and all communications, whether electronic (i.e. email, text message, messenger app, etc.), telephonic, or otherwise, between any employee or medical provider affiliated with Ortho Sport & Spine Physicians, LLC and any litigation funding provider or medical funding provider entity or its employees or affiliates regarding Plaintiff Anissa White or her legal case;

3

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM

-Clerk of Court

- These communications specifically include all "scheduling" or "pre-authorization" communications.

6. Any written or oral agreement pertaining to the payments to be made to Ortho Sport & Spine Physicians, LLC by Plaintiff Anissa White or by any litigation or medical funding provider on her behalf, including any assignment of any right of recovery to another;

7. Any liens, contingency agreements, contracts or assignments relating in any way to treatment rendered to Plaintiff Anissa White.

8. Ortho Sport & Spine Physicians, LLC's prior or ongoing relationship with Morgan & Morgan, and/or any prior counsel representing Anissa White;

    a. This topic specifically includes the number of patients referred to Ortho Sport & Spine Physicians, LLC by Morgan & Morgan within the past five (5) years.

    b. This topic specifically includes the number of patients referred to Morgan & Morgan by Ortho Sport & Spine Physicians, LLC within the past five (5) years.

    This topic also specifically includes the number of times an Ortho Sport & Spine Physicians, LLC physician has given testimony or provided a consulting opinion in a case involving Morgan & Morgan, and/or any prior counsel representing Anissa White.

9. The percentage of Ortho Sport & Spine Physicians, LLC patients who have lawsuits or insurance claims (including worker's compensation).

10. The reasonable and necessary medical bills which are customary in the medical field for the types of services rendered to Plaintiff Anissa White by Ortho Sport and Spine;

    a. This topic specifically includes how much Ortho Sport & Spine Physicians, LLC has charged other patients, insured or uninsured, for the same type of care during the same time period (i.e. the past 5 years). *See* Bowden v. The Med. Ctr., Inc., 297 Ga. 285 (2015).

    b. This topic also includes the average amount, by percentage, that Ortho Sport & Spine Physicians, LLC has accepted in satisfaction of its bills issued over the past five (5) years to the following categories of patient:

        i. Self-pay or walk-in patients receiving similar care to Anissa White;

        ii. Self-pay or walk-in patients who have civil lawsuits or claims generally;

        iii. Self-pay or walk-in patients represented by Morgan & Morgan, and/or any prior counsel representing Anissa White;

        iv. Patients treated pursuant to Medicare/Medicaid or a state equivalent insurance fund, if any;

4

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM    -Clerk of Court

v.  Patients insured by Anthem or Blue Cross/Blue Shield who received care similar to Anissa White;

vi.  Patients insured by United Healthcare who received care similar to Anissa White;

vii.  Patients insured by Kaiser Permanente who received care similar to Anissa White.

c.  This topic includes Ortho Sport & Spine Physicians, LLC's "payor mix" (i.e. a statement of the average percentage of Ortho Sport & Spine Physicians, LLC's patients paying from a given source, for example via private health insurance versus via lawsuit lien).

11. Any and all social gatherings hosted by Ortho Sport & Spine Physicians, LLC for plaintiff's counsel, chiropractors, or medical or litigation funding companies generally, including private social gatherings in the past five (5) years.

12. Ortho Sport & Spine Physicians, LLC's advertising methods, specifically including any advertising or marketing to lawyers and chiropractors, and the specific methods or types of ads used (including runners or direct liaisons) for the past five (5) years.

13. Involvement in responding to Defendants' document subpoena, including identification of the specific individuals who participated in preparing the materials produced in response to same, as well as:

a.  What files they reviewed;

b.  All documentation withheld from production;

c.  The basis for such non-production;

d.  The decision not to produce a privilege log identifying documents withheld from production.

14. Identification of all prior depositions or trial testimony of Dr. Mark Flood including an updated copy of the list of 4 years of prior depositions he is required to maintain for purposes of expert testimony

5

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM

-Clerk of Court

## EXHIBIT B

## DOCUMENTS OR THINGS TO BRING TO THE DEPOSITION

**Whether maintained via an Electronic Medical Records system or in a paper chart, a certified copy (*to be produced electronically, if possible*) of the ENTIRE RECORD, from anytime in the past to the present date, concerning the care and treatment of ANISSA WHITE, Date of Birth: 09/01/1970, SSN: XXX-XX-4190, including, but not limited to:**

1.  Complete copies of the software suite entries regarding Plaintiff Anissa White's treatment or her case, including:

    a.  Legible printouts, screenshots, or photographs of said database (such as Pencil Notes, etc.);

    b.  A copy of the audit log report regarding any changes made to the software database, bills or other entries related to Plaintiff Anissa White's treatment or her case;

    c.  A copy of the claim error alerts report regarding any billing entries which were flagged as potentially invalid by the software.

2.  All bills issued to Plaintiff Anissa White by Ortho Sport & Spine Physicians, LLC, including any revisions or audit trails showing changes to same.

3.  A laptop computer capable of accessing Ortho Sport & Spine Physicians, LLC's electronic software suite including all notes or logs, pertaining to Plaintiff Anissa White.

4.  All written materials of any kind or nature whatsoever evidencing communications between Ortho Sport & Spine Physicians, LLC and any counsel or representative of Plaintiff Anissa White, at any time.

    -   This request includes production of all logs of communication contained in Ortho Sport & Spine Physicians, LLC's electronic medical records software suite as well as legible copies of all emails, all transcribed or audio-recorded voicemails, and all paper correspondence.

5.  All written materials of any kind or nature whatsoever evidencing communications between Ortho Sport & Spine Physicians, LLC and any medical or litigation funding provider with an interest in this case at any time.

6

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM          -Clerk of Court

- This request includes production of all logs of communication contained in Ortho Sport & Spine Physicians, LLC's electronic medical records software suite as well as legible copies of all emails, all transcribed or audio-recorded voicemails, and all paper correspondence.

6.    All contracts, assignments, liens, contingency agreements or other legal documents of any nature whatsoever regarding Plaintiff Anissa White's duty to repay or otherwise conveying any lien or other interest in the outcome of this lawsuit to Ortho Sport & Spine Physicians, LLC.

- This request includes any and all documentation pertaining to any transfer or sale of Ortho Sport & Spine Physicians, LLC's bill or lien interest, whether by medical factoring or otherwise.

7.    Ortho Sport & Spine Physicians, LLC's written marketing materials targeting the legal industry, including litigation or medical funding providers and including the invitation lists of any social gatherings hosted by or paid for (wholly or in part) Ortho Sport & Spine Physicians, LLC for the purposes of marketing to lawyers, litigation funding providers, or the legal industry generally. This request contemplates private parties or other social gatherings hosted by employees or owners of Ortho Sport & Spine Physicians, LLC targeting lawyers or the litigation funding or legal industries.

8.    Documents demonstrating the average amount Ortho Sport & Spine Physicians, LLC typically accepts, on average, in satisfaction of its bills to lawsuit plaintiff-patients receiving similar care to Plaintiff Anissa White, including Ortho Sport & Spine Physicians, LLC's payor mix.

HIPAA NOTE: Federal law code section 45 C.F.R. §164.512(e)(1)(ii)(A) permits a covered entity to disclose protected health information in response to a subpoena, discovery request, or other lawful process, that is not accompanied by an order of a court or administrative tribunal if the covered entity receives satisfactory assurance from the party seeking the information that reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information that has been requested has been given notice of the request. 45 C.F.R. §164.512(e)(1)(iii) states that a covered entity receives satisfactory assurances from a party seeking protected health information if the covered entity receives from such a party a written statement and accompanying documentation demonstrating that: (a) the party requesting such information has made a good faith attempt to provide written notice to the individual; (b) the notice included sufficient information about the litigation or proceeding in which the protected health information is requested to permit the individual to raise an objection to the court; and (c) the time for the individual to raise objections to the court has elapsed, and

7

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM    -Clerk of Court

no objections were filed or all objections filed by the individual have been resolved by the court and the disclosures being sought are consistent with such resolution. 45 C.F.R. §164.514(d)(5) does not allow a covered entity to use, disclose or request an entire medical record, EXCEPT when the entire medical record is specifically justified as the amount that is reasonably necessary to accomplish the purpose of the use, disclosure or request.

You are required to comply with this request under the provisions of O.C.G.A. § 9-11-34(c)(2). If you have a reason to do so, you may file an objection to this request under the provisions of O.C.G.A. § 9-11-34(c)(2) and delay complying with this request until your objections are heard.

If no objection is filed within twenty (20) days of your receipt of this request for discovery, you shall comply with the aforesaid Request for Production of Documents to a Non-Party pursuant to said O.C.G.A. § 9-11-34(c)(2), 45 C.F.R. § 164.512(e)(1)(ii)(A) and 45 C.F.R. § 164.514(d)(5).

RECEIVED FOR FILING, STATE COURT CLERK CHATHAM CO. GA, 6/4/2024 2:00 PM     ⟩⟩⟩⟩ -Clerk of Court

## IN THE STATE COURT OF CHATHAM COUNTY
## STATE OF GEORGIA

| | |
|---|---|
| ANISSA WHITE, <br><br> Plaintiff, <br><br> v. <br><br> TANKSTAR USA, INC., ROGER CARTAGE COMPANY, OTIS JOHNS, and XYZ CORPORATION 1 through 20, <br><br> Defendants. | **CIVIL ACTION NUMBER:** <br><br> **STCV20-01668** |

### CERTIFICATE OF SERVICE

I hereby certify that I have this day served the foregoing **SUBPOENA TO TAKE RULE 30(b)(6) DEPOSITION AND NOTICE TO PRODUCE TO NON-PARTY ORTHO SPORT & SPINE PHYSICIANS, LLC** to all parties via electronic service to their attorneys of record as follows:

Matthew L. Hilt, Esq.
Morgan & Morgan
200 Stephenson Ave., Suite 200
Savannah, Georgia 31405
mhilt@forthepeople.com
mferguson@forthepeople.com
*Attorney for Plaintiff*

This 4th day of June, 2024.

HALL BOOTH SMITH, P.C.

*/s/ Timothy A. Bishop*
N. DANIEL LOVEIN
Georgia Bar No. 459329
TIMOTHY A. BISHOP
Georgia Bar No. 647509
*Attorneys for Defendants Tankstar USA, Inc., Rogers Cartage Company, and Otis Johns*

3528 Darien Highway, Suite 300
Brunswick, Georgia 31525
(912) 554-0093 – Phone
(912) 554-1973 – Fax
nlovein@hallboothsmith.com
tbishop@hallboothsmith.com

9