# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
### ATLANTA DIVISION

| | |
|---|---|
| MAE JIMMAR, | |
| Plaintiff, | |
| v. | CIVIL ACTION FILE<br>NO. 1:25-cv-01045-SCJ |
| COCA-COLA BOTTLING<br>COMPANY UNITED, INC. and<br>TRAVON BENNETT, | |
| Defendants. | |

## NON-PARTY ORTHO SPORT & SPINE PHYSICIANS, LLC'S RESPONSE TO DEFENDANTS' MOTION TO COMPEL

**COMES NOW**, Non-Party Ortho Sport & Spine Physicians, LLC ("Non-Party"), by and through undersigned counsel, and files this Response in Opposition to Defendants' Motion to Compel (Doc. 37). Defendants' Motion is a quintessential example of discovery overreach, seeking vast amounts of confidential, irrelevant, and constitutionally protected information from a non-party medical provider.

Defendants propound this oppressive discovery under the flimsy reasoning and farcical justifications of investigating "witness bias" and the "reasonableness of plaintiff's medical expenses." However, their requests are repugnant to

fundamental privacy rights, entirely disproportionate to the needs of this case, and ignore the heightened protections afforded to non-parties under Rule 26(c) of the Federal Rules of Civil Procedure.

Defendants' Motion to Compel conveniently ignores that these *identical* discovery tactics, levied by the *same defense counsel* against the *same medical provider*, have already been squarely rejected by both federal and state courts. *See e.g.* Exhibit "A", *Stewart* Order (denying motion to compel identical requests in the Middle District of Georgia); Exhibit "B", *Murray* Opinion (vacating discovery order compelling identical database reports). Defendants' arguments fail to establish relevance and cannot overcome the immense and undue burden their requests place on Non-Party Ortho Sport. For these reasons, Defendants' Motion to Compel should be **DENIED**, and Ortho Sport's Amended Motion for Protective Order (Doc. 40) should be **GRANTED**.

## ARGUMENT AND CITATION TO AUTHORITY

### I.    Legal Standard: Proportionality and Non-Party Status

The scope of discovery, even for a party, is not limitless. It must be "relevant to any party's claim or defense and **proportional to the needs of the case**."[1] The proportionality analysis *requires* the Court to consider "whether the burden or

---

[1] Fed. R. Civ. P. 26(b)(1).

expense of the proposed discovery outweighs its likely benefit."[2]

Crucially, Ortho Sport is not a party to this litigation. This status is a critical factor. Courts in this circuit recognize that "standards for non-party discovery require a **stronger showing of relevance** than for party discovery."[3] When a subpoena seeks "private information" from a non-party, the burden is "particularly great."[4] Moreover, "even if the discovery may be relevant for impeachment purposes, the court may nonetheless limit non-party discovery when the information is available through less-instrusive means."[5] The Court must "balance the interests served by demanding compliance... against the interests furthered by quashing it", and the recipient's non-party status weighs against disclosure.

---

[2] Fed. R. Civ. P. 26(b)(1).

[3] *Pinehaven Plantation Properties, LLC v. Mountcastle Family LLC*, 2013 WL 6734117, at *2, 2013 U.S. Dist. LEXIS 178236, at *5 (M.D. Ga. Dec. 19, 2013); quoting *Zukoski v. Philadelphia Elec. Co.*, No, CIV. A. 93–4780, at *3 (E.D.Pa. Nov. 14, 1994)("It is a generally accepted rule that standards for non-party discovery require a stronger showing of relevance than for party discovery."); *Jordan v. Commissioner, Mississippi Department of Corrections,* 947 F.3d 1322, 1337 (11th Cir. 2022) (holding that "[t]he status of the subpoena recipient as a non-party is also a factor that can weigh against disclosure in the undue burden inquiry."); *Schaaf v. SmithKline Beecham Corp.*, 233 F.R.D. 451, 453 (E.D.N.C. 2005)("In the context of evaluating subpoenas issued to third parties, a court will give extra consideration to the objections of a non-party, non-fact witness in weighing burdensomeness versus relevance.")

[4] *Pinehaven Plantation Properties, LLC*, 2013 WL 6734117, at *2; *Castleberry v. Camden County*, 331 F.R.D. 559, 563 (S.D. Ga. 2019)

[5] *Castleberry*, 331 F.R.D. at 563 (quoting *Pinehaven Plantation Properties, LLC*, 2013 WL 6734117, at *2)

Pretermitting whether Defendants would be even allowed to obtain such information if Ortho Sport itself was a party, Defendants' Motion wholly ignores this heightened standard for non-parties such as Ortho Sport.

## II.    Defendants' Justifications are a Pretext for an Irrelevant and Disproportionate Fishing Expedition.

Defendants' Motion to Compel rests on two arguments: (1) the information is needed to show physician bias, and (2) it is needed to assess the reasonableness of Plaintiff's medical bills. Both arguments are pretextual and fail as a matter of law and logic.

### A.  The "Witness Bias" Justification is Logically Impossible.

Defendants' "bias" theory is fatally flawed. They seek to discover Ortho Sport's company-wide financial data to prove that Plaintiff's individual treating physicians are biased. The argument fails for a simple, dispositive reason: **the physicians do not have access to the information Defendants seek and are not privy to the information that the information could convey.**  It defies common sense for Defendants to assert that information pertaining to a physician (that the Plaintiff's treating physician has never so much as met) performing unrelated procedures thousands of miles away in a **wholly different state** will somehow evince the "bias" of the plaintiff's treating physician, especially when the treating physician is not privy to such information.

As attested in the Supplemental Declaration of Ortho Sport's CEO, Steve Youd[6]:

- All Ortho Sport treating physicians are **W-2, salaried employees**. (Ex. C, Youd Dec. ¶3.)

- They have **absolutely NO financial interest** in the Patient's case. (*Id.* ¶9.)

- Their compensation is **not contingent** on the results of any patient's lawsuit. (*Id.* ¶7.)

- Physicians are intentionally shielded from, completely removed from, and not privy to any billing, payment, or financial information. (*Id.* ¶9.)

It is a logical impossibility for a physician to be biased by information that is not known or even accessible to the physician.

Furthermore, this corporate structure is *designed* to *eliminate* bias. Physicians are shielded from all administrative and financial factors so they can "focus on medical treatment." (*Id.* ¶9.) This removes any aura of bias, allowing Ortho Sport's physicians to treat patients based *only* on medical necessity. Ortho Sport treats a wide variety of patients and payor types, ranging from conventional private insurance, to self-pay patients, to patients treating under workers' compensation panels/insurance (which some would argue lends to a "pro-defense"

---

[6] Attached here as **Exhibit "C"**.

bias in the litigation context),[7] and personal injury plaintiffs. This diversity of practice mandates that treatment is based on medicine, and this is especially true when a treating physician has no knowledge of the "extraneous factors which could allegedly influence" a physician.

The mere fact of employment is not, as Defendants suggest, a basis for such invasive discovery, as federal courts have long held. In *Mattox v. Life Ins. Co. of N. Am.*, the Northern District of Georgia held that mere employment or compensation relationships are insufficient to establish bias:

> No employee who participates in the claims decision-making process, including a reviewing physician, has any part of his compensation linked to whether a claim is granted or denied… [P]laintiff cannot establish that the physicians were biased in rendering their opinions based solely on their employment relationship.

*Mattox*, 2009 WL 8763152, at *11–12 (N.D. Ga. July 13, 2009), aff'd, 395 F. App'x 669 (11th Cir. 2010).

In *Mattox*, the plaintiff argued that reviewing physicians were biased

---

[7] Employers determine and limit the medical providers approved for workers' compensation care. An "approved" medical provider is on the employer's "panel" and only medical providers on an employer's "panel" may provide medical treatment covered under the employer's workers' compensation insurance. As (1) an employer is responsible for the deductible cost of its employee's medical care in a worker's compensation claim and (2) the employer determines which medical providers are "panel" providers, plaintiff's counsel routinely argue physician bias in favor of the defendants.

because they were employed by the insurance company whose claim decisions were at issue.[8] The court flatly rejected that inference, emphasizing that each physician:

- was paid a **fixed salary**;

- had **no link between compensation and claim outcomes**;

- was free to form and express **independent professional opinions**; and

- was never pressured or incentivized to reach a particular conclusion.

*Mattox* at *5. That is precisely the evidentiary posture here. As the Youd Declaration confirms, every Ortho Sport physician is a **W-2 employee compensated by fixed salary**—not by contingency, lien, or metrics tied to litigation outcomes. They are insulated from administrative and billing functions, and they do not participate in, or profit from, the collection of patient accounts, by any manner, whatsoever.

If salaried physicians employed directly by an insurance carrier—a party with a direct financial stake in the litigation—were deemed unbiased in *Mattox*, then the inference of bias is far weaker here, where the physicians are employed by a neutral medical practice that is **not a party** to this case, and the physician

---

[8] *Mattox*, 2009 WL 8763152, at *2 (N.D. Ga. July 13, 2009), aff'd, 395 F. App'x 669 (11th Cir. 2010).

**has no financial interest in the outcome of any litigation (if any exists)** and treats a wide array of patients across the spectrum of payor types.

Likewise, the Seventh Circuit in *Mangan v. Broderick & Bascom Rope Co.* warned that deeming every employee witness inherently biased "is sheer folly," as "[t]he value of such evidence is far outweighed by the likelihood that such evidence will be misused by a jury".[9]  The Seventh Circuit recognized the "sheer folly" of imputing bias on a witness by virtue of the witnesses' employer, absent concrete evidence of motive or benefit. The court reasoned that such assumptions "must be limited to instances in which possible bias is revealed by some act or factor more profound than the mere fact of employment."[10]

That reasoning translates neatly to Ortho Sport. Defendants offer no "factor more profound" than employment itself. They speculate that Ortho Sport's physicians must favor plaintiffs because some patients are plaintiffs in litigation. They could just as easily speculate that Ortho Sport's physicians must favor defendants because some patients are referred by defense counsel or a patient's employer.

Conjecture aside, the undisputed record refutes Defendants' position because Ortho Sport treats a heterogeneous patient base— including insured, uninsured, worker's compensation, IME, and self-pay—  spanning both sides of the litigation

---

[9] *Mangan v. Broderick & Bascom Rope Co.*, 351 F.2d 24, 29–30 (7th Cir. 1965).
[10] *Id.* at 30.

divide.[11] This diversified treatment portfolio eliminates any rational basis for concluding that Ortho physicians, as employees, are predisposed toward plaintiffs or defendants. This is only further compounded by the fact that the treating physician is blind and isolated to a patient's payor status.[12]

*Mangan* also noted the risk of unfair prejudice to the fact-finder when such speculative bias evidence is admitted. That concern is heightened here, where Defendants seek discovery that would **expose confidential patient and financial data** to create the very "smell of insurance or litigation" the *Mangan* court condemned as improper.[13]

As *Plough v. Baltimore & O.R. Co.* explained, any showing of bias requires far more than a mere employment link:

> Proof of much more than the mere fact of the payment of compensation by the employer would have been required; the respective interests of each witness and of the employer… would have had to have been shown.

*Plough v. Baltimore & O.R. Co.* 164 F.2d 254, 256 (2d Cir. 1947).

*Plough* reversed a trial court for admitting evidence of employer payments absent proof that the witnesses' interests aligned with the employer's financial position.[14] The court stressed that any valid bias showing required a demonstration

---

[11] Ex. C, Youd Dec. ¶11.
[12] Ex. C, Youd Dec. ¶12.
[13] *Mangan v. Broderick & Bascom Rope Co.*, 351 F.2d 24, 29–30 (7th Cir. 1965).
[14] *Plough v. Baltimore & O.R. Co.,* 164 F.2d 254, 256 (2d Cir. 1947).

of "comparative interests"—that is, proof that the witness had a greater incentive to favor the employer than to preserve his own credibility.[15]

Here, there is no such comparative incentive. Each Ortho Sport physician has an independent professional license, clinical autonomy, and malpractice exposure independent of Ortho Sport's business. Indeed, their **own self-interest** in professional integrity militates against bias, because compromising medical judgment could endanger licensure and professional standing. Moreover, they have zero financial incentive to act otherwise.

The *Plough* rationale thus applies squarely: Defendants offer no evidence that any Ortho physician's relationship with Ortho Sport gives rise to an incentive to "slant" testimony. Without such proof, the inquiry ends.

Additionally, this exact argument was already **rejected** by the U.S. District Court for the Middle District of Georgia in *Stewart v. Brown.*[16] In *Stewart*, the *same defense counsel* sought the *same financial data* from the *same provider* based on the *same "bias" theory*. The Court denied Defendants' motion in its entirety, finding that Defendants "failed to establish that their discovery requests seek information relevant to the treating physicians' allege[d] bias" and had "not demonstrated that any of the treating physicians... ha[d] a... financial interest." The

---

[15] *Id.*

[16] *Joann Stewart et al. v. Marcus Brown et al.*, Order No. 1:22-CV-59, (M.D. Ga. Sept. 6, 2023), attached here as Exhibit "A".

court correctly labeled Defendants' efforts a "fishing expedition."[17]

In comparison to the long history of case law showing the limits of potential bias, Defendants' cited support for their bias arguments is inapplicable here. Defendants rely heavily on *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293 (11th Cir. 2018), and *Showan v. Pressdee*, 922 F.3d 1211 (11th Cir. 2019), where courts permitted limited discovery into **contractual referral and financing arrangements** between plaintiffs' counsel and medical funding companies. But *ML Healthcare* involved an entity that purchased medical receivables **contingent on litigation outcomes**, creating a direct, quantifiable financial stake in the case's result.

Ortho Sport's circumstances are the polar opposite. There is no sale of receivables, no third-party financing, no contingent compensation, and no contractual tie to plaintiff's counsel. Ortho Sport is a **medical provider, not a litigation financier**. The only relationship at issue is employment of physicians who are, like the doctors in *Mattox*, paid a fixed salary to render independent clinical judgments.

### B. The "Reasonableness of Fees" Justification Fails the Proportionality Test.

Defendants' second justification, "reasonableness of fees," is merely a smokescreen to obtain the same irrelevant, confidential data. Defendants' reliance

---

[17] *Id.*

on *Bowden* and *Omni* is misplaced, as those cases do not abrogate the federal proportionality standard.

First, the information is not relevant. Defendants demand a "Database Report" detailing the finances of **different** patients, receiving **different** medical treatment, by **different** medical providers, at **different** locations, in **different** states, during **different** times, and paid through **different** forms of payments. This data has no bearing on the reasonableness of the ***specific*** charges for the ***specific*** treatment Ms. Jimmar received. As argued in Ortho Sport's Motion for Protective Order, analyzing this data would require "trying of cases within cases," forcing a jury to analyze the complex (and HIPAA-protected) medical and financial situations of thousands of unrelated patients . This "expand[s] a garden variety... claim into a series of mini-trials."[18]

Second, Defendants' requests for Ortho Sport's "Articles of Incorporation", "HIPAA Privacy Audit Logs", and "general marketing efforts" have *zero* connection to the reasonableness of Ms. Jimmar's medical bills.

Third, and most importantly, Defendants' requests fail the proportionality factor that discovery must be limited if it "can be obtained from some other source that is more convenient, less burdensome, or less expensive".[19] As stated in Ortho

---

[18] *Dowdy v. Geico General Insurance Company*, 2017 WL 10765264 at *3 (M.D. Ga. June 2017).
[19] Fed. R. Civ. P. 26(b)(2)(C).

Sport's Motion for Protective Order, vast arrays of public and commercial data are available to Defendants to challenge the reasonableness of Ortho Sport's charges. Federal law *requires* hospitals to publicly post their charges, and the Georgia Department of Community Health compiles this data. Defendants can also license data from commercial databases that calculate the "usual, customary, and reasonable" rates. Because this information is readily available through less intrusive means, Defendants have no "need" for this discovery, and the request is disproportionate *per se*.

### III.    The Requested Discovery is Grossly Disproportionate and Unduly Burdensome.

Weighing the proportionality factors of Rule 26(b)(1) demonstrates that Defendants' requests are abusive.

- **Burden vs. Benefit:** The benefit is "de minimis" or non-existent, as the information is irrelevant to bias and publicly available for reasonableness. The burden, in contrast, is crushing. Defendants demand that non-party Ortho Sport *create* documents that do not exist. The "Database Report" Defendants seek is not generated in the ordinary course of Ortho Sport's business and would have to be specially created to comply. Defendants' Motion *admits* this, demanding Ortho Sport run four separate reports (the 37.08, 371.05, 361.05, and 21.04 reports) and compile the data. The

twelve-page instruction manual attached to their subpoena as "Exhibit A" is a confession of the undue burden they seek to impose. Notably, Ortho Sport has previously run a single report, and the process– even though it was a more limited report– took <u>over 6 hours</u>. Ex. C, Youd Dec. ¶21.

- **Other Sources**: The information Defendants allegedly seek under the guise of both "bias" and "reasonableness of fees" is readily available through alternative, less-intrusive avenues. Defendants seek a wide-swarth of information from a witness's employer– where it is undisputed that the witness lacks requisite knowledge– without questioning the witness himself. Likewise, as detailed in Ortho Sport's Motion for a Protective Order, there is a myriad of public sources that will allow Defendants to "attack" reasonableness that does not involve burdensome and intrusive requests to a non-party.[20]

- **Privacy and Confidentiality:** The data sought is the definition of "confidential research, development, or commercial information" protected by Rule 45(d)(3)(B)(i). It includes confidential business data and financial

---

[20] *Aeritas, LLC v. Delta Airlines, Inc.*, 11-CV-00969-SLR, 2013 WL 454452, at *2 (N.D. Ga. Feb. 7, 2013)(Denying Motion to compel "because much of what is sought from non-party NCR should be available from one or more of the defendants in the underlying lawsuits"). *Brilliant Alternatives, Inc. v. Feed Mgmt. Sys., Inc.*, No. 1:09–CV–2348–RWS, Order p. 15, (N.D.Ga. Feb. 22, 2011)(Denying motion to compel when information sought were largely "duplicative requests" and "Plaintiffs sought much of the same information [from the non-party] already requested from the Defendants").

strategies for tens of thousands of prior, unrelated patients. Ex. C, Youd Dec. ¶19. Defendants' casual offer of an ineffective protective order is meaningless. The information is not discoverable in the first place, as its burden and confidentiality far outweigh any conceivable benefit.

- **Abusive Tactics:** Defense counsel's knee-jerk approach to this discovery is exemplified by their August 28, 2025 conferral letter, which erroneously sent a letter referencing *Georgia's* state court Uniform Superior Court Rule 6.4 rather than the Federal Rules. Defendants claim that "[b]efore Defendants can cross-examine Plaintiff's experts concerning their potential bias, Defendants must first have the opportunity to obtain evidence which may – or may not – shed light on… potential bias."[21] Defendants' haphazard approach of serving 56 invasive requests on a non-party because it "may" or "may not" evince useful information is as calculated as treating a toothache with a sledgehammer. It certainly does not comport with Defendants' obligations under Rules 26 or 45.[22]

---

[21] Defendants' Motion to Compel, p. 6.

[22] Fed. R. Civ. Proc. 26(g)(1)(B)(iii) provides that by signing a discovery request, the attorney certifies the discovery is "neither unreasonable nor unduly burdensome or expensive, considering the needs of the case, prior discovery in the case, the amount in controversy, and the importance of the issues at stake in the action." Fed. R. Civ. Proc. 45(d)(1) requires parties "take reasonable steps to avoid imposing an undue burden or expense on a person subject to the subpoena.

## **CONCLUSION**

Defendants' discovery requests are an irrelevant, disproportionate, and unduly burdensome fishing expedition into the confidential records of a non-party. Their justifications for this intrusion—bias and reasonableness—are pretextual and fail as a matter of law and logic. The information sought has no bearing on physician bias, as the physicians are shielded from it, and is not needed to assess reasonableness, as public data is readily available.

WHEREFORE, Non-Party Ortho Sport & Spine Physicians, LLC respectfully requests this Honorable Court **DENY** Defendants' Motion to Compel (Doc. 37) in its entirety and **GRANT** Ortho Sport's Amended Motion for Protective Order (Doc. 40).

This 21st day of October, 2025.

/s/ Evan David Szczepanski
**YASHA HEIDARI**
Georgia Bar No.: 110325
**EVAN SMITH**
Georgia Bar No.: 514676
**EVAN DAVID SZCZEPANSKI**
Georgia Bar No.: 519263
*Counsel for Non-Party*
*Ortho Sport & Spine Physicians, LLC*

**DELGADO HEIDARI LLC**
2997 Cobb Parkway #724615
Atlanta, Georgia 31139
Tel.: 404-939-2742
Fax: 404-601-7852
yasha@dhlawteam.com
ees@dhlawteam.com
eds@dhlawteam.com

## **CERTIFICATE OF COMPLIANCE**

The undersigned hereby certifies that the foregoing pleading complies with the font and point selections approved by the Court in Local Rule 5.1C. This document has been prepared in Times New Roman font, 14 point.

This 21st day of October, 2025.

*/s/ Evan David Szczepanski*
**EVAN DAVID SZCZEPANSKI**
Georgia Bar No.: 519263

## CERTIFICATE OF SERVICE

I hereby certify that on this day a copy of the within and foregoing *Non-Party Ortho Sport & Spine Physicians, LLC's Response to Defendants' Motion to Compel* was served electronically by operation of the Court's electronic filing system upon all counsels of record, to wit:

Kevin P. Branch
Elenore C. Klingler
MCMICKLE, KUREY & BRANCH,
LLP
217 Roswell Street, Suite 200
Alpharetta, Georgia 30009

*Attorneys for Defendants*

Rob Loar
Adewale Odetunde, Jr.
WLG ATLANTA, LLC
600 Peachtree Street N.E., Suite 4010
Atlanta, GA 30308

*Attorneys for Plaintiff*

This 21st day of October, 2025.

/s/ Evan David Szczepanski
**EVAN DAVID SZCZEPANSKI**
Georgia Bar No.: 519263

***Counsel for Non-Party***
***Ortho Sport & Spine Physicians,***
***LLC***

**DELGADO HEIDARI LLC**
2997 Cobb Parkway #724615
Atlanta, Georgia 31139
Tel.: 404-939-2742
Fax: 404-601-7852
eds@dhlawteam.com

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**ALBANY DIVISION**

| | | |
|---|---|---|
| JOANN STEWART and JOYCE OWENS, | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | CASE NO.: 1:22-CV-59 (LAG) |
| | : | |
| MARCUS LEONARD BROWN, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

**EXHIBIT**

**A**

## <u>ORDER</u>

Before the Court is Defendants Marcus Leonard Brown and K&S Transportation, LLC's Motion to Compel Ortho Sport and Spine Physicians, LLC and Medernix, LLC. (Doc. 20). For the reasons explained below, Defendants' Motion is **DENIED**.

## BACKGROUND

This case arises from a motor vehicle collision on December 4, 2020, in Lee County, Georgia. (Doc. 1 ¶¶ 8–9, 11). Plaintiff Joyce Owens alleges that she was driving north on Highway 82 when her vehicle was hit by a tractor-trailer truck operated by Defendant Marcus Leonard Brown on behalf of K&S Transportation, LLC. *Owens v. Brown*, No. 1:22-CV-58 (LAG), (Doc. 1 ¶¶ 8–12) (M.D. Ga. filed May 4, 2022). Owens alleges that "Brown improperly changed lanes into the lane occupied by [] Owens and . . . collided with [her] vehicle, causing a serious crash." *Id.* (Doc. 1 ¶ 11). Both Owens and her passenger, Joann Stewart, allege that they have "suffered severe and permanent injuries" as a result of the crash. *Id.* (Doc. 1 ¶ 13); (Doc. 1 ¶ 13). On May 4, 2022, Plaintiffs filed separate actions against the same Defendants: Brown, K&S Transportation, LLC, and Sentry Select Insurance Company. (Doc. 1); *Owens*, No. 1:22-CV-58 (LAG), (Doc. 1). Plaintiffs assert claims for negligence, imputed liability, negligent training, direct action, and punitive damages. (Doc. 1 ¶¶ 14–37). On October 11, 2022, the cases were consolidated. (Doc. 13).

The present Motion involves subpoenas sent to nonparties Ortho Sport & Spine Physicians, LLC and Medernix, LLC. (*See* Doc. 20 at 1). Ortho Sport is an orthopedic medical practice that provided the majority of Plaintiffs' medical treatment following the December 4, 2020 accident and that employs several treating physicians that Plaintiffs anticipate calling as witnesses. (*Id.*; Doc. 25 at 5). Medernix is a vendor that Ortho Sport contracts with to handle patient billing. (Doc. 20 at 2; Doc. 28 at 2). On August 26, 2022, Defendants served a Subpoena to Produce Documents, Information, or Objects on Ortho Sport. (Doc. 20-1). The Ortho Sport Subpoena contained eleven document requests. (*Id.* at 9–12). On September 27, 2022, Defendants served Subpoenas to Produce Documents, Information, or Objects on Medernix. (Docs. 20-2, 20-3). The Medernix Subpoenas contained twenty-five document requests, with many requests including multiple subparts. (Doc. 20-2 at 4–11; Doc. 20-3 at 4–11). Both Ortho Sport and Medernix timely served objections to the subpoenas. (*See* Doc. 20 at 3).

A discovery conference was held on January 17, 2023. (Doc. 17). Defendants filed the present Motion to Compel on February 7, 2023. (Doc. 20). Ortho Sport filed a Motion for Protective Order and Response to Defendants' Motion to Compel on February 21, 2023, and Defendants replied on February 28, 2023. (Docs. 25, 27). On March 14, 2023, Medernix responded to Defendants' Motion to Compel. (Doc. 28). Defendants filed a Reply to Medernix's Response on March 17, 2023. (Doc. 32). Thus, Defendants' Motion to Compel is ripe for review. *See* M.D. Ga. L.R. 7.3.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26, a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* "[T]he relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1329 (11th Cir. 2020) (first citing Fed. R. Civ. P. 26(b)(1); and then citing Fed. R. Evid. 401); *see also* Fed. R. Evid. 401(a) (providing that relevant information must

have a "tendency to make a [consequential] fact more or less probable"). Whether discovery is proportional to the needs of the case involves consideration of "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"For purposes of discovery, a party may subpoena information from a nonparty to litigation," subject to the protections set forth in Rule 45. *Jordan*, 947 F.3d at 1329 (citing Fed. R. Civ. P. 45(d)(1), (3)); *see also* Fed. R. Civ. P. 34(c) ("As provided in Rule 45, a nonparty may be compelled to produce documents and tangible things or to permit an inspection."). Rule 45 "protects [a nonparty] subpoena recipient by requiring the issuer to 'take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena'" and by permitting a court to "impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." *Jordan*, 947 F.3d at 1329 (citation omitted); Fed. R. Civ. P. 45(d)(1). Thus, the Court must weigh the requesting party's need for the discovery against the burden imposed on the subpoenaed party. *See Jordan*, 947 F.3d at 1337 (citations omitted). Rule 45 also sets forth the procedures for a party seeking to obtain an order of compliance from a nonparty: "At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection." Fed. R. Civ. P. 45(d)(2)(B)(i). "[T]he proponent of a motion to compel discovery bears the initial burden of proving that the information sought is relevant." *Eckhardt v. United States*, No. 5:19-cv-00266-TES, 2021 WL 2516555, at *3 (M.D. Ga. June 18, 2021) (alteration in original) (quoting *Cottone v. Cottone*, No. 1:15-CV-3584-MHC, 2017 WL 9250366, at *2 (N.D. Ga. Oct. 11, 2017)).

## DISCUSSION

Defendants' Motion to Compel seeks a Court order requiring Ortho Sport and Medernix to produce the following categories of information: (1) "evidence demonstrating the volume and value of patient accounts for plaintiff-patients" of Ortho Sport "who are

also clients of the Morgan & Morgan law firm"; (2) "the number of actions in which [Ortho Sport] employee-physicians have testified or have issued causation opinions"; (3) all "notes regarding [Medernix employee's] interactions with Plaintiffs' legal representatives and communications with Plaintiffs' legal representatives, including, but not limited to approvals or denials of treatment, requests regarding case updates, case valuations[,] and the like"; and (4) "any contract touching upon [Ortho Sport or Medernix's] relationship with the Morgan & Morgan [l]aw [f]irm or with any third party with any form of interest in this case (including but not limited to any Letters of Protection or lien contracts regarding Plaintiffs' care at [Ortho Sport])." (Doc. 20 at 2–3, 5, 10, 14). Ortho Sport and Medernix argue that Defendants' Motion to Compel must be denied pursuant to Rule 45(d) because the discovery sought is not relevant and the Subpoenas are unduly burdensome. (Doc. 25 at 9–21; Doc. 28 at 9–16).

As the party seeking to compel discovery, Defendants have "the initial burden of proving that the information sought is relevant." *See Eckhardt*, 2021 WL 2516555, at *3 (citation omitted). Defendants' discovery requests are not directly relevant to any party's "claim or defense" in this case. *See* Fed. R. Civ. P. 26(b)(1). As the Eleventh Circuit has explained, "the relevance of information sought in discovery depends on the claims asserted in the underlying action and the legal standards that govern those claims." *Jordan*, 947 F.3d at 1329 (first citing Fed. R. Civ. P. 26(b)(1); and then citing Fed. R. Evid. 401). Here, Plaintiffs assert claims for negligence, imputed liability, negligent training, direct action, and punitive damages. (Doc. 1 ¶¶ 14–37). Importantly, Defendants state their Subpoenas "do not . . . seek evidence related to the reasonableness of [Ortho Sport]'s medical bills," as Plaintiffs are not requesting special damages in this action. (Doc. 20 at 1 n.1). Thus, Defendants' discovery requests are relevant solely for impeaching the credibility of Plaintiffs' treating physicians who are employed by Ortho Sport.

Defendants argue that they "have the legal right to a thorough and sifting cross-examination of the witnesses against them, particularly where those witnesses have a financial interest in the case." (Doc. 27 at 3). Defendants also argue that they "are entitled to conduct discovery as to the nature and extent of the business dealings between [Ortho

Sport] and Morgan & Morgan" because "the relationship between the two entities would weigh on a treating physician's decision to testify as to the cause of an injury" and "[e]vidence of shared patient-clients . . . certainly makes bias more probable than it would be without the evidence." (*Id.* at 2–4). Defendants rely on the Eleventh Circuit's decision in *ML Healthcare Services, LLC v. Publix Super Markets, Inc.*, 881 F.3d 1293 (11th Cir. 2018), in support of their argument. (Doc. 20 at 4–5; Doc. 27 at 2). In *ML Healthcare*, a third-party funding company had a business model of matching injured, uninsured patients who had viable tort claims with treating physicians. 881 F.3d at 1301. The third-party funding company would then purchase the medical bills generated by those physicians at a discounted rate. *Id.* The Eleventh Circuit noted that the risk that a plaintiff would not pay their debt would increase substantially if a plaintiff did not recover damages. *Id.* at 1301–02. And "if a doctor did not provide a favorable causation analysis . . ., [the third-party funding company] likely would find other doctors who would." *Id.* at 1302. Thus, both the treating physicians and the third-party funding company had a financial interest in a plaintiff winning their lawsuit. *Id.* While Georgia's "collateral source rule" typically prevents the introduction of evidence regarding "the receipt of benefits or mitigation of loss from sources other than the defendant," *id.* at 1298 (citation omitted), the Eleventh Circuit held in *ML Healthcare* that when a treating physician testified on behalf of the plaintiff at trial, "[t]he district court did not abuse its discretion" by allowing evidence of this business arrangement "to be admitted for the limited purpose of showing bias on the part of the doctors who testified" on the plaintiff's behalf, *id.* at 1302.

"Here, unlike in *ML Healthcare*, there is no evidence of a scheme that makes" Ortho Sport and Morgan & Morgan's relationship, or Medernix's "involvement probative on any issue[.]" *See Gordon v. Rowley*, No. 4:20-CV-84 (CDL), 2021 WL 5150073, at *2 (M.D. Ga. Nov. 4, 2021). Defendants do not assert that Ortho Sport or Medernix is a third-party litigation funding company like ML Healthcare. In fact, Defendants concede that "there is not believed to be any outside funding relationship involved" in this matter. (Doc. 20 at 5). Further, as support for their response to Defendants' Motion to Compel, Ortho Sport submitted the affidavit of the Ortho Sport CEO, Steve Loud. (Doc. 25-1). Therein, Loud

states that "[t]he accounts receivable and amounts owed to Ortho Sport" for Plaintiffs' treatment "ha[ve] not been sold, and there is no involvement by a third-party litigation funding company." (*Id.* ¶ 8). Thus, the business model the Eleventh Circuit found could create a potential bias in *ML Healthcare* is distinguishable from the facts of this case.

Moreover, Defendants have not demonstrated that any of the treating physicians employed by Ortho Sport have a similar financial interest in Plaintiffs' case. In its Response to Defendants' Motion to Compel, Ortho Sport explains that both Plaintiffs have "executed Letters of Protection." (Doc. 25 at 5). Under these Letters of Protection, which Ortho Sport describes as "contractual promise[s] to pay," Plaintiffs were "permitted to undergo necessary medical treatment and defer payment until a later date." (*Id.*). Ortho Sport explains that, under this arrangement, Plaintiffs' "outstanding medical debt is collateralized by any potential claim arising from the alleged injuries; however, [Plaintiffs] remain[] personally liable for the entire balance." (*Id.*). Ortho Sport states that, unlike other orthopedic clinics, its "physicians do not maintain a financial interest in any of the medical treatment provided," as the "physicians are salaried employees and have no ownership in the company." (*Id.* at 6 (emphasis omitted); *see* Doc. 25-1 ¶¶ 3–4). While Defendants are entitled to discovery regarding these Letters of Protection, Ortho Sport already produced these documents to Defendants. (*See* Doc. 25 at 5). Furthermore, the fact that Plaintiffs have executed Letters of Protection with Ortho Sport does not establish the relevance of the more extensive financial information Defendants seek. *See* Fed. R. Civ. P. 26(b)(1). "Indeed, the practice of a medical provider asserting a lien (or requiring a patient to assign all insurance benefits to a medical provider) is commonplace and in no way points to the fact that [Ortho Sport], solely on that basis, has an interest in the outcome of this case." *See Barber v. Barnaby*, No. 1:18-cv-4925-AT, (Doc. 31 at 5–6) (N.D. Ga. Mar. 15, 2019).

Defendants argue that they are nonetheless "entitled to discovery as to [Ortho Sport]'s financial interests and relationship with Morgan & Morgan" because "[i]f Morgan & Morgan is shown to have a business relationship with [Ortho Sport] spanning hundreds of patients . . ., then those figures would be highly probative of an ongoing pattern and practice of always offering the same favorable causation opinion to [Ortho Sport]'s

plaintiff-patients." (Doc. 27 at 6; Doc. 20 at 7). Georgia courts, however, have found that the fact that an attorney has referred a client to a medical provider for treatment, standing alone, is not relevant to show bias or improper conduct. *See, e.g.*, *Joiner-Carosi v. Adekoya*, 850 S.E.2d 823, 830 (Ga. Ct. App. 2020) (finding that the trial court did not err "in excluding evidence regarding any attorney referral of [the plaintiff] to his medical providers" where the defendant failed to "explain how evidence of attorney referrals to [the plaintiff's] medical providers [was] relevant to the issues in th[e] case"); *Stephens v. Castro-Castano*, 814 S.E.2d 434, 441 (Ga. Ct. App. 2018) (finding that "the trial court did not abuse its discretion by excluding evidence of [the plaintiff]'s referral to [her treating physician] by her attorney as irrelevant"). Moreover, Defendants have made no showing that either Plaintiff in this case was referred to Ortho Sport for treatment by their attorney, who no longer works for Morgan & Morgan,[1] or by any other person employed by the law firm. Ortho Sport's CEO also avers that "Ortho Sport's treating physicians have no referral relationship or financial arrangement with any legal counsel or funding company" and that "Ortho Sport's treating physicians do not communicate—directly or indirectly—with any patient's legal counsel." (Doc. 25-1 ¶¶ 5–6). Absent testimony or other evidence demonstrating that any referral relationship between Ortho Sport's treating physicians and Morgan & Morgan is relevant to this case—to the extent any such relationship exists— Defendants have failed to show that their request for information regarding shared patients and clients of these entities or their internal communications is "relevant to any party's claim or defense and proportional to the needs of th[is] case." *See* Fed. R. Civ. P. 26(b)(1).

As for Defendants' request for "the number of actions in which [Ortho Sport] employee-physicians have testified or have issued causation opinions," Defendants also have not demonstrated the relevance of this request. (Doc. 20 at 5). Plaintiffs have stipulated that Dr. Jeffery Lee is the sole Ortho Sport treating physician they intend to call

---

[1]     When Plaintiffs filed suit, they were represented by two attorneys from the law firm Morgan & Morgan, Jon Hawk and Jason Downey. (*See* Doc. 1 at 11–12). On October 26, 2022, Mr. Hawk notified the Court that he no longer worked for Morgan & Morgan but would continue to serve as lead counsel on the case. (Doc. 15 at 1). Mr. Downey withdrew as counsel for Plaintiffs on February 7, 2023. (Doc. 18 at 1).

as an expert witness. (*See* Doc. 34 at 1). Federal Rule of Civil Procedure 26 provides that all expert witnesses must include in their report "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition," and "a statement of the compensation to be paid for the study and testimony in the case." Fed. R. Civ. P. 26(a)(2)(B)(v), (vi). "Thus, as other federal courts have observed, 'the governing rule of federal procedure already requires an expert witness to disclose bias-relevant information.'" *Quiterio v. QBE Specialty Ins. Co.*, No. 8:16-cv-1895-T-35JSS, 2019 WL 13064730, at *3 (M.D. Fla. Nov. 8, 2019) (quoting *Marquez v. Fed. Express Corp.*, No. 17-14142-CIV, 2017 WL 7798645, at *3 (S.D. Fla. Oct. 26, 2017)). Defendants do not contend that Dr. Lee's expert report does not include information regarding past testimony or compensation required by Rule 26 and provide no explanation for why they are entitled to additional information about Dr. Lee's or any other Ortho Sport physician's prior litigation appearances. (*See generally* Doc. 20). "The Court will not, without more, order the production of documents evidencing an even greater time period of information with respect to law firm retentions, deposition appearances, and trial appearances than what is required by the Federal Rules." *See Hardy v. N.J. Mfrs. Ins. Co.*, No. CV 22-153-SDD-RLB, 2023 WL 3767056, at *7 (M.D. La. June 1, 2023).

Without evidence suggesting that Plaintiffs' treating physicians are incentivized to provide favorable testimony by a direct financial interest in the case or by their referral relationship with Plaintiffs' Counsel, Defendants have failed to establish that their discovery requests seek information relevant to the treating physicians' alleged bias. Although the scope of discovery is broad, "the discovery rules do not permit the [parties] to go on a fishing expedition." *Porter v. Ray*, 461 F.3d 1315, 1324 (11th Cir. 2006). "This is especially true where, as here, that fishing expedition would come at the time and expense of a non-party to this litigation." *See Barber*, No. 1:18-cv-04925-AT, (Doc. 31 at 6) (N.D. Ga. Mar. 15, 2019) (citing *Sun Cap. Partners, Inc. v. Twin City Fire Ins. Co.*, No. 12-CIV-81397-Marra/Matthewman, 2016 WL 1658765, at *4 (S.D. Fla. Apr. 26, 2016)); *see also Lowe v. DIFEI Transp., LLC*, No. 1:20-CV-5224-CAP, 2021 WL 8571703, at *4 (N.D. Ga. Sept. 15, 2021) (granting a nonparty's motion to quash a

subpoena "seeking production of communications between [the nonparty] and [plaintiff's] counsel" because "there [wa]s no factual basis or evidentiary showing to suggest" any "evidence of collusion between [the plaintiff's medical providers] and [plaintiff]'s counsel"). If Defendants identify facts or evidence suggesting Plaintiffs' treating physicians have a financial interest in this case or that they have a relationship with Plaintiffs' Counsel that influences their testimony, Defendants may renew their Motion to Compel at that time. At this time, however, Defendants have failed to demonstrate that they are entitled to the requested discovery.[2]

## CONCLUSION

For the reasons explained above, Defendants' Motion to Compel (Doc. 20) is **DENIED**. Ortho Sport's Motion for Protective Order (Doc. 25) is **DENIED as moot**.

**SO ORDERED**, this 6th day of September, 2023.

/s/ Leslie A. Gardner
**LESLIE A. GARDNER, JUDGE**
**UNITED STATES DISTRICT COURT**

---

[2]    Because the Court finds that Defendants have failed to establish the relevancy for the discovery they wish to obtain from Ortho Sport and Medernix, the Court does not address whether Defendants' subpoenas are unduly burdensome. *See Jordan*, 947 F.3d at 1329 ("[A] subpoena issued under Rule 45 should be quashed to the extent it seeks irrelevant information."); *Colibri Heart Valve LLC v. Medtronic CoreValve LLC*, No. 8:20-cv-00847-DOC (JDEx), 2021 WL 10425630, at *4 (C.D. Cal. Mar. 26, 2021) ("As Defendant has not met its initial burden to show the relevance of the information sought here, the Court denies the Motion [to Compel] on that basis and does not reach the parties' other arguments . . . .").

**FIRST DIVISION**
**BARNES, P. J.,**
**GOBEIL and PIPKIN, JJ.**



**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**September 13, 2024**

**NOT TO BE OFFICIALLY REPORTED**

# In the Court of Appeals of Georgia

A24A1310. ORTHO SPORT & SPINE PHYSICIANS, LLC v. MURRAY et al.

A24A1311. MEDERNIX, LLC v. MURRAY et al.

BARNES, Presiding Judge.

These companion appeals arise from a discovery dispute between the defendants and third parties in a personal injury case. The third parties, Ortho Sport & Spine Physicians, LLC, and Medernix, LLC, appeal the trial court's order compelling them to produce a database report and other documents to the defendants ("Production Order") and a related protective order ("Protective Order").[1] Based on our recent controlling decision in *Medernix, LLC v. Snowden*, 372 Ga. App. 48 (903

---

[1] The discovery orders are directly appealable under the collateral order doctrine. See *Benchmark Rehabilitation Partners v. SDJ Logistics*, 367 Ga. App. 203, 204 (2) (885 SE2d 224) (2023).

SE2d 728) (2024), we vacate the Production Order and Protective Order to the extent that they required Ortho Sport and Medernix to create and produce the database report and remand for further proceedings consistent with this opinion.

The record reflects that Sebrina Michael sued Stephen Murray, New Leaf Landscape Services, Inc., and Jane and John Doe defendants in the State Court of Hall County for damages arising from an automobile accident.[2] As part of her damages, Michael sought to recover her past and future medical expenses, including expenses incurred from treatment at Ortho Sport.

During the course of the litigation, the defendants served Ortho Sport and its claims manager, Medernix, with requests for production of records and database materials. When Ortho Sport and Medernix did not produce all of the requested materials, the defendants filed a motion to compel their production. Among other materials, the defendants sought to compel production of a database report revealing Ortho Sport/Medernix's billed charges or rates, as well as any adjustments made to those charges or rates, "categorized by associated law firm referral partner"

---

[2] In addressing the factual and procedural history of these companion appeals, we have taken into account both appellate records. See *Sentinel Offender Svcs. v. Glover*, 296 Ga. 315, 321, n. 13 (766 SE2d 456) (2014) (explaining that reviewing courts may take judicial notice of the records in companion appeals).

("Database Report"). More specifically, the defendants requested that Ortho Sport/Medernix generate eClinicalWorks Report 37.08, "Financial Analysis at CPT Level (With Everything)," a spreadsheet that would list, for every Ortho Sport patient, the amount billed for each visit or procedure at every Ortho Sport location, categorized by CPT code;[3] the amount written-off, adjusted, or accepted in satisfaction for each such bill; the payer of each bill; and information about who referred each patient to Ortho Sport. The defendants requested database information for the past three years, and further advised that all "HIPAA-protected personal identifying information,"[4] such as patient names and addresses, could be redacted.

Ortho Sport and Medernix opposed the defendants' motion to compel, and Ortho Sport also filed a motion for a protective order. Following a hearing, the trial

---

[3] "CPT" code stands for Current Procedural Terminology codes. CPT codes are a national uniform coding structure created for use in billing and overseen by the American Medical Association. They are used by all health insurance companies and by Medicare and Medicaid. A code represents at least two things: the procedure or service performed and the level of complexity involved in it.
*United States v. Moss*, 34 F4th 1176, 1181-1182 (I) (A) (11th Cir. 2022).

[4] "HIPAA" refers to the Health Insurance Portability and Accountability Act of 1996, 42 USC §§ 1320d et seq.

3

court entered its Production Order granting the defendants' motion to compel production of the Database Report and other requested materials. In conjunction with its Production Order, the trial court entered its Protective Order requiring Ortho Sport and Medernix to redact personal health information of patients from the Database Report and other requested materials in accordance with HIPAA requirements. The Protective Order did not otherwise place any restrictions on the use, dissemination, or confidentiality of the produced materials requested by the defendants.

Ortho Sport and Medernix now appeal these discovery rulings by the trial court. In Case No. A24A1310, Ortho Sport contends that the trial court abused its discretion by entering a protective order that failed to shield it from producing the Database Report. According to Ortho Sport, the Database Report violated its constitutional right of privacy, was overly broad and unduly burdensome, and failed to prevent disclosure of its trade secrets and confidential financial data. In a related argument, Ortho Sport maintains that the trial court abused its discretion in granting the defendants' motion to compel production of the Database Report. In Case No.

4

A24A1311, Medernix argues that the trial court abused its discretion by compelling it to produce the Database Report and other materials.

The outcome of these companion appeals is squarely controlled by our recent decision in *Medernix*, 372 Ga. App. 48, where we addressed almost identical discovery requests involving the same third parties. Based on the discussion and legal analysis in *Medernix*, we conclude in Case No. A24A1310 that the trial court abused its discretion in denying Ortho Sport's request for a protective order prohibiting production of the Database Report to the defendants and in compelling it to produce the Database Report. See *Medernix*, 372 Ga. App. at 52-56 (1), (2). We therefore vacate the Production Order and Protective Order to the extent that those orders required Ortho Sport to produce the Database Report to the defendants, and we remand for the trial court to determine whether a more limited report can be generated consistent with our opinion in *Medernix*, subject to reasonable restrictions on the use and dissemination of any such report.[5] See id.

---

[5] Ortho Sport also argues on appeal that it cannot be compelled to produce a database report that it did not create in the ordinary course of its business, and that the production of any information about the amounts that it writes off the bills of its third-party patients is barred by the collateral source rule. We analyzed and rejected these same arguments raised by Ortho Sport in *Medernix*, 372 Ga. App. at 56-58 (3), (4).

Likewise, based on the discussion and legal analysis in *Medernix*, we conclude in Case No. A24A1311 that the trial court abused its discretion in requiring Medernix to produce the Database Report and therefore vacate the Production Order and Protective Order to the extent that they required Medernix to produce the Database Report to the defendants. See *Medernix*, 372 Ga. App. at 52-56 (1), (2), 59 (5). We remand for the trial court to determine whether a more limited report can be generated consistent with our opinion in *Medernix*, subject to reasonable restrictions on the use and dissemination of any such report.[6] See id.

───────────────

[6] Medernix also argues on appeal that the trial court erred in compelling it to produce any Ortho Sport documents because it did not have possession, custody, or control over those materials. Additionally, Medernix contends that information regarding the write offs and adjustments to the bills of third-party patients is not discoverable because those amounts represent the settlement of medical debts. We analyzed and rejected these same arguments raised by Medernix in *Medernix*, 372 Ga. App. at 59-62 (6), (7).

Medernix further maintains that the defendants could not compel it to produce a database report or any other materials because they did not engage in a good-faith conferral to resolve the discovery dispute as required by Uniform Superior Court Rule ("USCR") 6.4 (B). However, the record shows that counsel for the defendants sent a 14-page conferral letter to Medernix's counsel on November 2, 2022, explaining the defendants' position and seeking to resolve the discovery dispute, and "[t]here is no requirement in USCR 6.4 that counsel for the movant make more than one attempt to resolve the discovery matter." (Citation and punctuation omitted.) *Gropper v. STO Corp.*, 276 Ga. App. 272, 277 (3) (623 SE2d 175) (2005). See *Mansell 400 Assoc. v. Entex Information Svcs.*, 239 Ga. App. 477, 481 (5) (519 SE2d 46) (1999).

We do not authorize the reporting of this opinion because it does not announce a new rule or policy, or involve an interpretation of law that is not already precedent. See Court of Appeals Rules 33.2 (b), 34.

*Judgments vacated in part and cases remanded with direction in Case Nos. A24A1310 and A24A1311. Gobeil and Pipkin, JJ., concur.*



EXHIBIT
**C**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

MAE JIMMAR,
    Plaintiff,

v.

COCA-COLA BOTTLING
COMPANY UNITED, INC. and
TRAVON BENNETT,
    Defendants.

CIVIL ACTION FILE
NO. 1:25-cv-01045-SCJ

## SUPPLEMENTAL DECLARATION OF STEVE YOUD

    I declare under penalty of perjury that the following is true and correct:

### 1.

    I am the Chief Executive Officer at Ortho Sport and Spine Physicians, LLC ("Ortho Sport") and am familiar with Ortho Sport's operations.

### 2.

    I have personal knowledge of the facts stated herein and wish to provide additional details for this Court's consideration.

-Page 1 of 7-

**3.**

All of Ortho Sport's treating physicians are employees of Ortho Sport compensated on a salary basis.

**4.**

Ortho Sport's treating physicians have no financial interest in the treatment provided to their patients. In fact, the treating physicians are completely removed from the payment and billing processes. Ortho Sport's treating physicians have no knowledge regarding the amounts paid (or not paid), collected (or not collected), or acquired (or not acquired) by a patient, and the physicians are not privy to such information. The treating physicians are further removed from the patient's source of payment, and the treating physicians are not privy to how a patient pays for services (e.g., out of pocket, through insurance, charged services to a credit card, through collections, etc).

**5.**

To the best of my knowledge, Ortho Sport's treating physicians do not communicate – directly or indirectly – with any patient's legal counsel, to the extent one exists. Indeed, Ortho Sport and Spine Physicians would have no knowledge as to whether or not a patient does or does not have legal counsel (unless such information was explicitly disclosed during a patient's examination, which appears extremely unlikely). Moreover, Ortho Sport's treating physicians are not privy to

communications with a patient's legal counsel, do not have access to any such communications, and possess no knowledge of such communications.

6.

To the best of my knowledge, Ortho Sport's treating physicians have no referral relationship or financial arrangement with any legal counsel or funding company.  This would also be inapposite to Ortho Sport's business model, and the fact that Ortho Sport physicians are under non-compete arrangements.

7.

No aspect of any Ortho Sport physicians' compensation is contingent upon the success or results of any patients' claim or lawsuit, to the extent one exists.

8.

The account receivable and amounts owed to Ortho Sport for the subject patient in this matter, Mae Jimmar ("Patient") has not been sold, and there is no involvement by a third-party litigation funding company.

9.

Moreover, for the avoidance of doubt, Ortho Sport's treating physicians have absolutely **NO** financial interest in this (or any) litigation. The Patient's treating physicians will not be paid from the proceeds of any potential recovery by Patient in the above-styled lawsuit and no financial arrangement between Patient and the Patient's treating physicians exists.

10.

Ortho Sport's treating physicians focus on the practice of medicine, as well as the treatment and care their patients. They have no financial incentive vis-a-vis the treatment of a patient.

11.

Additionally, Ortho Sport treats a variety of patient and payor types. This includes, for instance, patients that are required to undergo an independent medical examination (IME) and worker's compensation patients. Ortho Sport serves on over one hundred (100) workers' compensation panels.

12.

The fact that the physicians are shielded from financial, administrative, or other considerations allow the focus of Ortho Sport's physicians to be the medical care and treatment of their patients. Moreover, an incidental benefit to such model, is that physicians are removed from the propensity of bias in cases involving personal injury claims, workers' compensation claims, and/or independent medical examinations.

13.

Last, I want to emphasize that the information sought by Defendants is both a trade secret and extremely burdensome.

14.

First, I will note that using the sought-after report to obtain such information is also unnecessary, since there are numerous publications, billing companies, experts, and doctor's management companies, that provide anonymous information regarding what the usual and customary charges are for specific procedures.

15.

Nevertheless, the information derived from the sought-after report, however, is valuable for other reasons, and it specifically constitutes Ortho Sport's confidential trade secret data.

16.

The financial data sought through the forced creation of the report is not commonly known by or available to the public.

17.

This information is heavily guarded and restricted; only a handful of employees are able to generate or view such a report, and anyone viewing such a report is under a stringent non-disclosure agreement that prohibits duplication, reproduction, dissemination, or discussion of any of its contents except for the benefit of Ortho Sport.

18.

Ortho Sport derives economic value from such information not being generally known to (and not being ascertainable) by Ortho Sport's competitors.

19.

Solely by way of example, Ortho Sport would love to obtain an identical report from one of Ortho Sport's competitors. An identical report from a competitor would allow Ortho Sport to ascertain (1) what markets treat the most patients and (2) what procedures are performed the most. This would allow Ortho Sport to expand into areas based on another Orthopedic practice's actual data, and it would allow us to craft physician hiring based on the needs for a facility. It would also remove one of the biggest risks to expansion, which is knowing market saturation and market needs.

20.

Accordingly, while the information Defendants seek is of dubious value (and may be obtained through other means) to the Defendants, it is of significant value to Ortho Sport-- and if any of Ortho Sport's competitors were to obtain it (either directly or indirectly), it would be of huge value to Ortho Sport's competitors. Gaining such information would be a huge windfall to Ortho Sport's competitors, at a detriment to Ortho Sport.

21.

Regarding burdensomeness, Ortho Sport has previously created, in a separate matter, the 37.08 database report like the one sought in this action. It took Ortho Sport's director of revenue cycle management over six (6) hours to generate the report, which included time-consuming support calls with our electronic medical records management company and phone calls with counsel. It was an extremely cumbersome process. Notably, the 37.08 report requested in this case, however, is far more extensive than the one previously generated.

22.

Moreover, I understand the defendants now seek **three (3) additional reports** in addition to the previous one.

23.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on October 21, 2025, in Georgia.


STEVE YOUD